TODTMAN, NACHAMIE, SPIZZ & JOHNS, P.C.
Proposed Counsel to **Rock & Republic Enterprises, Inc.**
and **Triple R, Inc.**
Debtors and Debtors-in-Possession
425 Park Avenue
New York, NY 10022
(212) 754-9400
Alex Spizz, Esq.
Arthur Goldstein, Esq.
Jill Makower, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| ROCK & REPUBLIC ENTERPRISES, INC., <u>et al.</u>, | : | Case No. 10-11728 (AJG) |
| | : | (Motion for Joint Administration Pending) |
| Debtors. | | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**APPLICATION IN SUPPORT OF ENTRY OF INTERIM ORDER AUTHORIZING DEBTORS TO ENTER INTO FACTORING AGREEMENT AND AUTHORIZING THE PURCHASE AND SALE OF ACCOUNTS WITH PRIORITY OVER ADMINISTRATIVE EXPENSES AND SECURED BY LIENS ON PROPERTY OF THE ESTATE PURSUANT TO SECTIONS 363 AND 364 OF THE BANKRUPTCY CODE**

TO: THE HONORABLE ARTHUR J. GONZALEZ
UNITED STATES BANKRUPTCY JUDGE:

Rock & Republic Enterprises, Inc. ("R&R") and Triple R, Inc. ("Triple R"), as debtors and debtors-in-possession (collectively the "Debtors"), by their undersigned counsel, respectfully represents as follows:

1. On April 1, 2010 (the "Petition Date"), the Debtors filed petitions under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code"). Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Debtors are operating its business and managing its property as a debtors-in-possession.

254918 v1

2. Debtors make this application ("Application") for an order authorizing them, pursuant to Sections 363 and 364 of the Bankruptcy Code, to assume, ratify, reaffirm and adopt, as supplemented and modified herein, its pre-petition factoring arrangement with The CIT Group/Commercial Services, Inc. ("Factor"), pursuant to the terms and conditions of the proposed order (the "Interim Order") annexed hereto as Exhibit "1" and (a) the pre-petition factoring and security agreements annexed thereto as Exhibit "A" (as hereinafter described and defined, the "Pre-Petition Agreements"); the Supplement to the Pre-Petition Agreements annexed thereto as Exhibit "B", and the agreed thirteen week budget annexed thereto as Exhibit "C", (b) this Interim Order (collectively hereinafter, the "Factoring Arrangement").

### Debtors' Pre-Petition Factoring Arrangement

3. On February 18, 2005, R&R and the Factor entered into (a) that certain Factoring Agreement, together with exhibits and schedules thereto, which Factoring Agreement was amended from time to time (collectively and as amended from time to time, the "Factoring Agreement"); (ii) that certain Inventory Security Agreement dated as of August 18, 2006; (iii) that certain Letter of Credit Agreement dated as of June 27, 2006; (iv) all other documents and agreements executed and delivered in connection therewith, each as amended, modified and/or supplemented (collectively, the "Pre-Petition Agreements"), pursuant to which, in consideration for Factor's agreement to purchase the accounts receivable of R&R, and make loans, advances and/or other financial accommodations to R&R, R&R granted to Factor liens, mortgages and security interests in substantially all of R&R's personal property, including without limitation accounts receivable (as such term is defined in the Pre-Petition Agreements, the

"Accounts"), instruments, documents, chattel paper, general intangibles, unpaid seller's rights, investment property, inventory, income tax refunds, goodwill, credit balances and certain other property in Factor's possession or subject to Factor's control, excluding patents and trademarks (collectively, the "Pre-Petition Collateral"). Copies of the Pre-Petition Agreements are annexed to the Interim Order as Exhibit "A". The Factor perfected these security interests by the filing of appropriate UCC-1 financing statements, copies of which are available upon request.

