UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

In re:                                                        Chapter 11

ROCK & REPUBLIC ENTERPRISES, INC.,                           Case No. 10-11728 (AJG)
et al.,

                                        Debtors.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

### INTERIM ORDER AUTHORIZING DEBTOR
### TO ENTER INTO FACTORING AGREEMENT
### AND AUTHORIZING THE PURCHASE AND SALE OF ACCOUNTS
### WITH PRIORITY OVER ADMINISTRATIVE EXPENSES AND
### SECURED BY LIENS ON PROPERTY OF THE ESTATE
### PURSUANT TO SECTIONS 363 AND 364 OF THE BANKRUPTCY CODE

**WHEREAS,** on April 1, 2010 (the "Petition Date"), Rock & Republic Enterprises, Inc.

("R&RE") and Triple R. Inc. ("Triple R"), debtors and debtors-in-possession (collectively, the

"Debtors") filed voluntary petitions under Chapter 11 of Title 11, United States Code (the

"Bankruptcy Code"); and

**WHEREAS,** the Debtors have applied to the Court (the "Motion") for authorization,

pursuant to Bankruptcy Code § 363 and § 364(c), to ratify, reaffirm and adopt, as modified and

supplemented by this Order, the pre-petition factoring arrangement between R&RE and The CIT

Group/Commercial Services, Inc. ("Factor"), pursuant to the terms and conditions of (a) certain

pre-petition agreements, including without limitation (i) the Factoring Agreement dated as of

February 18, 2005 (as amended, modified and/or supplemented, the "Factoring Agreement"); (ii)

the Inventory Security Agreement dated February 18, 2005 (as amended, modified or

supplemented); (iii) the Letter of Credit Agreement dated July 27, 2006 (as amended, modified

or supplemented) and (iv) all other documents and agreements executed and delivered in

connection therewith, each as amended, modified and/or supplemented (collectively, the "Pre-

Petition Agreements"), copies of certain of which are annexed as Exhibit "A" hereto, pursuant to which, among other things, Factor purchased the accounts receivable of R&RE , Factor made loans, advances and/or other financial accommodations to R&RE, and R&RE granted to Factor liens, mortgages and security interests in substantially all of its personal property, including without limitation its accounts receivable (as such term is defined in the Pre-Petition Agreements, the "Accounts"), instruments, documents, chattel paper, general intangibles, unpaid seller's rights, investment property, inventory, income tax refunds, goodwill, credit balances and certain other property in Factor's possession or subject to Factor's control but excluding certain patents, trademarks and copyrights other than as set forth therein (collectively, the "Pre-Petition Collateral"), (b) the Supplement annexed as Exhibit "B" hereto (the "Supplement"), (c) the budget annexed as Exhibit "C" hereto, as extended from time to time by agreement of the Debtors, the Committee, and the Factor (the "Budget") and (d) this Order (collectively, the Supplement, the Budget and this Order shall be referred to hereinafter as the "the "Factoring Arrangement"); and

WHEREAS, Triple R , an affiliate of R&RE, operates the Debtors' retail operations, which operations have been funded in whole or part by advances and over advances made under the Pre-Petition Agreements and will be funded in whole or part post-petition by advances and over advances to be made under the Factoring Arrangement; and

WHEREAS, a preliminary hearing having been held before the Court on April 5, 2010 and a final hearing having been scheduled by the Court for April 21, 2010 (the "Final Hearing"); and after due deliberation;

**THE COURT HEREBY FINDS AND DETERMINES, ON AN INTERIM BASIS, THAT:**

(a)    The Court has jurisdiction over this proceeding and the parties to the Motion under §§ 157(b) and 1334 of title 28 of the United States Code. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, 364 and 552 of the Bankruptcy Code and Rules 4001(c)(1) and (c)(2) of the Federal Rules of Bankruptcy Procedure. Venue of the Debtors' cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

(b)    An immediate and critical need exists for the Debtors to obtain funds in order to continue operation of their business in the ordinary course.  If the Debtors do not have emergency borrowing authority and are unable to make payments, when due, to their employees, vendors and suppliers, or meet the demands of their customers, the abrupt cessation of the Debtors' businesses would be required causing irreparable harm to the Debtors' estates. The ability of the Debtors to factor their Accounts to meet working capital and liquidity needs is essential to maintaining the Debtors' going concern value and to preserving and protecting the confidence of their employees, vendors, suppliers and customers.

