TODTMAN, NACHAMIE, SPIZZ & JOHNS, P.C.
Proposed Counsel to **Rock & Republic Enterprises, Inc.**
and **Triple R, Inc.**
Debtors and Debtors-in-Possession
425 Park Avenue
New York, NY 10022
(212) 754-9400
Alex Spizz, Esq.
Arthur Goldstein, Esq.
Jill Makower, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| ROCK & REPUBLIC ENTERPRISES, INC., <u>et al.</u>, | : | Case No. 10-11728(AJG) (Jointly Administered) |
| Debtors. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## NOTICE OF HEARING ON DEBTORS' APPLICATION FOR RETENTION OF ATLAS STRATEGIC ADVISORS, LLC AS INVESTMENT BANKER AND FINANCIAL ADVISOR PURSUANT TO 11 U.S.C. §§327(a) AND 328(a)

**PLEASE TAKE NOTICE,** that upon the Debtors' Application For Retention of Atlas Strategic Advisors, LLC as Investment Banker and Financial Advisor Pursuant To 11 U.S.C. §§327(a) and 328(a) (the "Application") filed by Rock & Republic Enterprises, Inc. ("R&R") and Triple R., Inc. ("TR"), debtors and debtors-in-possession (the "Debtors"), the Debtors, by their proposed counsel, Todtman, Nachamie, Spizz & Johns, P.C., shall move this Court before the Honorable Arthur J. Gonzalez, Chief United States Bankruptcy Judge,

254928v1

in Courtroom #523 at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004-1408 on the **28th** day of **April 2010** at **9:30 A.M.** (the "Hearing"), or as soon thereafter as counsel can be heard, for an order substantially in the form annexed to the Application as **Exhibit "A"**, authorizing the retention and employment of Atlas Strategic Advisors, LLC as Investment Banker and Financial Advisor to R&R in these Chapter 11 cases pursuant to sections 327(a) and 328(a) of the Bankruptcy Code.

      **PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Application and the relief requested therein: (a) shall be in writing; (b) shall comply with the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York; (c) shall set forth the basis for the response or objection, and the specific grounds therefore; (d) shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and, by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with a hard copy delivered directly to the Chambers of Chief Bankruptcy Judge Arthur J. Gonzalez) and served in accordance with General Order M-242; and (e) shall be further served so that they are **RECEIVED** no later than three (3) business days before the date of the Hearing by: (i) Todtman, Nachamie, Spizz & Johns, P.C., 425 Park Avenue, New York, New York 10022, Attn: Alex Spizz, Esq. and Arthur Goldstein, Esq., the undersigned proposed counsel for the Debtors; and (ii) the Office of the United States

Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Richard Morrissey, Esq.

Dated: New York, New York
April 13, 2010

<div style="margin-left: 40%;">

TODTMAN, NACHAMIE, SPIZZ
& JOHNS, P.C.
Attorneys for the Debtors and
Debtors in Possession

By: _____
Alex Spizz, Esq.
Arthur Goldstein, Esq.
Jill Makower, Esq.
425 Park Avenue
New York, New York 10022
(212) 754-9400

</div>

TODTMAN, NACHAMIE, SPIZZ & JOHNS, P.C.
Proposed Counsel to **Rock & Republic Enterprises, Inc.**
 and **Triple R, Inc.**
Debtors and Debtors-in-Possession
425 Park Avenue
New York, NY 10022
 (212) 754-9400
Alex Spizz, Esq.
Arthur Goldstein, Esq.
Jill Makower, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - --x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| ROCK & REPUBLIC ENTERPRISES, INC., et al., | : | Case No. 10-11728 (AJG) (Jointly Administered) |
| Debtors. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

### DEBTORS' APPLICATION FOR RETENTION OF ATLAS STRATEGIC ADVISORS, LLC AS INVESTMENT BANKER AND FINANCIAL ADVISOR PURSUANT TO 11 U.S.C. §§327(a) and 328(a)

**TO:    THE HONORABLE ARTHUR J. GONZALEZ**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

        Rock & Republic Enterprises, Inc. ("R&R") and Triple R, Inc. ("TR"), the debtors and

debtors in possession herein (collectively, the "Debtors"), by their proposed counsel,

Todtman, Nachamie, Spizz & Johns, P.C., hereby submit this application (the

"Application") and the accompanying affidavit of Julian Steinberg sworn to on April  *13*

2010 (the "Steinberg Affidavit") for the entry of an order substantially in the form annexed

hereto as **Exhibit "A"** (the "Proposed Order"), authorizing R&R to retain and employ

254851 v2

Atlas Strategic Advisors, LLC ("Atlas") as its investment banker and financial advisor in these Chapter 11 cases, pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code") under the terms of the engagement agreement dated March 26, 2010 (the "Engagement Agreement")[1] between R&R and Atlas, a true copy of which is annexed hereto as **Exhibit "B"**. In support thereof, the Debtors respectfully represent as follows:

## BACKGROUND

1.　　On April 1, 2010 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court, and an order for relief under section 301 of the Bankruptcy Code was entered in their cases (the "Chapter 11 Cases").

