TODTMAN, NACHAMIE, SPIZZ & JOHNS, P.C.
Counsel to **Rock & Republic Enterprises, Inc.**
 and **Triple R, Inc.**
Debtors and Debtors-in-Possession
425 Park Avenue
New York, NY 10022
 (212) 754-9400
Alex Spizz, Esq.
Arthur Goldstein, Esq.
Jill Makower, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

In re:                                                                      Chapter 11

ROCK & REPUBLIC ENTERPRISES, INC.,                Case No. 10-11728 (AJG)
et al.,                                                                         (Jointly Administered)

                                                   Debtors.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

### NOTICE OF DEBTORS' (I) OBJECTION TO CLAIMS OF MANNY MASHOUF, BIBA INTERNATIONAL, AND NEW PACIFIC RODEO LLC (CLAIM NOS. 17, 18 AND 25), AND (II) MOTION TO ESTIMATE CLAIM NOS. 17, 18 AND 25 TO THE EXTENT, IF ANY, THAT THEY ARE NOT EXPUNGED

**PLEASE TAKE NOTICE,** that upon the objection dated June 25, 2010 (the

"Objection") of Rock & Republic Enterprises, Inc. ("R&R") and Triple R, Inc. ("TR")

(collectively, the "Debtors"), debtors and debtors-in-possession, by their attorneys,

Todtman, Nachamie, Spizz & Johns, P.C., the undersigned shall move this Court before

the Honorable Arthur J. Gonzalez, Chief United States Bankruptcy Judge, at his courtroom

located at the United States Bankruptcy Court, Southern District of New York, One

Bowling Green, New York, New York 10004 **on the 28th day of July 2010 at 9:30 A.M.** or

as soon thereafter as counsel can be heard, seeking entry of an order (i) expunging the following general unsecured claims (the "Claims") filed against the Debtors: the claim of Manny Mashouf, docketed as Claim No. 17, the claim of Biba International, docketed as Claim No. 18, and the claim of New Pacific Rodeo LLC, docketed as Claim No. 25, pursuant to section 502 of title 11, United States Code (the "Bankruptcy Code") and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and (ii) estimating the Claims for all purposes, including allowance, pursuant to Bankruptcy Code section 502(c) to the extent, if any, that the Claims are not completely expunged by the Objection.

PLEASE TAKE FURTHER NOTICE, that responses to the Objection, if any, must be filed with the Clerk of the Bankruptcy Court (with a courtesy copy delivered to the Chambers of the Honorable Arthur J. Gonzalez) and received by (a) Todtman, Nachamie, Spizz & Johns, P.C., 425 Park Avenue, New York, New York 10022, Attn: Arthur Goldstein, Esq. and Jill Makower, Esq., the undersigned counsel for the Debtors; and (b) the Office of the United States Trustee for the Southern District of New York,

33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Richard C. Morrissey,

Esq., no less than three (3) business days before the return date of the Objection.

Dated: New York, New York
      June 25, 2010

                    TODTMAN, NACHAMIE, SPIZZ
                    & JOHNS, P.C.
                    Attorneys for the Debtors and
                    Debtors-in-Possession

                    By:_____*/s/ Jill Makower*_____
                        Arthur Goldstein
                        Alex Spizz
                        Jill Makower
                    425 Park Avenue
                    New York, New York 10022
                    (212) 754-9400
                    (212) 754-6262 (fax)

TODTMAN, NACHAMIE, SPIZZ & JOHNS, P.C.
Counsel to Rock & Republic Enterprises, Inc.
 and Triple R, Inc.
Debtors and Debtors-in-Possession
425 Park Avenue
New York, NY  10022
 (212) 754-9400
Alex Spizz, Esq.
Arthur Goldstein, Esq.
Jill Makower, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| In re: | Chapter 11 |
| ROCK & REPUBLIC ENTERPRISES, INC., <u>et al.,</u> | Case No. 10-11728 (AJG) (Jointly Administered) |
| Debtors. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**DEBTORS' (I) OBJECTION TO CLAIMS OF MANNY MASHOUF, BIBA
INTERNATIONAL, AND NEW PACIFIC RODEO LLC (CLAIM NOS. 17,  18
AND 25), AND (II) MOTION TO ESTIMATE CLAIM NOS. 17, 18 AND 25 TO
THE EXTENT, IF ANY, THAT THEY ARE NOT EXPUNGED**

**TO:    THE HONORABLE ARTHUR J. GONZALEZ
CHIEF UNITED STATES BANKRUPTCY JUDGE**

Rock & Republic Enterprises, Inc. ("R&R") and Triple R, Inc. ("TR"), the above-

captioned Chapter 11 debtors and debtors-in-possession (the "Debtors"), by their attorneys,

Todtman, Nachamie, Spizz & Johns, P.C., respectfully submit this

(i)      objection (the "Objection") pursuant to section 502 of title 11, United
States Code (the "Bankruptcy Code") and Rule 3007 of the Federal Rules
of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking to expunge
the general unsecured claims filed against the Debtors by Manny Mashouf
("Mashouf"), Biba International ("Biba") and New Pacific Rodeo LLC ("New
Pacific"), docketed as Claim Nos. 17, 18 and 25, respectively (collectively,
the "Claims"), and

(ii)     motion (the "Estimation Motion") to estimate the Claims for all purposes pursuant to Bankruptcy Code section 502(c)(1), to the extent, if any, that the Claims are not completely expunged by the Objection,

and respectfully represent as follows:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction to consider this Objection and Estimation Motion pursuant to 28 U.S.C. §§157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

2.     The predicates for the relief requested herein are Bankruptcy Code section 502 and Bankruptcy Rule 3007.

## INTRODUCTION

3.     The Claims filed by Mashouf, Biba and New Pacific (collectively, the "Claimants") are related to a lease and sublease of real property located at 319 North Rodeo Drive, Beverly Hills, California 90210 (the "Premises"), and are the subject of a pending prepetition landlord-tenant action commenced in the California Superior Court (the "State Court") by New Pacific against Biba, Mashouf, R&R and the Debtors' Chief Executive Officer, Michael Ball ("Mr. Ball") entitled New Pacific Rodeo, LLC v. Biba International, Ltd., et al., Index No. BC 409 639 (the "Action").  (Copies of the Claims are annexed hereto as **Exhibit "A"**.)

