COBLENTZ, PATCH, DUFFY & BASS LLP
Gregg M. Ficks, Esq. (*admitted pro hac vice*)
One Ferry Building, Suite 200
San Francisco, California 94111-4213
Telephone: (415) 391-4800
Facsimile: (415) 989-1663

-and-

KELLEY DRYE & WARREN LLP
Robert L. LeHane, Esq.
101 Park Avenue
New York, NY 10178
Telephone: (212) 808-7800
Facsimile: (212) 808-7897

*Attorneys for 144 Spring Realty LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>ROCK & REPUBLIC ENTERPRISES, INC., et al.,<br><br>              Debtors. | Chapter 11<br><br>Case No. 10-11728 (AJG)<br>(Jointly Administered) |

**RESPONSE TO DEBTORS' OBJECTION TO CLAIM OF**
**144 SPRING REALTY LLC (CLAIM NOS. 23-1 AND 24-1)**

TO:    THE HONORABLE ARTHUR J. GONZALEZ
         CHIEF UNITED STATES BANKRUPTCY JUDGE

      144 Spring Realty LLC, creditor herein ("Landlord"), by its attorneys, Coblentz, Patch,

Duffy & Bass LLP, respectfully submits this Response ("Response") to the Objection to Claim

of 144 Spring Realty (Claim Nos. 23-1 and 24-1) (the "Objection") filed by Rock & Republic

Enterprises, Inc. ("R&R") and Triple R, Inc. ("TR"), Chapter 11 debtors and debtors-in-possession herein (collectively, "Debtors"), as follows:

## PRELIMINARY STATEMENT

Debtors have failed to rebut the *prima facie* validity of Landlord's claims. They have not submitted any evidence, or even referenced any evidence, to support their theory that the subject lease was "repudiated" pre-petition. There was no repudiation by the Landlord. Further, Debtors have not contested Landlord's claim calculations, which stand unopposed. For all the reasons set forth herein, Debtors have not met their burden on the Objection, and Landlord's claims should be allowed in full.

## FACTUAL BACKGROUND

**A.  The Lease**

1. On or about July 18, 2008, Landlord entered into a 15 1/2 year (plus option) commercial real property lease (the "Lease") with TR. (*See* attached Proof of Claim No. 23-1, at Exhibit A, Paragraph 4. Proof of Claim No. 23-1 and Proof of Claim No. 24-1 are hereafter referred to as the "Claims.") The Lease contemplated that Landlord would construct a 5-story building (the "Building") at 144 Spring Street, New York, NY (the "Property") for Tenant's use and occupancy during the Lease term.

**B.  The Guaranty**

2. To induce Landlord to enter into the Lease, R&R executed a Guaranty (the "Guaranty") guaranteeing TR's obligations to Landlord under the Lease. (Claims at Exhibit A, Paragraph 5.)

**C.  TR Breached The Lease**

3. Landlord commenced efforts to develop the Property as contemplated by the Lease, including seeking necessary entitlements for development of the Property. TR,

however, breached the Lease by failing to remit a $125,000 Security Deposit to Landlord by January 31, 2009, as required under Paragraph 38 of the Lease. (Claims at Exhibit A, Paragraph 6.)

**D.** **Landlord Terminated The Lease Due To TR's Breach**

4. As a result of this breach, Landlord served a Notice of Default on TR in accordance with the Lease. (Claims at Exhibit A, Paragraph 7.) TR still did not cure the breach, and Landlord then served a Notice of Termination on Debtors on March 11, 2009. (Claims at Exhibit A, Paragraphs 7 and 8.) The Lease then terminated in accordance with the Lease, the Notice of Default, the Notice of Termination, and state law on or about March 17, 2009. (Claims at Exhibit A, Paragraphs 9.)