4. As of the Petition Date, R&R was indebted to Factor in the approximate amount of $5,700,000 million, exclusive of accrued interest and attorneys' fees, (the "Pre-Petition Obligations") such obligations being secured by Pre-Petition Collateral valued, on a book value basis, in excess of this indebtedness and which R&R, after reasonable inquiry, believes to be valued on an orderly liquidation basis, in excess of the Pre-Petition Obligations.

### **Debtors' Business**

5. The Debtors are a wholesale and retail apparel company specializing in an avant-garde and distinctive line of clothing. Originally started in 2002 by its Chief Executive Officer, Michael Ball, primarily as an American jeans company, the Debtors have expanded their lines to include high fashion clothing for men, women and children as well as shoes, cosmetics and accessories. The Debtors' merchandise can be found at most high-end retail stores such as Nordstrom, Neiman-Marcus, Bergdorf Goodman, Bloomingdales, Lord & Taylor, Harvey Nichols and Sak's Fifth Avenue as well as in small upscale boutiques. R&R is the manufacturing and wholesale end of the Debtors'

business and Triple R operates the retail stores. All of the Pre-Petition Agreements are between the Factor and R&R.

## Best Interests and Need for Excess Liquidity

6. R&R relies upon the Factoring and Loan Agreements with CIT in order to operate its business. Without its relationship with CIT, it would not have the ability to pay its obligations as they became due. R&R needs the advances from the factoring arrangement so it can buy piece-goods and pay its contractors for producing finish product which it in turn sells to its customers. R&R also sells product to Triple R which Triple R then sells in the Debtors' retail stores. While only R&R is a signatory, both R&R and Triple R are wholly dependent on the Factoring Agreements.

7. Without the Factoring Arrangement, the Debtors would not have access to any liquidity. Under the Factoring Arrangement and R&R's existing cash management systems, virtually all Accounts have been sold to Factor and cash received is applied on a daily basis against outstanding obligations under the Pre-Petition Agreements. In addition, the Factor has a pre-petition lien and security interest in all of R&R's inventory filling these Orders and the proceeds of such Inventory therefor constitutes Factor's Cash Collateral. In any event, the Debtors have determined that use of cash collateral alone would not permit sufficient cash utilization to provide the requisite liquidity.

8. The Debtors' ability to continue to operate the business and operate as a going concern is dependent upon this Factoring Agreement.

9. Substantially all of R&R's assets are encumbered by liens and security interests in favor of Factor. Currently none of Triple R's assets are encumbered by CIT. Prior to making this Application, Debtors canvassed the available credit markets but

was unable to obtain factoring or financing from any other source. In the Debtors' business judgment, the terms and condition of the Factoring Arrangement are fair and represent the best factoring and financing option available under the circumstances.

10. Prior to the Petition Date, R&R negotiated the proposed Factoring Arrangement with Factor. R&R negotiated the terms of the Factoring Arrangement with Factor at arm's length and in good faith as required by Section 364(e) of the Bankruptcy Code, with all parties represented by experienced counsel. For all of these reasons, the Debtors submit that the proposed Factoring Arrangement is in the best interests of the Debtors, their estates and their creditors and should be approved.

**The Proposed Post-Petition Financing Arrangement with the Factor**

11. Under the Factoring Arrangement, the Factor has agreed to continue to purchase the Accounts of R&R, and make loans, advances and/or other financial accommodations to the Debtors, all in Factor's sole discretion, up to $7.5 million during the period of this Interim Order. The Debtors and Factor believe that this arrangement will permit the Debtors sufficient liquidity to preserve the Orders and pay other ordinary and necessary expenses during the reorganization .

12. Under the Factoring Arrangement, all Obligations, as such term is defined in the Pre-Petition Agreements, whether arising prior or subsequent to the Petition Date and the Adequate Protection Claim (defined collectively as the "Post-Petition Claim") will have priority in payment over any other obligations of the Debtors, and over any and all administrative expenses or charges against property arising in the Debtors' bankruptcy case, including without limitation those specified in Bankruptcy Code §§ 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114. The Adequate Protection Claim is defined as being

the amount of any post-petition diminution in value of Factor's interests in the Pre-Petition Collateral. Notwithstanding the foregoing, the Post-Petition Claim will not be paid from avoidance actions.