(c)    Factor is willing to purchase the Debtors' post-petition Accounts and make advances and financial accommodations to the Debtors only upon the conditions contained in the Factoring Arrangement;

(d)    the Debtors are unable to obtain unsecured credit allowable under Bankruptcy Code § 503(b)(1) as an administrative expense;

(e)    the Debtors are unable to obtain secured credit allowable only under Bankruptcy Code § 364(c), except under the terms and conditions provided in this Order;

(f)     it is in the best interests of the Debtors' estates that Factor be allowed to purchase the Debtors' post-petition Accounts and extend credit and financial accommodations to the Debtors under the terms and conditions set forth herein, to prevent a dissipation of the Debtors' assets and to permit the Debtors to achieve a successful reorganization;

(g)     the Debtors admit, without prejudice to the rights of the Official Committee of Unsecured Creditors ("Committee") and third parties to challenge same to the extent set forth below, that as of the Petition Date, in accordance with the Pre-Petition Agreements, (1) the Debtors were indebted to Factor, without defense, counterclaim, recoupment or offset of any kind, in the aggregate amount of approximately $5.9 million in respect of loans, advances and other financial accommodations made by Factor to the Debtors in accordance with the Pre-Petition Agreements (the "Pre-Petition Obligations"), and (2) the Pre-Petition Obligations were secured by valid, enforceable and properly perfected first priority liens on and security interests in the Pre-Petition Collateral, the value of which exceeded the amount of the Pre-Petition Obligations (collectively, the "Admissions");

**AND THE COURT HEREBY FINDS AND DETERMINES:**

(h)     the purchase and sale of the Debtors' post-petition Accounts pursuant to this Order are valid and true purchases and sales thereof;

(i)     the purchase and sale of the Debtors' post-petition Accounts pursuant to this Order is in good faith and Factor is entitled to the protection of Bankruptcy Code § 363(m);

(j)     the credit and financial accommodations to be extended pursuant to this Order is being extended by Factor in good faith and Factor is entitled to the protection of Bankruptcy Code § 364(e);

(k)     notice of relief sought by the Motion and the hearings with respect thereto, believed by the Debtors to be the best available notice under the circumstances, has been given pursuant to Bankruptcy Rule 4001(c) to counsel to the creditors holding the twenty largest unsecured claims against the Debtors' estates, the Office of the U.S. Trustee and Factor, and no further notice of, or hearing on, the interim relief sought in the Motion is required; and

(l)     good and sufficient cause exists for the issuance of this Order, to prevent immediate and irreparable harm to the Debtors' estate;

**NOW, THEREFORE, IT IS HEREBY ORDERED, ON AN INTERIM BASIS:**

1.     The Debtors are hereby authorized and deemed to ratify and adopt the Pre-Petition Agreements, including the validity and enforceability of the Pre-Petition Obligations to Factor incurred thereunder and the liens and security interests granted to Factor thereunder, subject to the rights of the Committee and third parties to challenge same to the extent set forth below.

2.     The Debtor are authorized to sell the Debtors' post-petition Accounts to Factor, and Factor is authorized to purchase the Debtors' post-petition Accounts, and to make payments, loans, advances over-advances and/or other financial accommodations to the Debtors, all at CIT's sole discretion (not to exceed $3.0 million during the period of this Interim Order) under the terms and conditions of the Factoring Arrangement but subject to the Budget. Factor and the Debtors may amend, modify, supplement, waive the provisions of and/or extend the term of the

Factoring Arrangement, without further order of the Court provided that such amendments, modifications, supplements and/or waivers do not materially alter the provisions of the Factoring Arrangement, and written notice of such amendments, modifications, supplements, waivers and/or extensions is given to the Noticed Parties (as such term is defined below) and filed with the Court. With respect to payments, loans, advances and/or other financial accommodations made to the Debtors by Factor, Factor is authorized, as and may be appropriate and in reliance on representations of the Debtors as to the post-petition nature, to make payment as directed by the Debtors, directly to or on account of post-petition obligations of the Debtors, including but not limited to vendors, warehousemen, freight carriers and customs authorities.

3.      As adequate protection for any post-petition diminution in value of Factor's interests in the Pre-Petition Collateral, including without limitation that caused by the Debtors' use of the Pre-Petition Collateral and/or Factor's Cash Collateral (as such term is defined in Bankruptcy Code § 363(a)), Factor is hereby granted a post-petition claim (the "Adequate Protection Claim") against the Debtors' estates subject to all valid prepetition liens of RKF, LLC ("RKF").