2.　　Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Debtors are continuing to operate their business and manage their property as debtors-in-possession.

3.　　No trustee, examiner or official committee of unsecured creditors has been appointed to serve in these cases as of the date of this Application.

4.　　The Debtors' Chapter 11 Cases are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

5.　　The Debtors are a wholesale and retail apparel company specializing in an avant-garde and distinctive line of clothing. Originally started in 2002 by its Chief

---

[1] Parties are urged to read the full text of the Engagement Agreement for the complete terms and conditions of the proposed retention of Atlas, including services to be rendered and proposed compensation. The terms of the Engagement Agreement will prevail in the event of any inconsistencies between the provisions of this Application and the terms of the Engagement Agreement, except to the extent otherwise provided by Court Order.

Executive Officer, Michael Ball, primarily as an American jeans company, the Debtors have expanded their lines to include high fashion clothing for men, women and children as well as shoes, cosmetics and accessories. The Debtors' merchandise can be found at most high end retail stores such as Nordstrom, Neiman Marcus, Bergdorf Goodman, Bloomingdales, Lord & Taylor, Harvey Nichols and Saks Fifth Avenue, as well as in small upscale boutiques.

6.     Additional information about the Debtors' business and the events leading up to the Petition Date can be found in the Affidavit of Geoffrey D. Lurie Pursuant to Local Bankruptcy Rule 1007-2 in Support of First Day Motions and Applications (the "Lurie Affidavit") which was filed on the Petition Date and which is incorporated herein by reference.

## JURISDICTION

7.     This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§157 and 1334. Venue is proper pursuant to 28 U.S.C. §§1408 and 1409. The statutory predicates for the relief sought herein are §§327(a) and 328(a) of the Bankruptcy Code.

## RELIEF REQUESTED AND THE BASIS THEREFOR

8.     By this Application, the Debtors seek entry of Proposed Order, authorizing R&R, pursuant to Bankruptcy Code sections 327(a) and 328(a), to employ and retain Atlas as its Investment Banker and Financial Advisor in these Chapter 11 cases, effective as of the Petition Date, under the terms of the Engagement Agreement, as more fully described below. R&R seeks to engage Atlas in connection with a potential transaction or transactions ("Transaction") consisting of either a capital raise from a third party investor

("Capital Raise") or the sale of a controlling interest or the entire R&R company to a third party (the "Divestiture").

9.     Atlas is an M&A focused boutique in the consumer space that was founded in 2004 and has advised on over $30 Billion in transactions since 2004. Atlas' professionals have extensive experience working with financially troubled companies in complex financial restructurings both in out-of-court situations and in Chapter 11 cases. The resources, capabilities and experience of Atlas in advising the Debtors to raise crucial financing or to find an acquirer are essential to the Debtors' success in these Chapter 11 Cases. The experienced financial advisors and consultants at Atlas will fulfill a critical service that will complement the services provided by the Debtors' other restructuring professionals.

10.    R&R wishes to employ and retain Atlas to perform the necessary services described hereinafter as Investment Banker and Financial Advisor pursuant to §§327(a) and 328(a) of the Bankruptcy Code. Atlas is prepared to provide immediate assistance to the Debtors. The Debtors have selected Atlas because of its experience in matters of this character and its exemplary qualifications. The retention and employment of Atlas is in the best interests of creditors and the best interests of the estates.

## SERVICES TO BE RENDERED BY ATLAS

11.    Atlas will provide certain strategic and financial advisory services with respect to Capital Raise from a third party investor and/or a potential sale of a controlling interest in R&R or a potential sale of the entire R&R entity to a third party. Atlas' resources, capabilities and experience in M&A transactions will be crucial to the Debtors' success in these Chapter 11 Cases. The experienced financial advisors and consultants

at Atlas will fulfill a critical service that complements the services provided by the Debtors' other restructuring professionals.  For these reasons, the Debtors require the advisory and consulting services of Atlas.

12.    The strategic and financial services that Atlas will render are described in greater detail in the Engagement Agreement.  Any references to or summaries of the Engagement Agreement herein are qualified by the express terms of the Engagement Agreement, which shall govern if there is any conflict.  Pursuant to the Engagement Agreement, Atlas would provide the following services to R&R:

(i)     Assist in conducting a strategic review of potential partner

(ii)    Perform financial analyses of R&R

(iii)   Identify Partner(s) both strategic and financial potentially interested in investing in R&R or re-financing existing indebtedness

(iv)   Prepare materials describing the business, operations, financial conditions and prospects of R&R for use in presentations to prospective lenders or investors

(v)    Source, contact and initiate dialogue with prospective Partner(s) using Atlas extensive industry contacts

(vi)   Assist in the coordination of any due diligence process initiated by prospective Partner(s) interested in lending to or investing in R&R

(vii)  Lead or participate in negotiations with any potential lender or investor in R&R.