4.     The Claimants' Claims should be expunged in their entirety pursuant to Bankruptcy Code sections 502(b)(1) and 502(e)(1)(B), as demonstrated below.  In the event that the Claims are not completely expunged as a result of the Debtors' Objection, the Debtors request that their Estimation Motion be granted and that the Claims be

estimated at zero ($0), for all purposes, including allowance, pursuant to Bankruptcy Code section 502(c)(1).

## FACTUAL BACKGROUND

### A.  General

5.  On April 1, 2010 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court, and an order for relief under section 301 of the Bankruptcy Code was entered in their cases (the "Chapter 11 Cases").

6.  The Debtors' Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

7.  The Debtors have been authorized to remain in possession of their property and to continue in the operation and management of their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

8.  An official committee of unsecured creditors (the "Committee") has been appointed by the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee") in the Chapter 11 Cases.  Arent Fox LLP has been retained as counsel to the Committee.

9.  The Debtors are a wholesale and retail apparel company specializing in an avant-garde and distinctive line of clothing.  Originally started in 2002 by its Chief Executive Officer, Mr. Ball, primarily as an American jeans company, the Debtors have expanded their lines to include high fashion clothing for men, women and children as well as shoes, cosmetics and accessories.  The Debtors' merchandise can be found at most high end

retail stores such as Nordstrom, Neiman Marcus, Bergdorf Goodman, Bloomingdales, Lord & Taylor, Harvey Nichols and Saks Fifth Avenue, as well as in small upscale boutiques.

10. Additional information about the Debtors' business and the events leading up to the Petition Date can be found in the Affidavit of Geoffrey D. Lurie Pursuant to Local Bankruptcy Rule 1007-2 in Support of First Day Motions and Applications (the "Lurie Affidavit"), which was filed on the Petition Date and is incorporated herein by reference.

**B.     The Master Lease Between New Pacific,
        As Lessor, And Biba, As Lessee**

11. Prior to the Petition Date, New Pacific, as lessor, entered into a Master Lease Agreement for the Premises with Biba, as tenant, dated as of September 6, 2007 (the "Master Lease"). (A copy of the Master Lease is contained in Exhibit "1" to the New Pacific Claim.)

12. Mashouf executed a guaranty of certain of Biba's obligations under the Master Lease. (A copy of Mashouf's guaranty is contained in Exhibit "1" to the New Pacific Claim.)

13. The Master Lease defines "Possession Date" as "[t]he date Landlord substantially completes Landlord's Work (as set forth on Exhibit "B") and delivers possession of the Premises to Tenant, pursuant to Article 3 below; provided, however, that the Possession Date will not occur prior to March 1, 2008." (Master Lease Art. 1.3.) The "Landlord's Work" was to "demolish the space, furnish and install demising walls consistent with the approved Preliminary Space Plans (insulated and sheet-rocked, taped and spackled, ready to receive Tenant's finishes) and otherwise deliver the Premises to Tenant in its as-is condition." (Master Lease Ex. B.)

14.     The "Rent Commencement Date" under the Master Lease was "[t]he earlier of (i) four (4) months from the Possession Date, or (ii) the date Tenant opens the Premises for business."  (Master Lease Art. 1.4.)

15.     In addition to requiring New Pacific to "substantially complete" its work before delivering the property to the Tenant, the Master Lease also specified the circumstances under which the Tenant could terminate the lease:

> In the event Landlord's Work is not completed by April 1, 2009 (subject to Force Majeure delays), or Landlord has not delivered possession of the Premises to Tenant by April 1, 2009 (subject to Force Majeure delays) (the "Right to Cancel Date") . . ., then Tenant, at any time thereafter until Landlord completes the Landlord's Work, has the right to terminate this Lease, without penalty, upon ten (10) days written notice to Landlord.  Upon termination, Landlord and Tenant shall have no further liability under the Lease.

(Master Lease, Art. 3.1.)

## C.     The Sublease Between Biba, As Sublessor, And R&R, As Subtenant

16.     Shortly after entering into the Master Lease as Tenant, Biba obtained New Pacific's consent to sublease the Premises to R&R, under certain conditions.  (A copy of the Consent to Sublease is annexed hereto as **Exhibit "B"**.)  Biba, as sublandlord, then entered into a sublease of the Premises with R&R, as subtenant, dated as of December 7, 2007 (the "Sublease").  (A copy of the Sublease is contained in Exhibit "1" to the New Pacific Claim).

17.     Pursuant to the Sublease, R&R agreed to be bound by the terms of the Master Lease between Biba and New Pacific (See Sublease ¶ 3(a)).

18.     Mr. Ball executed a written guaranty of certain of R&R's obligations under the Sublease.

**D.     The "Possession Date" Never Occurred**

19.     The "Possession Date" never occurred because New Pacific failed to deliver possession of the Premises to R&R with Landlord's Work substantially completed.   (See Master Lease, Article 1.3, defining "Possession Date".)

20.     New Pacific purported to deliver the Premises to R&R on October 20, 2008. Pursuant to the terms of the Master Lease that provide the manner for delivery, New Pacific sent R&R a letter dated October 20, 2008 claiming that Landlord's Work was done and claiming that the Possession Date under the Master Lease was October 20, 2008. (A copy of New Pacific's October 20, 2008 letter is annexed hereto as **Exhibit "C"**.)

21.     Upon inspecting the Premises, however, R&R determined that New Pacific had _not_ completed Landlord's Work.  There were several important ways that the Premises that Landlord purportedly delivered was different from the Premises that New Pacific was contractually bound to deliver, including the following:

>     (i)     The demising wall that was to "demise" the space between R&R and the adjacent tenant was incomplete,

>     (ii)     A column at the front of the building that would have to be moved (or it would render a substantial portion of the Rodeo Drive storefront unusable) was not moved, and

>     (iii)     A large wall divided the space in a way that New Pacific had never disclosed to R&R.