**E.** **Landlord Suffered Significant Damages Due To TR's Breach**

5. Debtors owe over $5 million in Rent and Additional Rent to Landlord under the Lease and Guaranty. (*See* Lease (attached to Claims) at Article 2.B.) Landlord also suffered significant non-rent damages as a result of TR's breach, which are designated as Other Damages in the Claims. These additional damages consist, in part, of expenses Landlord incurred in seeking the required entitlements in order to construct the Building, construction costs, and leasing commissions. Landlord also sustained currently unliquidated damages resulting from the fact that it likely never will be able to develop the Property to its full potential as a consequence of TR's breach. (*See* Request for Relief, *supra*, at Section A.4.)

**F.** **Landlord Filed Suit Against Debtors**

6. On or about March 25, 2009, Landlord filed a Complaint (the "Complaint") for breach of the Lease and collection on the Guaranty against Debtors in New York Supreme Court, initiating *144 Spring Realty LLC v. Triple R, Inc. and Rock & Republic Enterprises, Inc.*, Index No. 600940109 (the "State Court Action").

7. Debtors answered the Complaint, but the case did not substantially proceed before Debtors filed bankruptcy.

**G. Debtors Filed Bankruptcy**

8. On April 1, 2010 (the "Petition Date"), Debtors each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, initiating these Chapter 11 Cases (the "Chapter 11 Cases"). Debtors remain in possession of their property as debtors-in-possession. The Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

**H. Debtors Rejected The Lease**

9. On or about April 6, 2010, Debtors moved to reject the Lease, to the extent it was not already expired. On April 21, 2010, the Court entered an order approving rejection of the Lease effective April 1, 2010 (the "Lease Rejection Order"), to the extent it remained unexpired.

**I. Landlord's Bankruptcy Claims**

10. On May 20, 2010, Landlord timely filed the Claims pursuant to the Lease Rejection Order, docketed as Claim No. 23-1 (Landlord's claims against TR for lease damages) and Claim No. 24-1 (Landlord's claims against R&R for damages under the Guaranty).

11. Landlord filed the Claims in the sum of $4,287,643.52 (plus currently unliquidated sums) under the Bankruptcy Code section 502(b)(6) cap calculation set forth in the Attachment to the Claims.

12. While the Claims are similar, Landlord is entitled to prosecute both Claims in these two Chapter 11 Cases, which have not been substantively consolidated.

**J. Debtors Object To The Claims**

13. On June 4, 2010, Debtors filed the Objection, initiating this contested matter.

Debtors do not contest Landlord's claim calculations. Instead, they essentially assert Landlord is not legally entitled to the Claims in the first instance.

## SUMMARY OF RELIEF REQUEST

14. Landlord seeks to have the Court overrule the Objection, and allow the Claims in full.

## REQUEST FOR RELIEF

15. The Claims should be allowed in the amounts filed pursuant to Bankruptcy Code section 502 because Debtors' arguments that the Claims are "unenforceable" have no merit, and because Debtors have not refuted Landlord's claim calculations.

### A. The Claims Should Be Allowed Because Debtor Has Failed To Rebut The Claims' *Prima Facie* Validity

16. A proof of claim is deemed allowed pursuant to section 502(a) of the Bankruptcy Code unless a party in interest objects. (*In re St. Johnsbury Trucking Co., Inc.*, 206 B.R. 318, 323 (Bankr. S.D.N.Y. 1997).) Pursuant to Bankruptcy Rule 3001(f), a timely filed proof of claim constitutes "prima facie evidence of the validity and amount of the claim." (Fed. R. Bankr. P. 3001(f).) Under Bankruptcy Rule 3001(f), an objecting party has the burden of producing evidence rebutting the *prima facie* validity of such claim. (*In re Reilly*, 245 B.R. 768, 773 (2d. Cir. B.A.P. 2000); *see also In re Minbatiwalla*, 424 B.R. 104, 111 (Bankr. S.D.N.Y. 2010) (objecting party is required to "introduce evidence as to the invalidity of the claim or the excessiveness of its amount"); *In re DJK Residential LLC*, 416 B.R. 100, 104-5 (Bankr. S.D.N.Y. 2009) (stating that the objector must produce "substantial evidence" in opposition); *In re Martinez*, 409 B.R. 35, 38 (Bankr. S.D.N.Y. 2009) ("The objecting party carries the burden if the evidence it produces is equal in probative force to the claim."); *In re Radnor Holdings Corp.*, 353 B.R. 820, 845-46 (Bankr. D. Del. 2006) (objection must be "supported by substantial

evidence").)