13. Likewise, pursuant to Bankruptcy Code §§ 362, 363(e) and 364(c), as security for the Post-Petition Claim, the Debtors grant to Factor a first priority lien (subject only to liens existing as of the Petition Date that are valid, enforceable and not subject to avoidance by a trustee under the Bankruptcy Code), in all of the Debtors' owned or thereafter acquired property and assets, whether such property and assets were acquired by Debtors before or after the Petition Date. Notwithstanding the foregoing, the lien and/or security interest granted does not include avoidance claims or causes of action.

14. The Factoring Arrangement contains Events of Default customarily found in debtor-in-possession financings including (a) dismissal, conversion or appointment of a Chapter 11 trustee in the case; (b) confirmation of a plan or sale of Factor's Collateral on a non-consensual basis with Factor; and (c) material adverse change. Remedies upon Event of Default include the right of Factor to cease lending and immediately require segregation of all Factor's Collateral, and to take upon 5 days written notice to the Debtors, U.S. Trustee and creditors' committee, action to protect the Collateral from harm, theft and/or dissipation, free of the restrictions of Bankruptcy Code § 362 . Further, other than upon occurrence of certain self effectuating Events of Default, Factor after notice and an opportunity to cure/opportunity for the obtaining of an injunction or restraining order, may declare all obligations due and owing and proceed with enforcement of its remedies under the Financing Arrangement and applicable law.

15. As noted above, under the Factoring Arrangement, the Pre-Petition Obligations will be secured by the Collateral and the loans advances and over-advances made after the Petition Date will be secured by the Pre-Petition Collateral. These provisions are essential pre-conditions to Factor's willingness to provide the post-petition credit and advances requisite to funding. Given that as of the Petition Date, Factor is secured by virtually all assets of R&R existing on the Petition Date, the grant of a continued interest in those assets on a post-petition basis, does not serve to unduly advantage Factor or prejudice the interests of other stakeholders. The grant of cross-collateralization to Factor is subject to the Court's ability to fashion an appropriate remedy should the Court determine, by final order resulting from an adversary proceeding or motion timely commenced in accordance with the provisions of Paragraphs 7 and 26 of the Interim Order, that (a) the interests of Factor in the Pre-Petition Collateral are invalid or avoidable in whole or in part, or (b) the amount of the Obligations as of the Petition Date was less than the value of Factor's interests in the Pre-Petition Collateral as of the Petition Date, and Factor was unduly advantaged by the entry of this Interim Order. For these reasons, and in light of the potential administrative burden to the Debtors in tracking both loan and collateral values separately on a pre and post-petition basis, Debtors submit that the grant of cross-collateralization is appropriate and warranted on the facts present herein.

16. The Interim Order provides that effective, *nunc pro tunc* to the date of the Interim Order, upon the entry of a Final Order containing such provision, the Debtors waive irrevocably all rights, it might otherwise assert against the Collateral pursuant to Bankruptcy Code §§ 506(c) or 552(b). Likewise, the Interim Order provides that

effective, nunc pro tunc to the date of the Interim Order, upon the entry of a Final Order containing such provision, no entity in the course of the bankruptcy case (whether Chapter 11 or subsequent Chapter 7), will be permitted to recover from the Collateral any cost or expense of preservation or disposition of the Collateral, including, expenses and charges as provided in Bankruptcy Code §§ 506(c) or 552(b) without the prior written consent of Factor.