4.      Any and all Obligations, as such term is defined in the Pre-Petition Agreements, of the Debtors to Factor pursuant to the Factoring Arrangement whether arising prior or subsequent to the Petition Date (the "Obligations"), and the Adequate Protection Claim (collectively, the "Post-Petition Claim") shall have priority in payment over any other obligations now in existence or incurred hereafter by the Debtors, and over all administrative expenses or charges against property of the kind specified in Bankruptcy Code §§ 503(b), 506(c), 507(a) and 507(b), whether arising in the Debtors' Chapter 11 cases or in any superseding Chapter 7 cases; provided, however, that the Post-Petition Claim shall be paid from recoveries

upon causes of action brought pursuant to Bankruptcy Code §§ 544-550 and §553 only to the extent permitted in the Final Order (as defined herein).

5.       Pursuant to Bankruptcy Code §§ 362, 363(e) and 364(c), as security for the Post-Petition Claim, the Debtors are hereby authorized to and do grant to Factor a valid, binding, enforceable and perfected lien and/or security interest, subject only to valid liens existing as of the Petition Date as well as valid rights of set-off and not subject to avoidance by a trustee under the Bankruptcy Code, in all of the Debtors' presently owned or hereafter acquired property and assets, whether such property and assets were acquired by the Debtors before or after the Petition Date, of any kind or nature, whether real or personal, tangible or intangible, wherever located, and the proceeds and products thereof (collectively, the "Collateral") (to the extent acquired after the Petition Date, the "Post-Petition Collateral"), including without limitation (i) Accounts; (ii) Certificated Securities; (iii) Chattel Paper; (iv) Commercial Tort Claims; (v) Computer Hardware and Software and all rights with respect thereto, including, any and all licenses, options, warranties, service contracts, program services, test rights, maintenance rights, support rights, improvement rights, renewal rights and indemnifications, and any substitutions, replacements, additions or model conversions of any of the foregoing; (vi) Contract Rights; (vii) Deposit Accounts, Cash and Cash Equivalents; (viii) Documents;  (ix) Equipment; (x) Financial Assets; (xi) Fixtures; (xii) General Intangibles, including Payment Intangibles and Software; (xiii) Goods (including all of its Equipment, Fixtures and Inventory), and all accessions, additions, attachments, improvements, substitutions and replacements thereto and therefor; (xiv) Instruments; (xv) Intellectual Property; (xvi) Inventory; (xvii) Investment Property; (xviii) money (of every jurisdiction whatsoever); (xix) Letter-of- Credit Rights (including as beneficiary under any Letter of Credit on drop shipment sales or otherwise);

(xx) Leasehold Interests; (xxi) Payment Intangibles; (xxii) Real Property; (xxiii) Security Entitlements; (xxiv) Software; (xxv) Supporting Obligations; (xxvi) Uncertificated Securities; (xxvii) all books, records, writings, data bases, information and other property relating to, used or useful in connection with, or evidencing, embodying, incorporating or referring to any of the foregoing; and (xxviii) claims, causes of action and recoveries pursuant to Bankruptcy Code §§ 544-550 and § 553 to the extent so provided in the Final Order.

6.      Notwithstanding the pre-petition or post-petition Liens of Factor under the Factoring Arrangement, the Collateral may be used by the Debtors, if sufficient unencumbered funds are not available from the Debtors' estates, to pay (collectively, the "Carve-Out"):

(A)     the statutory fees of the United States Trustee pursuant to 28 U.S.C. § 1930(a) (6) and any interest thereon pursuant to 31 U.S.C. § 3717, and any unpaid fees due and owing to the Clerk of the Court;

(B)     the allowed fees and expenses of professionals retained and approved pursuant to final orders of the Court ("Professionals") by the Debtors and the Committee rendering services in aggregate amount not to exceed $192,500;

(C)     the allowed fees and expenses of any Chapter 7 or Chapter 11 Trustee under Bankruptcy Code § 726(b), including without limitation the allowed fees and expenses of the Chapter 7 or Chapter 11 Trustee's Professionals, in aggregate amount not to exceed $10,000.

Factor may in its sole and absolute discretion establish a reserve under the DIP  Factoring Arrangement with respect to the Carve-Out obligations under this paragraph.  To the extent the aggregate amount of the Carve Out is reserved by the Factor in accordance with the schedule set forth in the Budget, it shall be held solely for the benefit of the fees and expenses provided for in

this Paragraph 6 (the "Reserve"); provided however, notwithstanding any other provision hereof the amount of the Carve Out shall be limited to the amount in the Reserve (other than the statutory fees set forth in subparagraph 6(a)). All payments received by Professionals with respect to fees and expenses within the scope of the Carve-Out (exclusive of pre-petition retainers) shall reduce the respective Carve-Out on a dollar-for-dollar basis.