## COMPENSATION OF ATLAS

13.    The Engagement Agreement provides that compensation will be payable to Atlas as follows:

(i)     A monthly retainer fee of $20,000 (twenty thousand dollars) creditable to any subsequent Success fee or to any expense reimbursement

(ii)    Under a Capital Raise:

A success fee ("Success Fees"), subject to a minimum success fee of $500,000 (five hundred thousand dollars), to be paid at the closing of a Capital Raise Transaction, to be determined as follows:

| Tranche of Transaction Value | Success Fee Percentage of Transaction Value |
|---|---|
| Up to and exceeding $15,000,000 | 5.00% |

b.  For the avoidance of doubt, a Capital Raise of $15,000,000 (fifteen million dollars) would entitle Atlas to a fee of $750,000 (seven hundred fifty thousand dollars).

(iii)   Under a Divestiture:

a.  A success fee ("Success Fee"), subject to a minimum success fee of $500,000 (five hundred thousand dollars) payable at the closing of the Transaction, as follows:

| Tranche of Transaction Value | Success Fee Percentage of Transaction Value |
|---|---|
| Up to and exceeding $50,000,000 | 2.50% |

b.  For the avoidance of doubt, a transaction value of $50,000,000 (fifty million dollars) would entitle Atlas to a success fee of $1,250,000 (one million two hundred and fifty thousand dollars).

c.  "Transaction Value" shall mean equity value, calculated as aggregate cash proceeds plus, without duplication, the value of any securities, notes, or other assets paid to the sellers received by the sellers, grossed up by the percentage ownership of the sellers, plus the amount of any debt (including all bank debt) assumed, redeemed or remaining outstanding in connection with any Transaction minus any cash left at R&R at the closing.

14.     The Engagement Agreement also provides for R&R to reimburse Atlas for all reasonable and documented out-of-pocket expenses, regardless of whether any Transaction is proposed or consummated.   No reimbursement of such expenses shall be made without Court order authorizing such reimbursement, after the filing of a fee application by Atlas.

15.     The Engagement Agreement also contains certain indemnification provisions.  (See Engagement Agreement, §4.)

16.     The Debtors believe that the compensation to be paid to Atlas under the Engagement Agreement and the terms and conditions of the Engagement Agreement are reasonable.

17.     Prior to the Petition Date, R&R paid a retainer of $20,000 to Atlas.

18.     To the best of the Debtors' knowledge, and except as disclosed in the Steinberg Affidavit, Atlas has not represented the Debtors, their creditors, or any other parties in interest, or their respective attorneys, in any matter relating to the Debtors or their estates.

19.     To the best of the Debtors' knowledge and except as otherwise disclosed in the Steinberg Affidavit, Atlas does not hold or represent any interest adverse to the Debtors' estates, Atlas is a "disinterested person" as that phrase is defined in §101(14) of the Bankruptcy Code, and Atlas's employment is necessary and in the best interests of the Debtors and their estates.

## APPLICABLE AUTHORITY

20.     Section 327(a) of the Bankruptcy Code provides:

Except as otherwise provided in this section, the trustee, with the court's approval, may employ one of more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. §327(a).

21.     Section 328(a) of the Bankruptcy Code provides, in relevant part, as follows:

(a)     The trustee. . . with the court's approval, may employ or authorize the employment of a professional person under section 327...of this title...on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

11 U.S.C. §328(a).

22.     This Court is authorized to grant the relief requested in this Application pursuant to Bankruptcy Code sections 327(a) and 328(a).

23.     This Application complies with Bankruptcy Rule 2014,[2] Bankruptcy Rule 6003[3] and Local Bankruptcy Rule 2014-1.[4]

---

[2]   Bankruptcy Rule 2014(a) provides, in relevant part, as follows:

(a) Application for an order of employment. An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to § 327... shall be made only on application of the trustee or committee...The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement

## NOTICE

24.     Notice of this Application will be given to: (a) the United States Trustee for the Southern District of New York; (b) Arent Fox LLP, proposed counsel to the Official Committee of Unsecured Creditors, (c) The CIT Group/Commercial Services, Inc.; (d) RKF, LLC and (e) all parties that have filed requests for service of papers. The Debtors submit that, under the circumstances, no other or further notice is required.

## NO PRIOR REQUEST

25.     No prior application for the relief requested herein has been made to this or any other Court.

---

for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).

[3] Bankruptcy Rule 6003(a) provides that:

Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding the following:

(a)     an application under Rule 2014.