22.     R&R engaged an architect to examine the Master Lease and the Premises expressly for the purpose of determining whether Landlord's Work was completed.  The architect concluded that Landlord's Work was neither complete nor substantially complete

23.     The Landlord's Work that was not done rendered the space insecure and unusable.  New Pacific left a gap of 3'8" between the rear of the demising wall and the

building's back wall, and a gap of 16" between the front of the demising wall and the building's façade. A person could walk around either end of the "demising" wall without ever going outside the building, which meant that the adjacent tenant had complete, unimpeded access to the property that was to have been demised *before* delivery. Indeed, the adjacent tenant could not even access its *own* space from the rear of the building without using the R&R space. The wall, and therefore even *that* portion of the Landlord's Work, could not be completed until the adjacent tenant established access to its own property through the rear of the building.

24.     R&R repeatedly identified the various failures of Landlord's Work to New Pacific and underlined expressly conditioned any acceptance of New Pacific's purported October 20, 2008 "delivery" on the completion of Landlord's Work. In a November 26, 2008 letter to New Pacific's counsel, R&R's General Counsel, Anna-Emily C. Gaupp, wrote that "[R&R] hereby confirms the Possession Date, and confirms acceptance of the subleased premises; *provide[d], that Landlord shall extend the demising wall to the rear of the subleased premises as soon as reasonably practicable once the adjacent tenant has established rear access to the adjacent premises.*" (See November 26, 2008 Letter from Ms. Gaupp to Anthony Ciasulli, counsel for New Pacific, annexed hereto as **Exhibit "D"**) (emphasis added).) In its November 26, 2008 letter, R&R made it clear that the Rent Commencement Date would be tolled and that R&R refused to pay rent until the Landlord's Work was complete: "[R&R] does hereby reserve the right to toll the Rent Commencement Date for each and every day that [R&R] is delayed in performing its work in the subleased premises as a result of having to accommodate adjacent tenant's access." (*Id.*)

25.     The conditions precedent to the Possession Date never occurred. As of April 1, 2009, the deadline for the completion of Landlord's Work, New Pacific had failed to complete or even substantially complete Landlord's Work.  Indeed, New Pacific did not complete the demising wall, and the adjacent tenant continued to use R&R's space (even to the point of storing building materials in the space) through at least the end of May 2009. Therefore, contrary to New Pacific's letter purportedly "delivering" the Premises to R&R, the Lease's "Possession Date" never happened.

26.     On May 21, 2009, R&R exercised its right to terminate the Master Lease and the Sublease pursuant to the terms of Article 3.1 of the Master Lease.  By letter dated May 21, 2009 to Biba and Mashouf (copy annexed hereto as **Exhibit "E"**), R&R advised of its termination of the Master Lease and Sublease.  Pursuant to Article 3.1 of the Master Lease, R&R's letter stated that the termination shall be effective 10 days from the date of the letter.

27.     By letter dated May 21, 2009 to New Pacific (copy annexed hereto as **Exhibit "F"**), R&R advised of its termination of the Master Lease and Sublease.  Pursuant to Article 3.1 of the Master Lease, R&R's letter stated that the termination shall be effective 10 days from the date of the letter.

28.     New Pacific never completed or substantially completed Landlord's Work before R&R's termination of the Master Lease and Sublease became effective on May 31, 2009.  Pursuant to Article 3.1 of the Master Lease, therefore, R&R "shall have no further liability under the Lease." (Master Lease, Article 3.1).

**E.   The "Rent Commencement Date" Never Occurred,
      And Therefore, R&R's Obligation To Pay Rent and
      Additional Rent Never Arose**

29.     As demonstrated above, the "Possession Date" never occurred and R&R effectively terminated the Master Lease and the Sublease as of May 31, 2009, without having opened for business. The "Rent Commencement Date", which is defined to occur "[t]he earlier of (i) four (4) months from the Possession Date, or (ii) the date Tenant opens the Premises for business" never occurred, because the Possession Date never occurred and R&R never opened the Premises for business. (See Master Lease Article 1.4). Inasmuch as the Rent Commencement Date never occurred, the Debtors' obligation to pay Rent and Additional Rent never arose.

**F.   The California State Court Action**

30.     Prior to the Petition Date, New Pacific commenced the Action in the California State Court against Biba, Mashouf, R&R and Mr. Ball (collectively, the "Defendants"). On or about March 13, 2009, New Pacific filed its complaint in the Action, seeking to recover certain sums from:

    a.   Biba, pursuant to the Master Lease between New Pacific, as lessor, and Biba, as lessee;

    b.   Mashouf, pursuant to his guaranty of the Master Lease;

    c.   R&R, pursuant to the Sublease; and

    d.   Mr. Ball, pursuant to his guaranty of the Sublease.

31.     On or about October 15, 2009, New Pacific filed its First Amended Complaint in the Action (the "First Amended Complaint"). The First Amended Complaint added

additional causes of action against the Defendants for breach of contract, fraud and deceit, defamation and intentional interference with contract and declaratory relief.

32.     Each of the Defendants denies that it is liable to New Pacific as alleged in the Complaint and First Amended Complaint.

33.     On or about June 4, 2009, Biba and Mashouf filed a cross-complaint in the Action against R&R and Ball (the "Biba Cross-Complaint").  The Biba Cross-Complaint asserts causes of action for express indemnity, implied indemnity, contribution, apportionment of fault and declaratory relief against R&R and Mr. Ball.  R&R and Mr. Ball both deny that they are liable to either Biba or Mashouf as alleged in the Biba Cross-Complaint.

34.     On or about August 6, 2009, R&R and Mr. Ball filed a cross-complaint in the Action against Biba and Mashouf (the "Debtor Cross-Complaint").  The Debtor Cross-Complaint asserts causes of action for comparative equitable indemnity, total equitable indemnity, contribution and declaratory relief against Biba and Mashouf.  Both Biba and Mashouf deny that they are liable to either R&R or Mr. Ball as alleged in the Debtor Cross-Complaint.

35.     On or about May 8, 2009, R&R and Mr. Ball filed a cross-complaint in the Action (the "Debtor Declaratory Cross-Complaint") seeking declaratory relief and awarding their costs of suit, disbursements and attorney fees and expenses.  New Pacific denies liability as alleged in the Debtor Declaratory Cross-Complaint.

36.     As of the Petition Date, the Action had been set for trial on April 28, 2010. Pursuant to Section 362 of the Bankruptcy Code, the Action was stayed as to R&R.  As a result of the commencement of R&R's Chapter 11 Case, the State Court stayed the Action

entirely, pending an order of the Bankruptcy Court lifting or modifying the automatic stay so as to allow the Action to proceed to trial as to R&R.