17. Only if the party opposing a claim produces substantial evidence to rebut the initial presumption does the burden revert back to the claimant to produce additional evidence to prove the validity of the claim. (*See, e.g.*, *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) ("The burden . . . shifts to the claimant if the objector produces evidence equal in force to the prima facie case . . ..");  *In re Reilly*, 245 B.R. at 773 (same).) The mere filing of an objection containing conclusory statements denying liability, without more, is insufficient to rebut the presumption raised by a timely filed proof of claim. (*See In re Garner*, 246 B.R. 617, 623 (9th Cir. B.A.P. 2000) (holding that a "mere formal objection" fails to rebut the presumption raised by a valid proof of claim); *In re Minbatiwalla*, 424 B.R. at 111 (holding that a "proof of claim . . . cannot be defeated by mere formal objection . . .."); *In re Today's Destiny, Inc.*, Case No. 05-90080, 2008 WL 5479109 at *5 (Bankr. S.D. Tex. Nov. 26, 2008) ("Conclusory statements are insufficient to rebut 3001(f)'s presumption.").)

18. Because Debtors have failed to submit substantial evidence, *or any evidence*, in support of the Objection, they have failed to meet their burden, and the Claims should be allowed in full. In addition, Debtors' legal arguments fail for the reasons stated below.

**B.     The Claims Should Be Allowed Because They Are Supported Under The Lease And Under State Law**

      **1.     Landlord's Claims Should Be Allowed Because TR Breached The Lease Prior To Bankruptcy, Resulting In Termination Of The Lease**

19. As set forth above, TR breached the Lease and Landlord thereafter terminated it in accordance with the Lease terms and state law. Without any factual support, Debtors claim they were "entitled to treat and did treat" their performance under the Lease as "excused" because Landlord allegedly failed to provide assurances of future performance after Debtors' allegedly requested such assurances.

20.     Debtors have offered no evidence of any such request for assurances, or of any repudiation of the Lease by Landlord.  There was no repudiation.  In order to support a claim of anticipatory repudiation, there must be "and unqualified and clear refusal to perform with respect to the entire contract," the alleged breaching party's words or deeds must be "unequivocal," and the alleged breaching party must provide "a definite and final communication of the intention to forego performance." (*O'Connor v. Sleasman*, 830 N.Y.S.2d 377, 379 (2007)).  Under the corollary doctrine of adequate assurance of future performance, any demand for adequate assurance must, in accordance with UCC 2-609—the adequate assurance rule adopted by New York as part of the common law of contracts—be in writing and based on "reasonable grounds for insecurity," among other requirements.  (*See In re Asia Global Crossing, Ltd.*, 326 B.R. 240, 250-252 (Bankr. S.D.N.Y. 2005); *Norcon Power Partners, L.P. v. Niagara Mohawk Power Corp.*, 92 N.Y. 2d 458, 464-465 (N.Y. 1998).)

21.     Here, the Debtors have failed to provide evidence of any of these elements; they have not even *alleged* many of them.[1]  It is uncontroverted that TR did not remit the required Security Deposit to Landlord, that its failure to remit the Security Deposit constituted a breach of the Lease, and that, as a result of TR's breach, Landlord terminated the Lease in accordance with the Lease terms.  As a result, Landlord is entitled to lease

---

[1] Further, it is evident from the Claims that development of the Property was well underway at the time of TR's breach.  Landlord's outside and in-house construction managers were actively working on the Project, as were Landlord's engineers and architects.  Boring tests on the Property had been completed.  Landlord and its professionals had appeared before the Landmarks Preservation Commission several times, and, after multiple revisions to the Building's schematics, understands the schematics were near final approval by the Commission.  Debtors, in short, had no "reasonable grounds for insecurity" under Lease; their claim of generalized apprehension "due to the recession and the global credit crises" does not satisfy even this first step towards seeking adequate assurances under New York law.  (*See, e.g., Norcon Power Partners* at 464-465.)  (Landlord, in any case, had adequate available cash and financing to complete the Building had TR not breached the Lease.)