17. The Debtors acknowledge and agree not to challenge the validity, extent, priority, perfection and enforceability of Factor's pre-petition claims, liens, mortgages and security interests in R&R's assets and in furtherance thereof release, waive and affirmatively agree not to allege or otherwise pursue any or all defenses, or other rights that it may have to contest (a) any Defaults or Events of Default which were or could have been declared by Factor as of the Petition Date, (b) any provisions of the Pre-Petition Agreements, (c) the amount of R&R's indebtedness to Factor as of the Petition Date, or (d) the conduct of Factor in administering the pre-petition business relationship between R&R and Factor. Notwithstanding the Debtors' release and waiver (a) the Committee is permitted through and until the earlier of the 45th day following the date of its formation to commence an adversary proceeding against Factor for the purpose of challenging the validity, extent, priority, perfection and enforceability of Factor's pre-petition liens on R&R's assets.

**Form and Manner of Notice**

18. The Factoring Arrangement requires that a Final Order approving this Application be entered within 30 days after the Petition Date. The Debtors therefore

request that the Court (i) fix the date and time of the Final Hearing and (ii) approve the form and manner of notice with respect to the Final Hearing.

19. The Debtors propose to send notice of the Final Hearing to consider this Application by telecopy, e-mail (if agreed to by the recipient), overnight courier, by hand delivery or by first-class mail. Pursuant to Bankruptcy Rule 4001, the Debtors propose to send notice of the Final Hearing to (i) the United States Trustee, (ii) the attorneys for the Factor, (iii) all creditors known to the Debtors who may assert liens against any of the Debtors' assets, (iv) the parties appearing on the Debtors' consolidated List of 25 Largest Unsecured Creditors and (v) those parties that have requested special notice pursuant to Rule 2002 of the Bankruptcy Rules. The Debtors submit that such notice is adequate and sufficient.

20. The Debtors further ask that the Court specify that any and all objections to this Application be in writing and be filed and served so that the same are received no later than five days prior to the date scheduled for the Final Hearing.

## Authority for Requested Relief

21. Section 364 of the Bankruptcy Code allows debtors to (i) obtain unsecured credit in the ordinary course of business, (ii) obtain unsecured credit out of the ordinary course of business and (iii) obtain credit with specialized priority or with security. If a debtor-in-possession cannot obtain post-petition credit on an unsecured basis, the court may authorize obtaining credit or incurring debt, repayment of which is entitled to superpriority administrative expense status or is secured by a senior lien on the debtor's unencumbered property or a junior lien on encumbered property, or combination of the foregoing under Section 364(c) of the Bankruptcy Code.

22. R&R proposes to factor its Accounts and obtain financing under the Factoring Arrangement by providing security interests in and liens on substantially all of their assets pursuant to Sections 363, 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code.

### Standard of Approval under Section 364(c) of the Bankruptcy Code

23. In order to obtain credit under Section 364(c), the Debtors must prove that (i) they are not able to obtain unsecured credit under Section 364(b) (i.e., by granting a Factor administrative expense priority); (ii) the credit transaction is necessary to preserve the assets of the estate; and (iii) the terms of the transaction are fair, reasonable and adequate, given the circumstances of the debtor-borrower and the proposed lender. *In re Aqua Assocs.*, 123 B.R. 192, 195-6 (Bankr. E.D. Pa 1991); *In re Crouse Group, Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa 1987); *In re Ames Dept Stores, Inc.,* 115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990).

24. Since substantially all of R&R's assets are already encumbered and given the Debtors' current liquidity condition, it was not possible to obtain credit on either an unsecured basis or by granting junior liens. In addition, the Debtors could not find a factor or lender willing to extend credit on a non-priority basis. The Debtors believe that the terms set forth in the Factoring Arrangement represent the best financial package currently available to them.