7. Subject to paragraph 26 herein, to the extent that cross-collateralization is granted pursuant to this Order, nothing contained herein shall limit the Court's ability to fashion an appropriate remedy should the Court determine that (a) the interests of Factor in the Pre-Petition Collateral are invalid or avoidable in whole or in part, or (b) the amount of the Obligations as of the Petition Date was less than the value of Factor's interest in the Pre-Petition Collateral as of the Petition Date, and (c) Factor was unduly advantaged by such cross-collateralization.

8. The liens, mortgages and security interests granted to Factor hereunder to secure the Post-Petition Claim shall not be subject to any lien, mortgage or security interest or any other interest which is avoided and which would otherwise be preserved for the benefit of the Debtors' estates under Bankruptcy Code § 551, and the liens, mortgages and security interests granted to Factor hereunder shall encumber and constitute a prior lien, mortgage and security interest in and to any lien, mortgage, security interest or interest which is avoided and which would otherwise be so preserved for the benefit of the Debtors' estates.

9. Effective, *nunc pro tunc* to the date of this Interim Order, upon the entry of a Final Order containing such provision, the Debtors waive irrevocably all rights, if any, they might otherwise assert against the Collateral pursuant to Bankruptcy Code §§ 506(c) or 552(b).

10. Effective, *nunc pro tunc* to the date of this Interim Order, upon the entry of a Final Order containing such provision, no entity in the course of this bankruptcy case, whether

Chapter 11 or subsequent Chapter 7, shall be permitted to recover from the Collateral, whether directly or through grant of derivative standing in the name of the Debtors and/or the Debtors' estate, any cost or expense of preservation or disposition of the Collateral, including, without limitation, expenses and charges as provided in Bankruptcy Code §§ 506(c) or 552(b) without the prior written consent of Factor. Effective, *nunc pro tunc* to the date of this Interim Order, upon the entry of a Final Order containing such provision, no entity shall be permitted to recover from the Collateral, or assert against Factor, any claim with respect to any unpaid administrative expense of the Debtors' bankruptcy cases.

11. The Debtors shall not use Cash Collateral other than in accordance with the provisions of paragraph "3" of this Order. So long as there are any Obligations outstanding to Factor, unless Factor shall have given its prior written consent, or the Court enters an order, upon proper notice to Factor and a hearing, requiring that all of the Debtors' Obligations to Factor be immediately satisfied in full, there shall not at any time be entered in the Debtors' Chapter 11 cases any further orders which authorize: (a) under Bankruptcy Code § 363, the use of Cash Collateral in which Factor has an interest, or the sale, use, or lease, other than in the ordinary course of business, of other property of the Debtors in which Factor has an interest; (b) the obtaining of credit or the incurring of indebtedness pursuant to Bankruptcy Code § 364(c) or § 364(d), or any other grant of rights against the Debtors and/or their estates, secured by a lien, mortgage or security interest in the Collateral held by Factor or entitled to priority administrative status; or (c) the return of goods by the Debtors pursuant to Bankruptcy Code § 546(h).

12. In addition to the fees, costs, charges and expenses authorized under the Factoring Arrangement, Factor shall be entitled to charge the Debtors' account or receive reimbursement thereof, in either case as Obligations of the Debtors, on five (5) business days written notice to

the Noticed Parties (as such term is defined below) (the "Fee Notice"), but without application to the Court, for all of Factor's reasonable attorneys' and other professionals' fees arising from or related to (a) the Factoring Arrangement, including without limitation the negotiating, closing, documenting and obtaining of Court approval thereof, (b) all proceedings in connection with any Disposition (as such term is defined below), (c) all proceedings in connection with the interpretation, amendment, modification, enforcement, enforceability, validity or carrying out of the Pre-Petition Agreements or this Order at any time, (d) all other matters and proceedings arising in or related to the Debtors' bankruptcy cases, and (e) all reasonable expenses, costs and charges in any way or respect arising in connection therewith or related thereto. The Fee Notice shall be accompanied by copies of such professionals' invoices to Factor, subject to redaction against disclosure of privileged and/or confidential information, and such invoices shall be charged to the Debtors' account as provided for herein unless, prior to the expiration of the five (5) business day period, appropriate pleadings objecting thereto are filed with the Court by any of the Noticed Parties, on notice to Factor.

13.    The Debtors, at their expense, shall continue to keep the Collateral (a) fully insured against all loss, peril and hazard and make Factor loss payee as its interests appear under such policies, and (b) shall pay any and all post-petition taxes, assessments and governmental charges with respect to such collateral all as provided under the Factoring Arrangement, and will provide Factor with proof thereof within three (3) business days of written demand and will give Factor access to its records in this regard.