Fed. R. Bankr. P. 6003(a).

[4] Local Bankruptcy Rule 2014-1 provides:

An application for the employment of a professional person pursuant to §§327 and 328 of the Bankruptcy Code shall state the specific facts showing the reasonableness of the terms and conditions of the employment, including the terms of any retainer, hourly fee, or contingent fee arrangement.

S.D.N.Y LBR 2014-1.

**WHEREFORE**, the Debtors respectfully request the Court to enter an order, substantially in the form annexed hereto, granting the relief requested herein, and granting such other and further relief as may be just and proper.

Dated: New York, New York
      April 12, 2010

ROCK & REPUBLIC ENTERPRISES, INC.
and TRIPLE R, INC.
Debtors and Debtors-in-Possession

By: _____
     Geoffrey N. Lurie,
     Chief Restructuring Officer

TODTMAN, NACHAMIE, SPIZZ & JOHNS, P.C.
Proposed Counsel to **Rock & Republic Enterprises, Inc.**
 and **Triple R, Inc.**
Debtors and Debtors-in-Possession
425 Park Avenue
New York, NY 10022
 (212) 754-9400
Alex Spizz, Esq.
Arthur Goldstein, Esq.
Jill Makower, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT NEW YORK

------------------------------------x

In re:                                                Chapter 11

ROCK & REPUBLIC ENTERPRISES,          Case No. 10-11728(AJG)
INC., <u>et al</u>.                              (Jointly Administered)

                    Debtors.

------------------------------------x

### AFFIDAVIT OF JULIAN STEINBERG IN SUPPORT OF DEBTORS' APPLICATION FOR RETENTION OF ATLAS STRATEGIC ADVISORS, LLC AS INVESTMENT BANKER AND FINANCIAL ADVISOR PURSUANT TO 11 U.S.C. §327(a) AND 328(a)

STATE OF NEW YORK     )
                      )  ss:
COUNTY OF NEW YORK    )


   **JULIAN STEINBERG**, being duly sworn, deposes and states:


   1.     I am a Managing Director of Atlas Strategic Advisors, LLC ("Atlas"), with

offices at 140 East 45th Street, 23rd Floor, New York, NY 10017.

2. I submit this affidavit in support of the application of Rock & Republic Enterprises, Inc. ("R&R") and Triple R, Inc. ("TR"), the debtors and debtors in possession herein (the "Debtors"), for entry of an order pursuant to sections 327(a) and 328(a) of title 11, United States Code (the "Bankruptcy Code"), authorizing R&R to retain and employ Atlas as its Investment Banker and Financial Advisor in these Chapter 11 cases under the terms of the engagement agreement dated March 26, 2010 (the "Engagement Agreement") between Atlas and R&R annexed to the Application as Exhibit "B", as modified herein and as modified by the proposed order annexed to the Application as Exhibit "A".

3. Except as otherwise noted herein, I have personal knowledge of the facts set forth herein.

4. Atlas hereby agrees that section 5 of the Engagement Agreement shall not be effective or enforceable. Atlas hereby further agrees that, notwithstanding section 7 of the Engagement Agreement, Atlas shall not be permitted to unilaterally terminate the Engagement Agreement prior to the effective date of a plan of reorganization in these Chapter 11 cases.

5. R&R seeks to engage Atlas in connection with a potential transaction or transactions ("Transaction") consisting of either a capital raise from a third party investor ("Capital Raise") or the sale of a controlling interest or the entire R&R company to a third party (the "Divestiture"), as set forth in the Engagement Agreement and the Debtor's Application.

6. Atlas is an M&A focused boutique in the consumer space that was founded in 2004 and has advised on over $10 Billion in transactions since 2004. Atlas'

professionals have extensive experience working with financially troubled companies in complex financial restructurings both in out-of-court situations and in Chapter 11 cases.

7. Atlas is prepared to provide immediate assistance to the Debtors. If retained, Atlas will provide certain strategic and financial advisory services with respect to a Capital Raise or a Divestiture. The strategic and financial services that Atlas will render are detailed in the Engagement Agreement. Atlas' resources, capabilities and experience in M&A transactions will be crucial to the Debtors' success in these Chapter 11 Cases. The experienced financial advisors and consultants at Atlas will fulfill a critical service that complements the services provided by the Debtors' other restructuring professionals.

8. Atlas understands that R&R is seeking entry of the proposed order annexed to the Application as Exhibit "A", and that compensation of Atlas and reimbursement of Atlas' proper expenses will be subject to Bankruptcy Court approval after the filing by Atlas of a proper fee application.

9. Atlas believes that the compensation of Atlas as provided in the Engagement Agreement and the terms of the Engagement Agreement are reasonable because it is in line with past practices and conforms to compensation paid in precedent industry transactions. Atlas believes that a minimum success fee of $500,000 payable upon closing of any transaction or capital raise is reasonable and in line with minimum success fees that Atlas accepts in order to engage on a mandate.