37.     On or about May 18, 2010 R&R and New Pacific filed a joint motion to modify the stay to permit the Action to proceed to judgment in the California State Court, which was granted by order entered on June 9, 2010. The Debtors believed lifting the stay would result in the Claims being resolved expeditiously, especially in view of the fact that, as of the April 1, 2010 Petition Date, the trial in the Action had been scheduled for April 28, 2010. Unfortunately, after the stay was lifted, the State Court re-scheduled the trial for April 6, 2011.

## G.     The Debtors' Rejection Of The Sublease

38.     In April 2010, the Debtors moved to reject certain leases of non-residential real property including the Sublease of the Premises between Biba, as sublandlord and R&R, as subtenant.   Although R&R effectively terminated the Sublease (and the Master Lease) prior to the Petition Date (making Bankruptcy Code section 365(a) inapplicable[1]), the Debtors moved to reject the Sublease under section 365(a) in an abundance of caution. On April 21, 2010, the Court entered an order (the "Rejection Order") providing, *inter alia*, that the Sublease was rejected effective as of April 1, 2010 pursuant to Bankruptcy Code section 365(a).

## SUMMARY OF RELIEF REQUESTED

39.     By this Objection, the Debtors seek to expunge the Claims pursuant to Bankruptcy Code section 502(b) and Bankruptcy Rule 3007.   In the event that the Claims are not completely expunged as a result of the Debtors' Objection, the Debtors request

---

[1]  See 11 U.S.C. §365(a) (providing that "the trustee, subject to the court's approval, may assume or reject any executory contract or <u>unexpired</u> lease of the debtor.") (emphasis added).

that their Estimation Motion be granted and that the Claims be estimated at zero ($0), for all purposes, pursuant to Bankruptcy Code section 502(c)(1).

## I.   OBJECTIONS TO NEW PACIFIC CLAIM (CLAIM NO. 25)

**A.   NEW PACIFIC'S CLAIM MUST BE EXPUNGED PURSUANT TO 11 U.S.C. §502(b)(1) BECAUSE IT IS UNENFORCEABLE UNDER THE MASTER LEASE AND UNDER STATE LAW**

40.     Bankruptcy Code section 502(b)(1) provides for disallowance of a claim to the extent that the claim "is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. §502(b)(1). New Pacific's Claim is unenforceable for at least three reasons, as demonstrated below, and must therefore be expunged pursuant to section 502(b)(1).

**(1)   New Pacific's Claim Is Unenforceable Because R&R Properly Terminated The Master Lease And The Sublease And R&R Was Therefore Relieved Of Further Liability Under The Master Lease And Sublease**

41.     As discussed above, New Pacific failed to complete the Landlord's Work by April 1, 2009. Pursuant to Article 3.1 of the Master Lease, this failure authorized R&R to terminate the Master Lease and Sublease upon ten (10) days written notice to the landlord. R&R effectively terminated the Master Lease and the Sublease as of May 31, 2009, as demonstrated above. Since the Master Lease and Sublease were properly terminated, R&R's rental obligations under the Master Lease and Sublease were excused under the terms of the Sublease and Article 3.1 of the Master Lease and pursuant to applicable law. Consequently, New Pacific's Claim is unenforceable and must be expunged pursuant to Bankruptcy Code section 502(b)(1).

**(2)    New Pacific's Claim For Future Rent and Future Additional
Rent Is Unenforceable Because R&R's Obligation To
Pay Rent And Additional Rent Never Arose**

42.    Pursuant to the Master Lease, R&R's obligation to pay Rent and Additional

Rent arises upon the Rent Commencement Date.  (See Master Lease, Article 6.) Since

New Pacific did not timely complete the "Landlord's Work", the "Possession Date" did not

occur, and since the Possession Date did not occur and R&R did not open the Premises

for business, the "Rent Commencement Date" did not occur.  R&R's obligation to pay Rent

and Additional Rent therefore never arose.  As a result, New Pacific may not enforce any

claim for Rent or Additional Rent against R&R or its guarantor, Mr. Ball.

**(3)    New Pacific Does Not Have A Valid Rejection Claim
Under 11 U.S.C. § 365(g) Because The Master Lease
And Sublease Were Terminated Prepetition**

43.    When a debtor rejects an <u>unexpired</u> lease, a breach is deemed to occur at

the time the bankruptcy petition was filed, see 11 U.S.C. §365(g)(1)[2], and the result of the

breach is to give the landlord a general unsecured claim for damages caused by that

rejection.  <u>See</u> 11 U.S.C. §502(g)(1)[3]; <u>In re Andover Togs, Inc.</u>, 231 B.R. 521, 524 (Bankr.

---

[2]  Section 365(g)(1) provides:

   Except as provided in subsections (h)(2) and (i)(2) of this section, the rejection of an executory
   contract or <u>unexpired</u> lease of the debtor constitutes a breach of such contract or lease--

      (1) if such contract or lease has not been assumed under this section or under a plan confirmed
      under chapter 9, 11, 12, or 13 of this title, immediately before the date of the filing of the petition."

11 U.S.C. § 365(g)(1) (emphasis added).

[3]  Section 502(g)(1) provides:

    A claim arising from the rejection, under section 365 of this title or under a plan under chapter 9, 11,
    12, or 13 of this title, of an executory contract or <u>unexpired</u> lease of the debtor that has not been
    assumed shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section or
    disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the
    date of the filing of the petition.

11 U.S.C. § 502(g)(1) (emphasis added).

S.D.N.Y. 1999); In re Financial News Network, Inc., 149 B.R. 348, 350 (Bankr. S.D.N.Y. 1993). In the instant case, however, the Debtors' rejection of the Sublease was not a breach of the Sublease because the Sublease (and the Master Lease) had been effectively terminated pre-petition by R&R. Since neither the Sublease nor Master Lease was an "unexpired lease" as of the Petition Date, section 365(a) and 365(g)(1) did not apply and the rejection cannot be a breach under section 365(g)(1). See 11 U.S.C. §365(g)(1) (applying to rejection claims involving leases that are unexpired).