termination damages under the Lease and the Guaranty.[2]

### 2. The Lease Was In Effect, And TR Was Obligated Under It, Even Though the "Rent Commencement Date" Had Not Yet Occurred

22. Debtors argue they have no liability under the Lease and Guaranty because TR breached the Lease *before* the "Rent Commencement Date." This makes no sense. The Lease was *in effect* when TR breached it, and when Landlord terminated it. TR's breach does not excuse Debtors from their liability under the Lease and Guaranty simply by virtue of that fact that performance of some of the Lease obligations were not yet due when TR breached the Lease and when Landlord terminated it. That is almost always the case. Under Debtors' reasoning, bankruptcy debtors *never* would be liable for prospective lease damages, because future months' rent never would be payable at the time they reject their leases.

### 3. Landlord Suffered Damages Due To TR's Breach Of The Lease, Even Though The Building Was Not Completed

23. Debtors argue Landlord should not have a rent claim because it allegedly "mitigated" its damages by not completing the Building. Debtors miss the point. The building would have been a valuable asset, not a liability. Debtors' default prevented it from being built. Had TR not breached the Lease, Landlord would have built and owned a 5-story (plus usable basement) commercial building in a highly trafficked and highly desirable neighborhood; Landlord would have received rent from TR during the term of the Lease, and thereafter would have been able to lease the building to other tenants. Landlord does not have this asset for the

---

[2] Debtors' reliance on 11 U.S.C. §502(g) is misplaced. That section's mandate that post-petition lease rejection damages shall constitute pre-petition claims does not exclude landlord claims based on pre-petition lease terminations. In any case, as Debtors state, Debtors sought and obtained an order rejecting the Lease in these bankruptcy cases. It is also worth pointing out that Debtors regularly claim alleged "landlord breaches" under its leases in an apparent attempt to avoid liability under them. In Debtors' motion to reject leases, they claimed *all three* of the leases they were seeking to reject had been breached by the respective landlords pre-petition, and "the leases therefore were expired on the Petition Date." (See Paragraph 11 of Debtors' Motion to Reject Leases. [Docket No. 26].

sole reason that TR did not perform under the Lease. Because of TR's breach, Landlord is left with no building and no rental income. Debtors have not cited any authority in support of their position, and it should be rejected. (*See also* immediate next section of this Response.)

**4.     Landlord's Claim For Other Damages Should Be Allowed**

24.     Debtors also do not attempt to support their one sentence objection to Landlord's claim for non-rent damages.[3]

25.     Debtors do not deny that Landlord incurred the damages described in this part of its Claims (totaling $783,367.86 plus currently unliquidated sums for lost income and value to the Property); Landlord's damages resulting from TR's breach, in fact, go far beyond Landlord's rent claim.

26.     TR and Landlord executed the Lease during an active commercial rental market, when rents were much higher than they are now. Landlord entered into the Lease, in part, because it enabled it to construct the Building to its maximum allowable 5 stories above grade, which would result in the Building having a total 9,600 square feet of selling space. Since the time of TR's breach and the resulting termination of the Lease, Landlord has actively marketed the property, but it has not be able to secure another lessor willing to commit to lease a 5-story above grade building, or any building, on the Property.

27.     To lease the Property, Landlord likely eventually will have to build only a 2-story above grade (or smaller) building on the Property, and lease it at a much lower rent than that which TR committed to pay under the Lease. As a result, Landlord will be deprived permanently of ownership of at least 4,800 square feet of income-producing property, and will be forced to

---

[3] Landlord recognizes that the total amount of each of the Claims ultimately may be subject to the section 502(b)(6) cap. (*See In re Foamex Int'l, Inc.*, 368 B.R. 383 (Bankr. D. Del. 2007); *but see In re El Toro Materials Co., Inc.*, (504 F.3d 978 (9th Cir. 2007), *cert. denied*, 128 S.Ct. 1875 (2008).) However, Landlord's claim for its additional damages stand as allowable at least as long as Debtors contest any portion of Landlord's rent claim.

lease the reduced space at a lower per square foot rate than TR committed to pay. In the meantime, the Property sits dormant, generating no income for Landlord, and Landlord is entitled to damages resulting from this downtime. (*See Andover Togs*, 231 B.R. 521, 536-37 (Bankr. S.D.N.Y. 1999).)