25. The Debtors submit that during the negotiations with Factor, it engaged in a reasonable process to identify other potential lending sources and that no further search is required. *See Bray v. Shenandoah Fed. Sav. & Loan Assn (In re Snowshoe Co., Inc.*), 789 F.2d 1085, 1088 (4th Cir. 1986); *In re Plabell Rubber Prods., Inc.*, 137

B.R. 897, 899-900 (Bankr. N.D. Ohio 1992*); In re Reading Tube Indus.*, 72 B.R. 329, 332 (E.D. Pa. 1987). Where there are few lenders likely to be able and/or willing to extend the necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom Anchor Sav. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117,120 n.4 (N.D. Ga. 1989); *In re Ames Dep't Stores, Inc.,* 115 B.R. 34,40 (Bankr. S.D.N.Y. 1990).

26.	The Debtors believe that the terms set forth in the Factoring Arrangement are appropriate and reasonable, and it submits that this reasonable business judgment should be approved. *See In re Trans World Airlines, Inc.,* 163 B.R. 964, 974 (Bankr. D. Del 1994) (noting that the interim loan, receivable facility and asset based facility were approved because they "reflect[ed] sound and prudent business judgment ... [were] reasonable under the circumstances and in the best interests of TWA and its creditors"); *Group of Institutional Investors v. Chicago Mil. St. P. & Pac. Ry.*, 318 U.S. 523, 550 (1943); *In re Simasko Prod. Co.*, 47 B.R. 444, 449 (Bankr. D. Colo. 1985) ("Business judgments should be left to the board room and not to this Court."); *In re Lifeguard Indus., Inc.*, 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983) (same). Bankruptcy courts typically defer to debtors' business judgment on most matters, including the decision to borrow money unless such decision is arbitrary and capricious. *See In re Trans World Airlines, Inc.* 163 B.R. at 974. In fact, "[m]ore exacting scrutiny would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate and

threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5`th Cir. 1985).

27. In conclusion, the Debtors' management determined that the Factoring Arrangement is the best and possibly only factoring or financing option available to the Debtors and that the terms of the Factoring Arrangement are fair, reasonable and in the best interests of the Debtors, its estate and its creditors. Therefore, the Debtors should be authorized to enter into the Factoring Arrangement.

### Approval of Interim Financing

28. Rule 4001 of the Bankruptcy Rules permits a court to approve a debtor's request for the use of post-petition financing on an interim basis "to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001. The Debtors' ability to conduct an orderly disposition of its businesses will be impaired without access to the Factoring Arrangement on an interim basis. The Debtors submit that the requested interim relief should be approved because it is necessary in order to avoid the immediate and irreparable damage to the Debtors, its estate and its creditors.

29. Therefore, the Debtors request that the Court consider entry of the Interim Order immediately upon consideration of this application. The Debtors submit that time is critically of the essence in connection with preservation of the Orders, such that, without approval of the Factoring Arrangement by April 6, 2010, the Debtors risk failure in delivery thereof.

## Good Faith

30. As indicated, the Debtors negotiated the terms of the Factoring Arrangement with Factor at arm's length and in good faith as required by Section 364(e) of the Bankruptcy Code, with all parties represented by experienced counsel. Accordingly, Factor should be entitled to the protection and benefits of Section 364(e) of the Bankruptcy Code to the extent that any or all of the provisions of the Factoring Arrangement, or any interim or final order of this Court pertaining thereto are hereinafter modified, vacated, stayed or terminated by subsequent order of this or any other court.

## Request for Final Hearing

31. Pursuant to Rule 4001(c)(2) of the Bankruptcy Rules, the Debtors request the Court to set a date for the Final Hearing that is on or before April 20, 2010, but in any event no later than 30 days from the Petition Date.

**WHEREFORE,** the Debtors respectfully requests that the Court enter the attached proposed Interim Order and otherwise schedule a hearing with respect to the Final Order.

Dated: New York, New York
      April 1, 2010

Respectfully submitted,

TODTMAN, NACHAMIE, SPIZZ
   & JOHNS, P.C.
Attorneys for the Debtors and Debtors in Possession

By: s/ Alex Spizz
    Alex Spizz, Esq.
    425 Park Avenue
    New York, New York 10022
    (212) 754-9400