14.    The automatic stay provisions of Bankruptcy Code § 362 are hereby modified to permit (a) the Debtors to implement the terms of the Factoring Arrangement, and (b) the Debtors to create, and Factor to perfect, any and all post-petition liens, mortgages and security interests

granted hereunder. Factor shall not be required to file UCC financing statements or other instruments with any other filing authority to perfect any post-petition lien, mortgage or security interest granted by this Order or take any other action to perfect such post-petition liens, mortgages and security interests. If, however, Factor shall, in its sole discretion, elect for any reason to file, record or serve any such financing statements or other documents with respect to such post-petition liens and security interests, the Debtors shall execute same upon request and the filing, recording or service thereof (as the case may be) shall be deemed to have been made at the time and on the date of the commencement of the Debtors' Chapter 11 case on the Petition Date.

15. The time of payment of any and all Obligations of the Debtors to Factor shall not be altered, extended or impaired by any plan or plans of reorganization that may hereafter be accepted or confirmed or any further orders of the Court which may hereafter be entered.

16. Each of the following shall constitute an "Event of Default" under this Order:

(a) the Debtors' Chapter 11 cases are either dismissed or converted to Chapter 7 cases;

(b) a trustee or an examiner with expanded powers is appointed in the Debtors' Chapter 11 cases;

(c) any plan of reorganization of the Debtors are confirmed which does not provide for the payment in full of the Obligations upon the effective date of the plan, unless otherwise agreed by Factor in its sole and absolute discretion;

(d) the Court enters an order authorizing the sale of all or substantially all assets of the Debtors that does not provide for the payment in full of the Obligations in

cash upon the closing of the sale, unless otherwise agreed by Factor in its sole and absolute discretion;

(e)     the Debtors cease operations of their present businesses or takes any material action for the purpose of effecting the foregoing without the prior written consent of Factor;

(f)     this Order is reversed, vacated, stayed, amended, supplemented or otherwise modified in a manner which shall, in the sole opinion of Factor, materially and adversely affect the rights of Factor hereunder or shall materially and adversely affect the priority of any or all of Factor's claims, liens or security interests;

(g)     the occurrence subsequent to the Petition Date of an Event of Default under the Pre-Petition Agreements, other than any Event of Default occurring and/or existing solely because of (1) the commencement of the Bankruptcy Case on the Petition Date, and/or (2) the breach of any financial covenant set forth in the Pre-Petition Agreements;

(h)     (1) the Debtors expend any funds or monies for any purpose other than those set forth on the Budget, (2) the Debtors expend any funds or monies in excess of the amounts authorized in the Budget, provided that for the cumulative Budget periods which have occurred the Debtors' actual cash disbursements may be up to seven and one half percent (7.5%) more than the cumulative budgeted amount for cash disbursements through the conclusion of such Budget periods without such expenditures constituting an Event of Default, and/or (3) the Debtors fail to achieve revenues of at least ninety-two and one half  percent (92.5%) of the revenue projections set forth in the Budget for the

cumulative Budget periods which have occurred, tested weekly thereafter on a four week trailing basis;

(i)     the occurrence subsequent to the Petition Date of a material adverse change in (1) the condition (financial or otherwise), operations, assets, business or prospects of the Debtors, (2) the Debtors' ability to pay the Obligations in accordance with the terms of the Factoring Arrangement, (3) the value of the Collateral or (4) the practical realization of the benefits of Factor's rights and remedies under the Factoring Arrangement, as determined by Factor in its sole and absolute discretion;

(j)     non-compliance or default by the Debtors with any of the terms and provisions of this Order; provided, however, that said non-compliance or default shall not be deemed an Event of Default if curable and cured by the Debtors within five (5) business days after notice of such non-compliance or default is given to the Debtors by Factor;

(k)     Michael Ball fails to provide Factor with reaffirmation of that certain pre-petition guaranty within three (3) day after the entry of this order by the Bankruptcy Court; or

(l)     the Final Hearing shall not have taken place on or before April 30, 2010.

17.     Upon the occurrence of an Event of Default (as such term is defined in the Factoring Arrangement) and the giving of five (5) days written notice thereof (the "Default Notice") by Factor to the Debtors', the Committee and RKF's respective counsel and the Office of the United States Trustee (the "Noticed Parties"), or upon the occurrence of the Termination Date (as such term is defined below):

(a)     Factor shall have no further obligation to purchase Accounts and/or to make loans, advances, and/or other financial accommodations to the Debtors;

(b)     Factor shall have the right, free of the restrictions of Bankruptcy Code § 362 or under any other section of the Bankruptcy Code or applicable law or rule, to take immediate reasonable action to protect the Collateral;

(c)     the Debtors shall immediately segregate all of Factor's Collateral, including without limitation Cash Collateral, and shall not be permitted to use such Collateral absent Factor's prior written consent;