10. Prior to the Petition Date, R&R paid an engagement fee of $5,000 to Atlas which was applied to prepetition work performed by Atlas. Upon execution of a revised engagement agreement R&R paid Atlas a $20,000 monthly retainer of which

approximately $10,000 is outstanding. Atlas understands and agrees that the balance of that retainer may only be applied to fees or expenses awarded by the Bankruptcy Court after a fee application is filed by Atlas.

11. Atlas' affiliate, Atlas Advisors, LLC (the "Affiliate") may perform certain services under the Engagement Agreement.

12. No promises have been received by me or Atlas or the Affiliate as to payment or compensation in connection with the Debtors' Chapter 11 cases other than in accordance with the provisions of the Bankruptcy Code. Neither I nor Atlas have any agreement with any other entity to share with such entity compensation to be received by Atlas in connection with the Chapter 11 cases.

13. Atlas is a "disinterested person" as that term is defined in Bankruptcy Code section 101(14), because Atlas: (A) is not a creditor, an equity security holder, or an insider of any of the Debtors; (B) is not and was not, within 2 years before the date of the filing of the Debtors' Chapter 11 petitions, a director, officer, or employee of any of the Debtors; and (C) does not have an interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

14. Neither Atlas nor the Affiliate has an interest adverse to the Debtors, their creditors or other parties in interest.

15. Neither Atlas nor the Affiliate has any conflict in connection with advising R&R.

16. The Affiliate is a "disinterested person" as that term is defined in Bankruptcy Code section 101(14).

17. The foregoing constitutes the statement of Atlas pursuant to section 504 of the Bankruptcy Code and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure.

Julian Steinberg

Sworn to before me this
13th day of April, 2010

Notary Public

JUDITH N. LISI
Notary Public, State of New York
No. 01LI6146993
Qualified in New York County
Term Expires May 30, 2010

**EXHIBIT "A"**

TODTMAN, NACHAMIE, SPIZZ & JOHNS, P.C.
Proposed Counsel to **Rock & Republic Enterprises, Inc.**
 and **Triple R, Inc.**
Debtors and Debtors-in-Possession
425 Park Avenue
New York, NY 10022
 (212) 754-9400
Alex Spizz, Esq.
Arthur Goldstein, Esq.
Jill Makower, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| ROCK & REPUBLIC ENTERPRISES, INC., <u>et al.,</u> | : | Case No. 10-11728 (AJG) (Jointly Administered) |
| Debtors. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

### ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF ATLAS STRATEGIC ADVISORS, LLC AS INVESTMENT BANKER AND FINANCIAL ADVISOR TO THE DEBTORS

Upon the application (the "Application")[1] of Rock & Republic Enterprises, Inc. ("R&R") and Triple R, Inc. ("TR"), debtors and debtors in possession in these proceedings (collectively, the "Debtors"), pursuant to sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a), seeking authorization for R&R to employ and retain Atlas Strategic Advisors, LLC ("Atlas") as its Investment Banker and Financial Advisor pursuant to the terms set forth in the engagement agreement dated March 26, 2010 (the "Engagement Agreement") between R&R and Atlas annexed to the

---

[1] Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to it in the Application.

Application as Exhibit "B", as modified herein; and upon the Affidavit of Julian Steinberg, Managing Director of Atlas, filed in support of the Application (the "Steinberg Aff."); and the Court being satisfied, based on the representations made in the Application and the Steinberg Aff., that Atlas is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and, as required by section 327(a) and referenced by section 328(c) of the Bankruptcy Code, neither holds nor represents any interest adverse to the Debtors and their estates; and upon consideration of the Affidavit of Geoffrey D. Lurie Pursuant To Local Bankruptcy Rule 1007-2 In Support of First-Day Motions and Applications; and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York dated July 10, 1984 (Ward, Acting CJ); and consideration of the Application and the requested relief being a core proceeding the Bankruptcy Court can determine pursuant to 28 U.S.C. §157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§1408 and 1409; and due and proper notice of the Application having been provided to (a) the Office of the United States Trustee for the Southern District of New York, (b) Arent Fox, LLP, proposed counsel to the Official Committee of Unsecured Creditors; (c) The CIT Group/Commercial Services, Inc.; (d) RKF, LLC and (e) all parties that have filed requests for service of papers; and it appearing that no other or further notice need be provided; and the relief requested in the Application being in the best interests of the Debtors and their estates and creditors; and the Court having reviewed the Application; and the Court having determined that the legal and factual bases set forth in the

Application establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Application is approved to the extent provided herein *nunc pro tunc* to the Petition Date; and it is further

ORDERED that R&R is hereby authorized to employ and retain Atlas as its Investment Banker and Financial Advisor in the Debtors' Chapter 11 Cases under the terms of the Engagement Agreement, as modified herein, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code; and it is further