44.     Regardless of whether the termination of the Sublease and Master Lease occurred pre-petition or post-petition (as a result of rejection), New Pacific's Claim for damages resulting from termination of the Sublease and Master Lease must be disallowed to the extent it is unenforceable under any agreement or applicable law (see 11 U.S.C. §502(b)(1)) and, to the extent allowable, is capped by Bankruptcy Code section 502(b)(6).[4] As demonstrated above, the New Pacific Claim is unenforceable in its entirety and must be expunged under section 502(b)(1).

## B.     NEW PACIFIC'S CLAIM IS LIMITED BY BANKRUPTCY CODE SECTION 502(b)(6)

45.     Even assuming, arguendo, that New Pacific does have an enforceable claim against R&R, the New Pacific Claim is calculated incorrectly because it ignores the fact that a lessor's claim for damages resulting from the termination of a lease of real property

---

[4] This is also true with respect to Biba' Claim and Mashouf's Claim. Neither Biba nor Mashouf have a valid rejection claim under section 365(g) because the Sublease and Master Lease were terminated prepetition, and, therefore, the rejection cannot constitute a breach pursuant to Bankruptcy Code section 365(g)(1).

is capped by Bankruptcy Code section 502(b)(6).[5]  New Pacific's Claim, which seeks damages of over $30 million, is therefore improper and objectionable on the ground that it does not reflect the § 502(b)(6) cap.

## II.    OBJECTIONS TO BIBA CLAIM (CLAIM NO. 18)

### A.    BIBA'S CLAIM MUST BE EXPUNGED PURSUANT TO 11 U.S.C. § 502(b)(1) BECAUSE BIBA WAIVED ITS RIGHT TO RECEIVE RENT FROM R&R

46.    In Biba's Claim, Biba asserts that it is owed $2,284,494.89 for prepetition rent and $3,243,861.32 for postpetition rent.  Biba's Claim, totaling $5,528,356.21, must be expunged in its entirety because, pursuant to the Consent to Sublease by and between New Pacific, Biba and R&R, even if R&R owed rent for the Premises (which it does not), any rent owed by R&R would be owed to New Pacific--not to Biba.  See Consent to Sublease § 6 (stating that "...All amounts to be paid by Subtenant [R&R] pursuant to the

---

[5] Bankruptcy Code Section 502(b)(6) limits a landlord's claim for damages to the rent reserved under the lease for one year, without acceleration, or 15 percent of the remaining term of the lease for a total period not to exceed three years, whichever amount is greater. See In re Ames Department Stores, Inc., 209 B.R. 627, 630 (S.D.N.Y. 1997); Andover Togs, 235 B.R. at 544.  Section 502(b)(6) provides:

> (b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that--
> ****
>    (6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds—
>
>       (A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of--
>
>          (i)      the date of the filing of the petition; and
>
>          (ii)     the date on which such lessor repossessed or the lessee surrendered, the leased property; plus
>       (B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates;

11 U.S.C. § 502(b)(6).

Sublease, including all 'Base Rent' and 'Additional Rent', **shall be paid directly and entirely to Landlord [New Pacific] and Tenant [Biba] waives any rights thereto**. Tenant acknowledges that Landlord would not consent to the Sublease without the foregoing provisions and that such provisions are reasonable.")(emphasis added).

47.     Since Biba waived all right to be paid rent by R&R, Biba's $5,528,356.21 rent claim is unenforceable against R&R. Accordingly, Biba's Claim must be expunged pursuant to Bankruptcy Code section 502(b)(1). See 11 U.S.C. §502(b)(1) (providing for disallowance of a claim to the extent that the claim "is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured.").

## B.     BIBA'S CLAIM MUST BE EXPUNGED PURSUANT TO 11 U.S.C. § 502(e)(1)(B)

48.     As demonstrated above, the Consent to Sublease waived the rights that Biba had under the Sublease to collect rent from R&R. To the extent that Biba has an indemnification claim for anything other than rent, any such claim is contingent, and therefore, must be expunged pursuant to Bankruptcy Code section 502(e)(1)(B). See 11 U.S.C. § 502(e)(1)(B).[6]

---

[6]  Bankruptcy Code section 502(e)(1) provides:

(e) (1) Notwithstanding subsections (a), (b) and (c) of this section and paragraph (2) of this subsection, the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that—

(A) such creditor's claim against the estate is disallowed;

**(B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution;** or

(C) such entity asserts a right of subrogation to the rights of such creditor under section 509 of this title.

11 U.S.C. § 502(e)(1) (emphasis added).

49. "The purpose of § 502(e)(1)(B) is to prevent contingent, unresolved indemnification or contribution claims from delaying the consummation of a plan of reorganization or a final distribution in a liquidating case." In re GCO Servs., LLC, 324 B.R. 459, 465 (Bankr. S.D.N.Y. 2005), citing Syntex Corp. v. Charter Co. (In re Charter Co.), 862 F.2d 1500, 1502 (11th Cir. 1989). See also Wedtech, 85 B.R. at 289-90 ("[T]he purpose of disallowing contingent indemnity and contribution claims is precisely because they are so contingent."); Drexel II, 148 B.R. at 989 ("Wedtech and a number of other courts have viewed § 502(e)(1)(B) as having purposes that reach beyond the risk to the debtor of double liability and are directed at the difficulty of administering and distributing the debtor's estate while ongoing contingent claims of the type covered by § 502(e)(1)(B) still exist.").

50. Three elements must be met in order for a claim to be subject to disallowance pursuant to § 502(e)(1)(B): "First, the claim must be for reimbursement or contribution. Second, the party asserting the claim must be liable with the debtor on the claim. Third, the claim must be contingent at the time of its allowance or disallowance." In re Drexel Burnham Lambert Group Inc., 148 B.R. 982, 985 (Bankr. S.D.N.Y. 1992) (Drexel II), citing In re Drexel Burnham Lambert Group, Inc., 146 B.R. 98, 100-101 (Bankr. S.D.N.Y. 1992) (Drexel I); In re Provincetown-Boston Airlines, Inc., 72 B.R. 307, 309 (Bankr. M.D. Fla. 1987). Accord In re Alper Holdings USA, 2008 Bankr. LEXIS 2634 (Bankr. S.D.N.Y. Sept. 10, 2008); GCO Servs., LLC, 324 B.R. at 465. The Biba Claim satisfies each of these tests.