**C.     Landlord's Claims For Prospective Lease Termination Damages Already Are Capped Pursuant to Bankruptcy Code Section 502(b)(6)**

28.     Debtors' argue that the Claims should be disallowed under Bankruptcy Code section 502(b)(6). But, Debtors never actually contest Landlord's section 502(b)(6) claim calculations. Instead, Debtors' section 502(b)(6) argument is essentially the same argument Debtors make earlier in their Objection, *i.e.*, that Landlord allegedly is not entitled to its claims in the first instance.

29.     Landlord's claims must necessarily "exist" before any portion of them can be capped. Landlord has established the existence of its claims earlier in this Response, and in the Claims themselves. Since the claims exists, since Landlord already capped the portion of its claims based on lease termination damages in accordance with section 502(b)(6), and since Debtors have not objected to Landlord's section 502(b)(6) calculations or to the amount and existence of Landlord's non-rent claims, the Claims should be allowed in the amount filed (plus additional unliquidated amounts) in accordance with Bankruptcy Code section 502(b).

## NOTICE

30.     Pursuant to the instructions in the Notice of the Objection (the "Notice"), Landlord is serving a copy of this Response, with any exhibits, upon (i) Debtors' counsel at the address provided in the Notice, and (ii) the Office of the United States Trustee for the Southern District of New York at the address provided in the Notice. Landlord submits that no other or further notice of this Response need be provided. Landlord reserves all rights to

conduct discovery pursuant to Part VII of the Federal Rules of Bankruptcy Procedure should the Court determine that further evidence is required to rule on the Objection.

31. Landlord objects to Debtors' assertion that their Objection is "without prejudice to the rights of the Debtors to make future objections to the Claim." Debtors are barred from "splitting" their claim objection(s), and should not be permitted to pursue any further objections to the Claims.

**WHEREFORE**, Landlord respectfully request entry of an order (i) allowing the Claims in full; and (ii) granting Landlord such other or further relief as is just.

Dated: July 9, 2010

Kelley Drye & Warren LLP

By: /s/ *Robert L. LeHane*
     Robert L. LeHane, Esq.
101 Park Avenue
New York, NY 10178
Telephone: (212) 808-7800
Facsimile: (212) 808-7897

-and-

Coblentz, Patch, Duffy & Bass LLP
Gregg M. Ficks, Esq. (*admitted pro hac vice*)
California State Bar # 148093
One Ferry Building, Suite 200
San Francisco, CA 94111

*Attorneys for 144 Spring Realty LLC*

**CERTIFICATE OF SERVICE**

   I hereby certify that on July 9, 2010, a copy of the *RESPONSE TO DEBTORS' OBJECTION TO CLAIM OF 144 SPRING REALTY LLC (CLAIM NOS. 23-1 AND 24-1)* was filed and served upon the parties receiving CM/ECF notice including those parties appearing and requesting service, and upon the individuals listed below by United States First Class Mail and via overnight mail as indicated.

| | |
|---|---|
| *Attorneys for Debtor Rock & Republic Enterprises, Inc.* | *United States Trustee* |
| Arthur Goldstein | Marylou Martin |
| Alex Spizz | Richard C. Morrissey |
| Jill L. Makower | Office of United States Trustee |
| Todtman, Nachamie, Spizz & Johns, P.C. | 33 Whitehall Street |
| 425 Park Avenue | 21st Floor |
| New York, NY 10022 | New York, NY 10004 |
| **Via First Class Mail** | **Via First Class Mail** |

Honorable Arthur J. Gonzalez
United States Bankruptcy Court
One Bowling Green
New York, New York
**Via Overnight Mail**

            */s/ Jason Alderson*
            Jason Alderson