(d)     with respect to the Events of Default other than those specified in subparagraphs "(a)" through "(e)" of the preceding paragraph of this Order, the Noticed Parties shall have five (5) business days from the receipt of the Default Notice (the "Remedy Notice Period") to cure the default (if curable) or obtain an order of the Court on notice to Factor enjoining or restraining Factor from exercising its rights and remedies based upon the Event of Default specified in the Default Notice ("Restraint on Remedies"), provided that the sole grounds on which any of the Noticed Parties may seek a Restraint on Remedies shall be to allege either non-occurrence or timely cure of the Event of Default specified in the Default Notice;

(e)     payment of any and all Obligations of the Debtors to Factor arising out of or incurred pursuant to the Factoring Arrangement shall be due and payable, and Factor shall have the right, free of the restrictions of Bankruptcy Code § 362 or under any other section of the Bankruptcy Code or applicable law or rule, to exercise its rights and remedies pursuant to the Pre-Petition Agreements, this order and/or applicable law as to all or such part of the Collateral as Factor, in its sole discretion, shall elect:  (1) with

respect to the Events of Default specified in subparagraphs "(a)" through "(e)" of the preceding paragraph of this Order, immediately upon the giving of the Default Notice;  or (2) with respect to Events of Default other than those specified in subparagraphs "(a)" through "(e)" of the preceding paragraph of this Order, immediately upon expiration of the Remedy Notice Period unless a Restraint on Remedies has timely been obtained from the Court; or (3) upon the occurrence of the Termination Date, immediately.

18.     The Debtors shall provide Factor with such written reports, certified by the Chief Executive Officer, Chief Restructuring Officer, president or vice-president of the Debtors to be accurate to the best of his knowledge, information and belief, as are required under the Pre-Petition Agreements, and such additional written reports as Factor, in its reasonable discretion, shall require.

19.     The Debtors are directed to keep their books and records of original entry, including without limitation, records of sale, credits authorized (whether or not credit memoranda have been issued), purchases, accounts receivable, bills of lading, cash receipts, and cash disbursements, current and updated, so that all business activity is posted to them promptly.

20.     Factor shall have the right, upon twenty-four (24) hours telephone or facsimile-transmitted written notice to the Debtors, at any time during the Debtors' normal business hours, to inspect, audit, examine, check, make copies of or extracts from the books, accounts, checks, orders, invoices, bills of lading, correspondence and other records of the Debtors, and to inspect, audit and monitor all or any part of the Collateral, and the Debtors shall make all of same available to Factor and its representatives, for such purposes.  Factor's representatives may make recommendations to the Debtors regarding cost-cutting measures and the implementation thereof, and discuss any of the foregoing with the Debtors' officers, retained professionals or

employees, all without Factor being deemed to be in control of, or a fiduciary for, any of the Debtors.

21.     The pre-petition clearing, dominion, lockbox and similar accounts maintained by or on behalf of the Debtors pursuant to the Pre-Petition Agreements at certain banking institutions for the collection of the Accounts and the proceeds of Factor's Collateral (including without limitation receivables and other proceeds arising from the Debtors' sales of inventory and/or performance of services) in the ordinary course of the Debtors' business, and the payment procedures under which such accounts are administered (collectively, the "Collection Accounts and Procedures"), shall continue in full force and effect unless otherwise directed by Factor. Without limitation of the foregoing, from and after the date of this Order, the Debtors shall remit to Factor such cash, cash equivalents and checks as are proceeds of Factor's Collateral obtained in the ordinary course of the Debtors' business to Factor, and/or shall cause customers and account debtors of the Debtors to remit such cash, cash equivalent and checks as are proceeds of Factor's Collateral, in accordance with the Collection Accounts and Procedures and in accordance with the terms and conditions of the Pre-Petition Agreements, including amendments thereto contemplated by the Supplement.

22.     To the extent that as of the date of this Order, the Debtors maintain custody and/or control of any cash, cash equivalents or checks, whether in its possession, in bank accounts, in lockbox accounts or otherwise, and such cash, cash equivalents or checks are proceeds of any Receivable purchased by Factor or of Factor's Collateral, upon entry of this Order the Debtors shall deliver such cash, cash equivalents or checks, and the proceeds thereof, to Factor.