ORDERED, that Atlas shall provide the following services to R&R as set forth in the Engagement Agreement:

    (i)      Assist in conducting a strategic review of potential partner

    (ii)     Perform financial analyses of R&R

    (iii)    Identify Partner(s) both strategic and financial potentially interested in investing in R&R or re-financing existing indebtedness

    (iv)    Prepare materials describing the business, operations, financial conditions and prospects of R&R for use in presentations to prospective lenders or investors

    (v)     Source, contact and initiate dialogue with prospective Partner(s) using Atlas extensive industry contacts

    (vi)    Assist in the coordination of any due diligence process initiated by prospective Partner(s) interested in lending to or investing in R&R

    (vii)   Lead or participate in negotiations with any potential lender or investor in R&R.

; and it is further

ORDERED that upon application to the Court and subject to the United States

Trustee's rights to object to Atlas' interim and final fee applications (including the monthly retainer fee, success fees, or any expense reimbursement), Atlas shall be compensated for its services and reimbursed for any related expenses in accordance with the terms set forth in the Engagement Agreement, as modified herein, and Bankruptcy Code section 328, and applicable Bankruptcy Rules, Local Bankruptcy Rules and any other applicable orders of this Court; and it is further

**ORDERED** that notwithstanding anything to the contrary in the Bankruptcy Code, Bankruptcy Rules, Local Bankruptcy Rules or any order of this Court, or any guidelines regarding submission and approval of fee applications, Atlas shall only be required to maintain contemporaneous time records for services rendered in one-half hourly increments; and it is further

**ORDERED** that all requests by Atlas for the payment of indemnification as set forth in the Engagement Agreement shall be made by means of an application to the Court and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Agreement and is reasonable under the circumstances of the litigation or settlement in respect of which indemnity is sought, provided, however, that in no event shall Atlas be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty, gross negligence or willful misconduct; and it is further

**ORDERED** that in no event shall Atlas be Indemnified if the Debtors or a representative of the estates, asserts a claim for, and a court determines by final order that such claim arose out of Atlas' own bad-faith, self-dealing, breach of fiduciary duty, gross negligence, or willful misconduct; and it is further

**ORDERED** that in the event that Atlas seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Engagement Agreement, the invoices and supporting time records from such attorneys shall be included in Atlas' own applications, both interim and final, and such invoices and time records shall be subject to the United States Trustee's Guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court pursuant to sections 330 and 331 of the Bankruptcy Code without regard to whether such attorney[s] [has/have] been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy Section 330(a)(3)(C) of the Bankruptcy Code; and it is further

**ORDERED** that to the extent that there may be any inconsistency between the terms of the Engagement Agreement, the Application and this Order, the terms of this Order shall govern.

Dated: New York, New York
      April \_\_\_, 2010

 

 

_____
HON. ARTHUR J. GONZALEZ
CHIEF UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT "B"**

Atlas
Advisors | Strategic Advice
Mergers & Acquisitions

ATLAS STRATEGIC ADVISORS, LLC
140 EAST 45TH STREET, 23RD FLOOR
NEW YORK, NY 10017

March 26th, 2010

Michael Ball
Rock & Republic Enterprises, Inc.
3525 Eastham Drive
Culver City, CA 90232

Dear Michael:

We are pleased to confirm the arrangements under which Rock & Republic Enterprises, Inc. ("Rock & Republic" or the "Company") has chosen to engage Atlas Strategic Advisors, LLC ("Atlas") in connection with a potential Transaction (the Transaction as defined below).

For purposes of this agreement, "Transaction" means, whether in one or a series of transactions, the capital raise from a third party investor (the "Capital Raise") or the sale of a controlling interest or the entire company to a third party (the "Divestiture").

## Section 1. Scope of Engagement.

We see the scope of the assignment encompassing one of two separate Transactions, including a/the potential:

1.     Investment in company by a third party or

2.     Sale of a controlling interest or the entire Company to a third party

Based on the discussion held thus far, Atlas would advise the Company including:

Task

   (i)     Assist in conducting a strategic review of potential partner

   (ii)    Perform financial analyses of the Company

   (iii)   Identify Partner(s) both strategic and financial potentially interested in investing in the Company or re-financing existing indebtedness

1

(iv) Prepare materials describing the business, operations, financial conditions and prospects of the Company for use in presentations to prospective lenders or investors

(v) Source, contact and initiate dialogue with prospective Partner(s) using Atlas extensive industry contacts

(vi) Assist in the coordination of any due diligence process initiated by prospective Partner(s) interested in lending to or investing in the Company

(vii) Lead or participate in negotiations with any potential lender or investor in the Company

## Section 2.  Fees and Expenses.

(i) A monthly retainer fee of $20,000 (twenty thousand dollars) creditable to any subsequent Success fee or to any expense reimbursement

(ii) Under a Capital Raise:

   a. A success fee ("Success Fees"), subject to a minimum success fee of US$500,000 (five hundred thousand dollars), to be paid at the closing of a Capital Raise Transaction, to be determined as follows:

| Tranche of Transaction Value | Success Fee Percentage of Transaction Value |
|---|---|
| Up to and exceeding 15,000,000 | 5.00% |

   b. For the avoidance of doubt, a Capital Raise of $15,000,000 (fifteen million dollars) would entitle Atlas to a fee of $750,000 (seven hundred fifty thousand dollars).