## (1) Biba's Indemnification Claim Is For Reimbursement Or Contribution

51. The first element tests whether a claim is for reimbursement or contribution. "Whether a Claim is one for reimbursement or contribution depends on its

characterization under state or federal statutory law or common law." <u>GCO Servs., LLC</u>, 324 B.R. at 465, citing L. King, et al., Collier on Bankruptcy, P 502.06[2][a] (15th ed. Rev. 2003). Courts have consistently held that "the concept of reimbursement includes indemnity." <u>Alper Holdings USA</u>, 2008 Bankr. LEXIS 2634, citing <u>In re Wedtech Corp.</u>, 85 B.R. 285, 289 (Bankr. S.D.N.Y 1988); <u>see also</u> <u>In re GCO, LLC</u>, 324 B.R. 459, 465 (*citing Wedtech*, 85 B.R. at 289 ("Because 'the concept of reimbursement includes indemnity,' any claims for indemnification also fall within the scope of the first prong of § 502(e)(1)(B).");  <u>Drexel II</u>, 148 B.R. at 986. Accordingly, the Biba Claim, which is based upon the indemnity provisions of the Sublease,[7] satisfies the first prong of section 502(e)(1)(B).

---

[7] The Sublease provides, in section 10 as follows:

10.  <u>Responsibility and Indemnification</u>

   (a)   Notwithstanding anything to the contrary contained herein or in the Master Lease, Sublessee shall be solely responsible for any and all penalties, late fees, or similar charges which arise as a result of Sublessee's occupancy of the Premises and/or Sublessee's failure to pay the rent and other charges when due, and Sublessee shall indemnify, defend, protect (with counsel satisfactory to Sublessor) and hold Sublessor harmless from and against any and all loss, costs, fines, penalties, charges, fees, expenses (including but not limited to attorneys fees) damages, claims (including but not limited to claims for rent) and liabilities, however caused, arising or accruing (i) under the Master Lease with respect to the Premises or (ii) in connection with any assignment by Sublessor to Sublessee of any rights or interests in the Premises; provided, however, that Sublessee shall have no obligation to indemnify Sublessor for Sublessor's own negligence or willful misconduct.

(b)   Sublessee shall indemnify Sublessor and hold Sublessor harmless of and from any and all loss, cost, damage, injury or expense arising out of or related to claims of injury to or death of person, damage to property occurring or resulting directly or indirectly from the use or occupancy of the Premises or activities of Sublessee in or about the Premises or Building, such indemnity to include, but without limitation, the obligation to provide all costs of defense against any such claims; provided, however, that Sublessee shall have no obligation to indemnify Sublessor for Sublessor's own negligence or willful misconduct.

Sublease, section 10.

**(2)   The Debtor is "Liable With" Biba**

52.     The second prong of § 502(e)(1)(B) asks whether a debtor is "liable with" the claimant. This prong requires "a finding that the causes of action in the underlying lawsuit assert claims upon which, if proven, the debtor could be liable but for the automatic stay." Wedtech, 85 B.R. at 290. Biba's indemnification claim certainly satisfies this prong of § 502(e)(1)(B) because both R&R and Biba were responsible for payment of Rent and Additional Rent under the terms of the Master Lease.  (See Consent to Sublease, § 2(a)). Insofar as Biba has any right to indemnification from R&R, that right is dependent on co-liability with R&R under the terms of the Master Lease.    Therefore, the second prong of § 502(e)(1)(B) has been satisfied.

**(3)   Biba's Indemnification Claim Is Contingent**

53.     Finally, a claim must be "contingent" in order to be disallowed pursuant to 502(e)(1)(B).  A claim is contingent where it "has not yet accrued and . . . is dependent upon some future event that may never happen." GCO Servs., LLC, 324 B.R. at 465, quoting Matter of Provincetown-Boston Airlines, Inc., 72 B.R. at 310.

54.     It is generally agreed that a claim is contingent "if the debtor's legal duty to pay does not come into existence until triggered by the occurrence of a future event." Pearl-Phil GMT (Far East) Ltd. v. Caldor Corp., 266 B.R. 575, 580 (S.D.N.Y. 2001) (*citing* Mazzeo v. United States (In re Mazzeo), 131 F.3d 295, 303 (2d Cir. 1997)); see also *GCO,* 324 B.R. at 466 ("A claim is contingent where it has not yet accrued and … is dependent upon some future event that may never happen.") (internal quotations omitted); Highland Holdings and Zito I, L.P. v. Century/ML Cable Venture, 06-civ-181, 2007 U.S. Dist. LEXIS 62178, 2007 WL 2405689, *5 (S.D.N.Y. Aug. 24, 2007); In re Chase, 372 B.R. 125, 132

(Bankr. S.D.N.Y. 2007) ("The Bankruptcy Code does not define the term 'contingent' but the court has stated that a claim is 'contingent' when the debtor's legal duty to pay it does not come into existence until triggered by the occurrence of a future event."). Moreover, "[t]he determination of whether the claim is contingent  is made at the time of the allowance or disallowance of the claim, which courts have established is the date of the ruling." Drexel II, 148 B.R. at 986; see also In re Baldwin-United Corp., 55 B.R. 885, 894-95 (Bankr. S.D. Ohio 1985) ("An objection on a § 502(e)(1) ground will trigger a hearing and ruling on the objection (see, Bankruptcy Rule 3007) and thus, the 'time of allowance or disallowance' will be the date of the ruling."); In re APCO Liquidating Trust, 370 B.R. 625, 636 (Bankr. D. Del. 2007); In re GCO, 324 B.R. at 466 (for contingency element of section 502(e)(1)(B) to be satisfied, "such contingency must exist on the date of the Court's ruling.").

55.     There is no dispute that the Biba Claim is contingent - - Biba admits in its Claim that Biba "is submitting this claim in the event it is determined that debtor took possession and is obligated on the lease."  (See Biba Claim, Exhibit "A".)

56.     Based on the above, Biba's claim for indemnification must be disallowed pursuant to § 502(e)(1)(B) of the Bankruptcy Code.