23.     The Debtors and any successor to the Debtors, including without limitation any successor trustee or trustees, shall (a) assign or direct to Factor any and all payments, proceeds or

other consideration ("Proceeds") realized upon the sale, liquidation, collection or disposition of the Collateral, including without limitation the proceeds of sales authorized pursuant to Bankruptcy Code § 363 or any plan of reorganization (a "Disposition"), and (b) immediately deliver any and all Proceeds which come into their possession to Factor in the form received. In furtherance of the foregoing, neither the Debtors nor the Committee shall seek to cause the escrow of, enjoin Factor's receipt of, or otherwise withhold from Factor any Proceeds of any Disposition, and any order of the Court authorizing a Disposition shall provide for Factor's receipt of Proceeds in accordance with the provisions of this paragraph.

24.     Factor is authorized to accrue interest on the outstanding balance of the Obligations and to charge the Debtors' account therefor pursuant to the Factoring Arrangement, and to apply remittances from the Debtors against interest as set forth herein.

25.     Factor is authorized, notwithstanding the provisions of Bankruptcy Code § 362 but subject to valid prepetition liens, to retain and apply the Proceeds of the Collateral to the repayment of the Obligations, first to fees, costs and expenses authorized by the Factoring Arrangement, then to interest and principal with respect to the Pre-Petition Obligations, until such time as the Pre-Petition Obligations are indefeasibly paid in full and completely satisfied, and then to the remaining Obligations. Such applications of the Proceeds shall be free and clear of any claim, charge, assessment or other liability including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, Bankruptcy Code §§ 506(c) or 552(b).

26.     Without prejudice to the rights of third parties to the extent set forth in the following paragraph of this Order, (a) the Admissions shall be binding upon the Debtors in all circumstances, (b) the validity, extent, priority, perfection, enforceability and non-avoidability of the Factor's pre-petition claims against the Debtors and/or pre-petition Liens shall not be subject

to challenge by the Debtors, (c) the Debtors shall not seek to avoid or challenge (whether pursuant to Chapter 5 of the Bankruptcy Code or otherwise) any transfer made by or on behalf of the Debtors to or for the benefit of the Factor prior to the Petition Date, and (d) the Debtors hereby release and waive all defenses, affirmative defenses, counterclaims, claims, causes of action, recoupments, setoffs or other rights that it may have to contest (1) any provisions of the respective Pre-Petition Agreements, (4) the amount of the respective Pre-Petition Obligations and/or the value of the Pre-Petition Collateral on the Petition Date, or (5) the conduct of Factor and its directors, officers, employees, agents, attorneys and other professionals (collectively, the "Factor Parties") in administering the pre-petition business relationship between the Debtors and the Factor, including without limitation "equitable subordination," "lender liability" and/or "deepening insolvency" claims and causes of action. The Factor shall not have any Carve-Out obligations to the Debtors or to any of the Debtors' Professionals with respect to any investigation or litigation (whether threatened or pending) by the Debtors with respect to any matter released, waived or specified as not subject to challenge by the Debtors pursuant to this paragraph.

27. Notwithstanding the Debtors' release and waiver set forth in the preceding paragraph of this Order, the Committee (which is hereby granted standing for purposes of the following) and any other person or entity with appropriate standing shall have through and until the sixtieth day (60th) day following the date on which the order approving the appointment of counsel to the Committee is entered (or the first business day thereafter if such day is not a business day) to commence an adversary proceeding or contested matter, as appropriate under the Federal Rules of Bankruptcy Procedure, against the Factor for the purpose (collectively, a "Challenge") of (1) challenging the amount, validity, extent, priority, perfection, enforceability

and non-avoidability of Factor's pre-petition claims against the Debtors and/or Liens, (2) seeking to avoid or challenge (whether pursuant to Chapter 5 of the Bankruptcy Code or otherwise) any transfer made by or on behalf of the Debtors to or for the benefit of the Factor prior to the Petition Date, and/or (3) seeking damages or equitable relief against the Factor or the Factor Parties arising from or related to the pre-petition business relationship between the Debtors and the Factor, including without limitation "equitable subordination", "lender liability" and/or "deepening insolvency" claims and causes of action. Any person or entity that fails to obtain appropriate standing (if required) and commence a Challenge within such stated time period shall be, and hereby are, barred forever from commencing a Challenge. The foregoing is without prejudice to the Factor's legal and equitable claims, counterclaims, defenses and/or rights of offset and setoff in response to any such Challenge, all of which are reserved, and the foregoing shall in no event revive, renew or reinstate any applicable statute of limitations which may have expired prior to the date of initiation of such Challenge. Nothing contained herein shall limit the Court's ability to fashion an appropriate remedy should the Court determine, by entry of a final and non-appealable order and judgment, a Challenge in favor of the plaintiffs therein. The Factor shall not have any Carve-Out obligations to any person or entity (including without limitation the Committee) or to any Professional of such person or entity with respect to any pending or commenced Challenge, but the Carve-Out may be used by the Committee to investigate any matter for which a Challenge may be properly commenced.