(iii) Under a Divestiture:

   a. A success fee ("Success Fee"), subject to a minimum success fee of $500,000 (five hundred thousand dollars) payable at the closing of the Transaction, as follows:

| Tranche of Transaction Value | Success Fee Percentage of Transaction Value |
|---|---|
| Up to and exceeding 50,000,000 | 2.50% |

b. For the avoidance of doubt, a transaction value of $50,000,000 (fifty million dollars) would entitle Atlas to a success fee of 1,250,000 (one million two hundred and fifty thousand dollars).

c. "Transaction Value" shall mean equity value, calculated as aggregate cash proceeds plus, without duplication, the value of any securities, notes, or other assets paid to the sellers received by the sellers, grossed up by the percentage ownership of the sellers, plus the amount of any debt (including all bank debt) assumed, redeemed or remaining outstanding in connection with any Transaction minus any cash left at the Company at the closing.

In addition to any fee that may be payable to Atlas hereunder and regardless of whether any Transaction is proposed or consummated, the Company will reimburse Atlas, on a monthly basis, for all reasonable and documented out-of-pocket expenses, including but not limited to travel, lodging, copying, document production and research expenses incurred in performing our services hereunder.

## Section 3. Confidentiality.

Atlas agrees to keep all information received from the Company confidential except information that (i) is or becomes generally available to the public (other than as a result of a disclosure by Atlas in violation of this letter), (ii), was available to Atlas on a non-confidential basis prior to its disclosure by the Company , (iii) becomes available to Atlas on a non-confidential basis from a person other than the Company who is not known by Atlas to be otherwise bound by a confidentiality agreement with the Company , or is not known by Atlas to be otherwise prohibited from transmitting the information to Atlas, (iv) the Company  agrees may be disclosed or (v) Atlas is requested pursuant to, or required by, law, regulation, legal process or regulatory authority to disclose. Notwithstanding the preceding, Atlas may disclose any such confidential information to any of its advisors, provided that any such person or entity to whom such information is disclosed shall, as appropriate, have been informed by the provisions of this section and have agreed to be bound by its terms. The obligations of Atlas under the immediately preceding sentence shall terminate one year from the earlier of (a) the first anniversary of this letter and (b) the termination of Atlas' engagement hereunder. In the event that Atlas is requested pursuant to, or required by, applicable law or regulation or by legal process to disclose any information, Atlas will provide the Company with

prompt notice of such request(s) to enable the Company to seek an appropriate protective order.

## Section 4. Indemnification.

The Company agrees to indemnify Atlas and its affiliates and their respective members, directors, officer, employees, agents and controlling persons (Atlas and each such person being an "Indemnified Party") from and against any and all losses, claims, damages, expenses and liabilities (or actions in respect thereof, including, without limitation, shareholder and derivative actions and arbitration proceedings), to which such Indemnified Party may become subject under any applicable federal or state law, or otherwise, and related to or otherwise arising out of any Transaction contemplated by this letter agreement or engagement of Atlas pursuant to, and the performance by Atlas of the services contemplated by, this letter agreement and will reimburse any Indemnified Party for all expenses (including reasonable counsel fees and expenses) incurred in connection with the investigation of, preparation for or defense of any pending or threatened claim or any action or proceeding arising therefrom, whether or not such Indemnified Party is a party and whether or not such claim, action or proceeding is initiated or brought by or on behalf of the Company. The Company will not be liable under the foregoing indemnification provision for any amounts paid in any settlement effected without its prior written consent, or to the extent that any loss, claim, damage, liability or expense is found in a final judgment by a court to have resulted from the bad faith or gross negligence of Atlas or the other Indemnified Party seeking indemnification. The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or its security holders or creditors related to or arising out of the engagement of Atlas pursuant to, or the performance by Atlas of the services contemplated by, this letter agreement except to the extent that any loss, claim, damage or liability is found in a final judgment by a court have resulted from the bad faith or gross negligence of Atlas or the other Indemnified Party seeking indemnification.