### III.     OBJECTIONS TO MASHOUF CLAIM (CLAIM NO. 17)

57.     As discussed above, Mashouf guaranteed Biba's obligations under the Master Lease.   In Mashouf's Claim, Mashouf asserts that he is owed $2,284,494.89 for prepetition rent and $3,243,861.32 for postpetition rent.      Mashouf's Claim, totaling $5,528,356.21, must be expunged in its entirety because Mashouf has no right under any agreement or applicable law to receive rent from R&R.  In fact, Mashouf has no agreement with R&R whatsoever.   Upon information and belief, Mashouf's only agreement in

connection with the Premises is his guaranty which he gave to New Pacific. Since there is no privity of contract between R&R and Mashouf, Mashouf has no contractual rights against R&R. Due to the fact that Mashouf has no valid claim against R&R, Mashouf's Claim must be expunged pursuant to Bankruptcy Code section 502(b)(1). See 11 U.S.C. §502(b)(1) (providing for disallowance of a claim to the extent that the claim "is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured.").

## IV.    THE CLAIMS SHOULD BE ESTIMATED AT ZERO

58.    In the event that the Claims are not completely expunged as a result of the Debtors' Objection, the Debtors request, in the alternative, that their Estimation Motion be granted and that the Claims be estimated at zero ($0), for all purposes, including allowance or disallowance, pursuant to Bankruptcy Code section 502(c)(1).

59.    Section 502(c)(1) provides:

(c)    There shall be estimated for purpose of allowance under this section
- -

> (1)    any contingent or unliquidated claim, the fixing or
> liquidation of which, as the case may be, would unduly delay
> the administration of the case.

11 U.S.C. §502(c)(1).

60.    "A bankruptcy court must estimate 'any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case.' ". Frito Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.), 10 F.3d 944, 957 (2d Cir.1993). See also In re G-I Holdings, Inc., 2006 WL 2403531, *3 (Bankr.D.N.J. August 11, 2006) ("Section 502(c) of the Bankruptcy Code is drafted in mandatory terms. That is, any contingent or unliquidated claim 'shall' be estimated so long as the 'liquidation'

of the particular claim would 'unduly delay the administration of the case.' "); *In re Lane,* 68 B.R. 609, 611 (Bankr.D.Hawaii1986) ("This duty of the bankruptcy court is mandatory, since the language of [section 502(c)] states 'shall' "). "[W]hen the liquidation of a claim is premised on litigation pending in a non-bankruptcy court, and the final outcome of the matter is not forthcoming, the bankruptcy court should estimate the claim." In re Lionel L.L.C., 2007 WL 2261539 at *2 (Bkrtcy.S.D.N.Y. 2007). See also *Maxwell v. Seaman Furniture Company, Inc. (In re Seaman's Furniture Co. of Union Square, Inc.),* 160 B.R. 40, 42 (S.D.N.Y.1993) ("Estimation is an expedient method for setting the amount of a claim that may receive a distributive share of the estate."); *In re Apex Oil Co.,* 107 B.R. 189, 192 (Bankr.E.D.Mo.1989) ("the key consideration in whether a bankruptcy court should estimate a claim pending in another forum is whether liquidation of that claim would unduly delay the debtor's Chapter 11 reorganization."); *In re Lane,* 68 B.R. at 611 (section 502(c) of the Bankruptcy Code requires the court to estimate any claim where failing to do so would unduly delay the administration of the case).

61. A main goal of the Bankruptcy Code is to equitably distribute the debtor's assets among its creditors. Lionel L.L.C., 2007 WL 2261539 at * 2 . Estimation provides a means for a bankruptcy court to achieve reorganization, and/or distributions on claims, without awaiting the results of legal proceedings that could take a very long time to determine. In re Adelphia Business Solutions, Inc., 341 B.R. 415 (Bankr. S.D.N.Y. 2003).

62. All of the Claims are unliquidated claims which are the subject of the pending Action. In addition, Biba's Claim and Mashouf's Claim, to the extent they seek indemnification, are contingent claims. It is clear, therefore, that all of the Claims are

subject to estimation under section 502(c) if the "fixing or liquidation" of the Claims "would unduly delay the administration of the case."  11 U.S.C. § 502(c)(1).

## ESTIMATION OF THE CLAIMS IS NECESSARY

63.    The Claims are amongst the largest unsecured claims in the Debtors' cases.

64.    The liquidation of the unliquidated claims of New Pacific, Biba and Mashouf and the fixing of the contingent claims of Biba and Mashouf "would unduly delay the administration of the case."    Estimation of the Claims is therefore necessary and appropriate under section 502(c).  See Frito Lay, 10 F.3d at 957 (2d Cir. 1993).

65.    The Debtors are in the process of negotiating a plan with the Committee. The Debtors have always contemplated, and still contemplate, a 100% plan.  In order to structure the plan and distributions under the plan, the Debtors need to quantify the Claims.  In view of the substantial dollar amount of the Claims, the Debtors would need to reserve for such Claims if they are not resolved quickly, which would affect distributions under the plan.  As stated above, the State Court has scheduled the trial in the Action for April 6, 2011.

66.    Estimation of the Claims may also be necessary for this Court to determine feasibility of the Plan.  See  Lionel L.L.C., 2007 WL 2261539 at * 3 ("Considering the enormous dollar amounts of the claims asserted by MTH... in comparison to the rest of the claims and the assets of the Debtors' estates, the Debtors clearly cannot confirm the Plan if this Court cannot find it feasible without the liquidation of MTH's claims.");  Sherman v. Harbin (In re Harbin), 2007 WL 1322389, *4 (9th Cir. May 8, 2007) (holding that in order to meet the feasibility requirement for confirmation of a plan under section 1129(a)(11) a court must evaluate "whether a potential future judgment may affect the debtor's ability to

implement its plan."); *Pizza of Hawaii, Inc. v. Shakey's, Inc. (In re Pizza of Hawaii, Inc.),* 761 F.2d 1374, 1382 (9th Cir.1985) (estimation necessary for a determination of plan feasibility).

67.     It is indisputable that there would be an undue delay in the administration of the Debtors' Chapter 11 cases if the Claims are not expunged or estimated by this Court, and if the Debtors and their creditors were instead forced to wait for the Action to proceed to conclusion in the State Court. Confirmation of the plan and distribution to creditors should not be delayed by the Claims.

68.     The Debtors submit that to the extent that the Claims are not expunged, the Court should estimate the Claims for all purposes.