28.     Pursuant to the provisions of Bankruptcy Code § 364(e), the liens, mortgages and security interests granted under or ratified by this Order, and pursuant to Bankruptcy Code § 363(m), the validity of Factor's purchase of the Debtors' post-petition Accounts, shall be

binding on the Debtors or any successor trustee or trustees even if this Order is reversed or modified on appeal.

29. The Debtors are hereby authorized and directed to do and perform all acts and to make, execute and deliver all instruments and documents which may be required or necessary for the performance of the Factoring Arrangement including, without limitation, the delivery to Factor of the original checks or other forms of remittance received by the Debtors which are the proceeds of the Collateral, and the payment by the Debtors of any monies or assets in its possession of all sums required to be paid to Factor under the Factoring Arrangement.

30. Nothing in this Order shall preclude the Court from entering a final order containing provisions inconsistent with or contrary to the provisions of this Order; provided, however, that Factor shall be entitled to the benefits and protections of this Order, including the protections afforded pursuant to Bankruptcy Code §§ 363(m) and 364(e), with respect to all purchases of Accounts, loans, advances and/or financial accommodations made by Factor to or for the benefit of the Debtors pursuant to this Order. Pursuant to the provisions of Bankruptcy Code §§ 363(m) and 364(e), the liens, mortgages and security interests granted under or ratified by this Order shall be binding on the Debtors or any successor trustee or trustees even if this Order is reversed or modified on appeal.

31. The terms and conditions of this Order shall be: (a) immediately enforceable pursuant to Bankruptcy Rule 8005; and (b) not be stayed absent (1) an application by a party in interest for such stay in conformance with such Bankruptcy Rule 8005, and (2) a hearing upon notice to the Debtors and Factor.

32. The provisions of this Order and any actions taken pursuant hereto shall survive entry of any orders which may be entered confirming any plan of reorganization or which may

be entered converting this case from Chapter 11 to Chapter 7 of the Bankruptcy Code; provided, further, that the terms and provisions of this Order, as well as the liens, mortgages and security interests and the Post-Petition Claim granted under this Order, shall continue in this or any superseding case under the Bankruptcy Code and such liens, mortgages and security interests and the Post-Petition Claim shall maintain their priority as provided by this Order until the Debtors' Obligations to Factor are satisfied in full.

33.     The Factoring Arrangement shall be in effect for the period commencing with the Petition Date through and including June 30, 2010 (the "Expiration Date") unless otherwise extended from time to time pursuant to a mutually acceptable period:  (a) as may be agreed to by Factor, Debtors and the Committee, without further order of the Court, or (b) as may be agreed to by Factor and Debtors, and authorized by further order of the Court;  provided, however, that if a final order approving the Factoring Arrangement, acceptable to Factor in its sole discretion, has not been entered by the Court by the thirtieth (30th) day following the date of this Interim Order (the "Interim Expiration Date"), then the Expiration Date shall be the Interim Expiration Date.

34.     The Final Hearing with respect to the continued Factoring Arrangement is hereby scheduled for April 21, 2010 at 11:00 a.m. Objections thereto shall be in writing and shall be filed with the Court and served on (a) counsel to the Debtors; (b) counsel to Factor, and (c) the Office of the United States Trustee, with a copy hand delivered to Chambers, on or before April 16, 2010.

35.     The Debtors shall serve a copy of this Order, together with the Exhibits hereto, by telecopy, e-mail (if agreed to by the recipient), overnight courier, by hand delivery or by first-class mail on (a) the United States Trustee, (b) the attorneys for the Factor , (c) the attorneys for RKF, (d) all creditors known to the Debtors who may assert liens against any of the Debtors'

assets, (e) the parties appearing on the Debtors' Consolidated List of the 25 Largest Unsecured Creditors; and (e) those parties that have requested special notice pursuant to Rule 2002 of the Bankruptcy Rule, no later than April 6, 2010.

36.    To the extent that any of the provisions of this Order shall conflict with any of the provisions of the Pre-Petition Agreements, this Order is deemed to control and shall supersede the conflicting provision(s) in said agreement(s). The Bankruptcy Court shall retain jurisdiction of all disputes regarding the Pre-Petition Agreements and this Order.

37.    Nothing in this Order shall prejudice or impair Factor's rights as sole and absolute owner of the Debtors' post-petition accounts receivable, including without limitation Factor's rights of collection thereof.

Dated:    April 6, 2010

**s/Arthur J. Gonzalez**
CHIEF UNITED STATES BANKRUPTCY JUDGE