Promptly after receipt by Atlas of notice of any claim or the commencement of any action or proceeding with respect to which an Indemnified Party may be entitled to indemnity hereunder, Atlas will notify The Company in writing of such claim or the commencement of such action or proceeding. The Company will assume the defense of such action or proceeding, will employ counsel satisfactory to Atlas, and will pay the fees and expenses of such counsel. In any action or proceeding the defense of which The Company assumes, each Indemnified Party will have the right to participate in such litigation and to

retain its own counsel at such Indemnified Party's own expense, provided however that an Indemnified Party will be entitled to employ counsel separate from counsel for The Company and from any other party in such action and The Company will pay the fees and expenses of such counsel if the Indemnified Party reasonably determines that a conflict of interest exists which makes representation by counsel chosen by The Company not advisable.

The Company agrees that if it enters into a settlement or compromise or consents to the entry of a judgment in any pending or threatened claim, action or proceeding in respect of which indemnification could be sought under the indemnification provision of the letter, The Company will not assert, declare, claim, stipulate or imply that Atlas or any other Indemnified Party was responsible for or liable with respect to such claim, action or proceeding, notwithstanding the fact that The Company has agreed to indemnify Atlas and each other Indemnified Party therefore or with respect thereto.

If the foregoing indemnification is unavailable or insufficient to hold an Indemnified Party harmless in respect of any losses, claims, damages or liabilities referred to therein then, in lieu of indemnifying such Indemnified Party hereunder, The Company shall contribute to the amount paid or payable by such Indemnified Person as a result of such losses, claims, damages or liabilities (and expenses relating thereto) in such proportion as is appropriate to reflect the relative benefits to The Company, on the one hand, and Atlas, on the other hand, of the Transaction (whether or not the Transaction is consummated) and also the relative fault of each of The Company and Atlas, as well as any other relevant equitable considerations.

Atlas' rights under this Section 4 will survive any termination of this Agreement.

## Section 5.  Certain Acknowledgements.

The Company acknowledges that Atlas is an independent contractor, that the obligations and responsibilities of Atlas to The Company are limited to those specifically set forth herein, and that Atlas by entering into this agreement and satisfying its obligations hereunder, does not assume any fiduciary duties with respect to The Company, its Board of Directors, its management, its employees, its partners or its shareholders.  All decisions made with respect to a Transaction, or any financings or restructurings related thereto shall be those of the Board of Directors or management of The Company, as the case may be. Any advice or opinions provided by Atlas may not be disclosed or referred to publicly without the prior written consent of Atlas.

## Section 6. Information.

The Company recognizes and confirms that in advising The Company in completing its engagement hereunder, Atlas will be using and relying on data, material and other information furnished to Atlas by The Company. It is understood that in performing under this engagement Atlas may rely upon any information so supplied without independent verification and that Atlas shall not have any responsibility for such independent verification. As a condition to Atlas' obligation to provide services hereunder, The Company represents, warrants and covenants to Atlas that none of the information furnished to Atlas by The Company shall include any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading.

## Section 7. Termination of Engagement.

Either The Company or Atlas may terminate this agreement at any time, with or without cause, by giving written notice to the other party; provided, however, that Atlas will be entitled to:

(i)     be reimbursed for any reimbursable expenses incurred in connection with its engagement hereunder as set forth above; and

(ii)    receive the Success Fee or relevant portion of, in the event that, at any time prior to the expiration of twelve months after such termination, any such transaction(s) is consummated; or The Company or any of their respective shareholders enters into an agreement during the term of this agreement or during such twelve month period which contemplates such a transaction, and such transaction is consummated thereafter.

## Section 8. Miscellaneous.

This agreement is governed by the laws of New York, without regard to conflicts of law principles, and will be binding upon and inure to the benefit of The Company and Atlas and their respective successors and assigns. The Company and Atlas agree to waive trial by jury in any action, proceeding or counterclaim brought by or on behalf of either party with respect to any matter whatsoever relating to or arising out of any actual or proposed transaction or the engagement of or performance by Atlas hereunder. As used in this letter, the term "person" shall be broadly interpreted to include, without limitation, any corporation, company, partnership and individual. This



agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement. The Company and Atlas agree that this letter agreement constitutes the entire agreement between them with respect to the subject matter hereof and supersedes all prior understandings and agreements, and that it may be amended only when signed by both parties.

We are delighted to accept this engagement and look forward to working with you on this matter. Please confirm that the foregoing is in accordance with your understanding of our agreement by signing and returning to us a copy of this letter.



Very truly yours,

Atlas Strategic Advisors, LLC

By

Palden Namgyal

Senior Managing Director

Accepted and agreed to as of the date set forth above:

Rock & Republic Enterprises, Inc.

By

_____

Name:

Very truly yours,

Atlas Strategic Advisors, LLC


By

Palden Namgyal

Senior Managing Director


Accepted and agreed to as of the date set forth above:

Rock & Republic Enterprises, Inc.

By

Name: Michael Ball
CEO