69.     An estimation proceeding in this Court can be conducted within a very short period of time, as compared with the long amount of time it will take for the trial in the State Court to commence and conclude, and for a judgment to be entered.

70.     A bankruptcy court has the authority to estimate claims for all purposes, including allowance and disallowance.   See 11 U.S.C. § 502(c) (expressly stating that estimation is "for purpose of allowance under this section"); 4-502 Collier on Bankruptcy ¶ 502.04 (2010).  See, e.g. In re Citadel Broadcasting Corp., 2010 Bankr. LEXIS 1606 at *188 (Bankr. S.D.N.Y. 2010) (confirming plan providing for estimation procedure under which the "estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim against any party or Entity, as determined by the Bankruptcy Court").

71.     The Bankruptcy Code does not explicitly detail procedures for estimating claims.  Lionel L.L.C., 2007 WL 2261539 at *5.   It has been repeatedly held, including in

cases at the Circuit Court of Appeals level, that when estimating claims, bankruptcy courts may use whatever method is best suited to the contingencies of the case, so long as the procedure is consistent with the fundamental policy of Chapter 11 that a reorganization "must be accomplished quickly and efficiently." In re Adelphia Business Solutions, Inc., 341 B.R. 415 (Barn. S.D.N.Y. 2003); Bittner v. Borne Chemical Co., 691 F.2d at 135-37.

72.    Bankruptcy courts have employed a wide variety of methods to estimate claims, including summary trial, a full-blown evidentiary hearing, and a review of pleadings and briefs followed by oral argument of counsel.  In re Adelphia Business Solutions, Inc., 341 B.R. 415, 422-23 (Bankr. S.D.N.Y. 2003).   In so doing, courts specifically have recognized that it is often "inappropriate to hold time-consuming proceedings which would defeat the very purpose of 11 U.S.C. §502(c)(1) to avoid undue delay." Id.  See also In re Windsor Plumbing Supply Co., 170 B.R. 503, 520 (Bankr. E.D.N.Y. 1994); accord Bittner, 691 F.2d at 137 (quoting Windsor Plumbing).

73.    The estimation process most commonly used, according to the court in Adelphia Communications Corp., 368 B.R. 140, 279 (Bankr. S.D.N.Y. 2007), is:

> A trier of fact first determines which version [of the facts] is most probable and proceeds from there to determine an award in a fixed amount.  As estimator of claims must take into account the likelihood that each party's version might or might not be accepted by a trier of fact.  The estimated value of a claim is then the amount of the claim diminished by [the] probability that it may be sustainable only in part or not at all.

Adelphia, 368 B.R. at 279 (quoting  Ralph Lauren Womenswear, 197 B.R. at 775).

74.    In In re Baldwin-United Corp, 55 B.R. 885, 889 (Bankr. S.D. Ohio 1985), the court utilized a procedure akin to a summary trial where there was no jury, live testimony by one witness per party, a discovery cutoff date, and only two days for the hearing. Many courts adhere to the method set forth in the Baldwin-United case. Lionel L.L.C., 2007 WL

2261539 at *5.  See, e.g., In re MacDonald, 128 B.R. 161, 166-67 (Bankr.W.D.Tex .1991) (employing an abbreviated procedure practically the same as Baldwin-United); In re Apex Oil Co., 92 B.R. 843 (Bankr.E.D.Mo.1988) (utilizing a methodology analogous to Baldwin-United); NLRB v. Greyhound Lines (In re Eagle Bus Mfg.), 158 B.R. 421 (D.Tex.1993) (two-day summary trial); DeGeorge Fin. Corp. v. Novak ( In re DeGeorge Fin. Corp.), 2002 U.S. Dist. LEXIS 17621 (D.Conn.2002) (one-day trial).

75.     Although this is not the only method of conducting the estimation procedure, a longer method, such as a full-blown trial on the merits, would "eviscerate the purpose underlying Section 502(c)." Lionel, 2007 WL 2261539 at *5, quoting Baldwin-United, 55 B.R. at 899. Moreover, a more time consuming method would run counter to the "efficient administration of the bankrupt's estate ...". Lionel, 2007 WL 2261539 at *5, quoting Bittner, 691 F.2d at 135.   Furthermore, in estimating the value of a claim, the Court of Appeals for the Second Circuit has stated that courts should make a "speedy and rough estimation of [the] claims for purposes of determining [claimant's] voice in the Chapter 11 proceedings ..." In re Chateaugay Corp., 944 F.2d 997, 1006 (2d Cir.1991).  Accord, Lionel, 2007 WL 2261539 at *5.

76.     Based on the Objections to the Claims set forth in detail above, the Debtors submit that the Claims should be estimated at zero and disallowed.

## NOTICE

77.     The Debtors submit that the record has been adequately developed and the relief requested herein may appropriately be granted in the context of this Objection. Pursuant to Bankruptcy Rule 3007, a copy of this Objection, with exhibits, is being served upon (i) the Claimants at the addresses provided in their proofs of Claim, (ii) the Office of

the United States Trustee for the Southern District of New York, (iii) Committee counsel and (iv) all parties who filed notice of appearance. The Debtors submit that no other or further notice need be provided.

78.     This Objection is made without prejudice to the rights of the Debtors to make future objections to the Claim objected to herein and to other claims. No previous motion for the relief sought herein has been made to this or any other court.

**WHEREFORE**, the Debtors respectfully request entry of an order (i) expunging the Claims pursuant to Bankruptcy Code section 502(b), (ii) estimating the Claims at zero ($0) for all purposes, including allowance, pursuant to Bankruptcy Code section 502(c)(1) to the extent, if any, that the Claims are not completely expunged as a result of the Debtors' Objection, and (iii) granting the Debtors such other or further relief as is just.

Dated: New York, New York
      June 25, 2010

                    TODTMAN, NACHAMIE SPIZZ & JOHNS, P.C.
                    Attorneys for **Rock & Republic Enterprises, Inc.**
                     and **Triple R, Inc.**
                    Debtors and debtors-in-possession

                    By:   /s/ Jill Makower
                          Alex Spizz, Esq.
                          Arthur Goldstein, Esq.
                          Jill Makower, Esq.
                    425 Park Avenue
                    New York, New York 10022
                    (212) 754-9400