MORGAN, LEWIS & BOCKIUS LLP
Wendy S. Walker, Esq.
101 Park Avenue
New York, New York 10178-0600
Telephone: (212) 309-6000
Facsimile: (212) 309-6001

MORGAN, LEWIS & BOCKIUS LLP
Charles Malaret, Esq.
300 South Grand Avenue
Los Angeles, California 90071
Telephone: (213) 612-2500
Facsimile: (213) 612-2501

Attorneys for New Pacific Rodeo, LLC

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
---------------------------------------------------------x
                                        :
In re:                                  :        Chapter 11
                                        :
    Rock & Republic Enterprises, Inc., et al.  :   Case No. 10-11728 (AJG)
                                        :        (Jointly Administered)
                            Debtors.    :
                                        :
---------------------------------------------------------x
```

**AMENDED NOTICE AND EVIDENCE OF TRANSFER OF CLAIM FOR OTHER
THAN SECURITY PURSUANT TO RULE 3001(E)(2) OF THE FEDERAL RULES OF
BANKRUPTCY PROCEDURE**

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C. § 1111(a).
Transferee hereby gives evidence and notice pursuant to Rule 3001(e)(2), Fed. R. Bankr. P., of
the transfer, other than for security, of the claim referenced in this evidence and notice.

| Name of Transferee: | Name of Transferor: |
|---|---|
| New Pacific Rodeo, LLC | Biba International, Limited<br>Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP<br>11400 W. Olympic Blvd., Floor 9<br>Los Angeles, CA 90064-4100<br>Attention: Mark Rosenbaum |

Name and Address where notices to
transferee should be sent:

Morgan, Lewis & Bockius LLP
300 S. Grand Ave., 22nd Floor
Los Angeles, CA 90071-3032
Attn: Richard W. Esterkin
      Charles Malaret

Phone: (213) 612-2500
Last Four Digits of Acct #: n/a

Name and Address where transferee
payments should be sent (if different from
above):

New Pacific Rodeo, LLC
c/o New Pacific Rodeo Corporation
160 North Canon Drive
Beverly Hills, CA 90210
Attn: Arnold Rosenstein

Phone: (310) 273-1111
Last Four Digits of Acct #: n/a

Court Claim # (if known): 18 (as
amended by claim number 184)

Amount of Claim: $7,041,437.00[1]

Date Claim Filed: May 17, 2010 (as
amended on August 9, 2010)

Phone: (310) 478-4100
Last Four Digits of Acct #: 1302

---

[1] The transferred claim, as amended, includes an asserted administrative claim of $4,187,831.00, and an asserted
prepetition claim of $2,853,606.00.

I declare under penalty of perjury that the information provided in this notice is true and correct to the best of my knowledge and belief.

Dated: New York, New York
        August 18, 2010

                                        **MORGAN, LEWIS & BOCKIUS LLP**
                                        Attorneys for New Pacific Rodeo, LLC


                                        By:   /s/ Wendy S. Walker
                                              Wendy S. Walker
                                              101 Park Avenue
                                              New York, NY  10178-0600
                                              Telephone: (212) 309-6000
                                              Facsimile: (212) 309-6001

                                              Charles Malaret
                                              300 South Grand Avenue
                                              Los Angeles, California 90071
                                              Telephone: (213) 612-2500
                                              Facsimile: (213) 612-2501

CHARLES J. MALARET, State Bar No. 144001
LAURA H. MCKASKLE, State Bar No. 228985
MORGAN, LEWIS & BOCKIUS LLP
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA 90071-3132
Tel: 213.612.2500
Fax: 213.612.2501

Attorneys for Plaintiff
NEW PACIFIC RODEO, LLC

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

| | |
|---|---|
| NEW PACIFIC RODEO, LLC, a Delaware Limited Liability Company,<br><br>        Plaintiff,<br><br>        vs.<br><br>BIBA INTERNATIONAL, LIMITED, a United Kingdom Company, MANNY MASHOUF, an individual, ROCK & REPUBLIC ENTERPRISES, INC., a California Corporation, MICHAEL BALL, an individual, and DOES 1 through 25, inclusive,<br><br>        Defendants. | Case No. BC 384761<br><br>**STIPULATION AND [PROPOSED] ORDER FOR DISMISSAL OF DEFENDANTS MANNY MASHOUF AND BIBA INTERNATIONAL, LIMITED FROM ACTION WITH CONTINUING JURISDICTION**<br><br>[Pursuant to California Code of Civil Procedure Section 664.6]<br><br>Department: 25<br>Judge: Hon. Mary Ann Murphy<br>Complaint Filed: March 13, 2009 |

Plaintiff New Pacific Rodeo, LLC ("Landlord") and Defendants Manny Mashouf ("Mashouf") and Biba International, Limited ("Biba") (collectively referred to herein as "Tenant") through their counsel of record hereby stipulate as to the following facts:

        1.       Landlord filed suit against Mashouf, Biba, Rock & Republic Enterprises, Inc. and Michael Ball, on or about March 13, 2009 entitled *New Pacific Rodeo, LLC v. Manny Mashouf*, Case No. BC 409639, Superior Court of the State of California, County of Los Angeles (the "Action") asserting claims for Rent, Breach of Contract, Fraud and Deceit, Defamation, Intentional Interference with an Existing Contract and Declaratory Relief.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/21829338.3

STIPULATION AND [PROPOSED] ORDER FOR DISMISSAL OF MANNY MASHOUF AND BIBA INTERNATIONAL, LIMITED FROM ACTION WITH CONTINUING JURISDICTION

2.     On or about April 1, 2010, R&R filed for Bankruptcy in the United States Bankruptcy Court for the Southern District of New York, entitled *In Re: Rock & Republic Enterprises, Inc., et al.,* Case No. 10-11728 (AJG) ("Bankruptcy Action").  The Action and Bankruptcy Action are collectively referred to herein as the "Litigation".

3.     On or about September 6, 2007, Landlord and Biba entered into a written commercial Lease agreement ("Master Lease") for real property located at 319 N. Rodeo Drive, Beverly Hills, California 90210 (the "Premises").  The commercial lease at issue was executed for an initial term of ten (10) years and a value over $20,000,000.  Mashouf executed a personal Guaranty ("Master Lease Guaranty") for the Premises guarantying, among other obligations, the full and prompt payment of all rent and additional rent and any and all other sums.

4.     Subsequent to the execution of the Master Lease and the Master Lease Guaranty, but before the Possession Date as defined in the Master Lease, Tenant informed Landlord of its desire to have the Premises sublet pursuant to the terms provided for in the Master Lease.

5.     On or about December 7, 2007, Biba and Rock & Republic Enterprises, Inc. ("R&R") entered into a written commercial Sublease agreement ("Sublease") for the Premises, under which R&R sublet the Premises from Biba for a term commencing on the date of the execution of the Sublease through the Termination Date as defined in the Master Lease.

6.     Landlord, Biba and R&R entered into a written Consent to Sublease agreement ("Consent to Sublease") whereby New Pacific consented to the terms of the Sublease.  The Master Lease, Sublease Agreement and Consent to Sublease collectively are referred to herein as the "Lease Agreements".

7.     Pursuant to the Lease Agreements, Landlord was obligated to perform "Landlord's Work", deliver the property to R&R and Biba; and certify, by its architect or subcontractor, to the R&R and Biba in writing the completion of Landlord's Work.

8.     Landlord performed its obligations in accordance with the Lease Agreements and delivered the Premises to R&R and Biba on October 20, 2008.

9.     The Premises were accepted in accordance with the terms of the Lease Agreements.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/21829338.3

2

STIPULATION AND [PROPOSED] ORDER FOR DISMISSAL OF MANNY MASHOUF AND BIBA INTERNATIONAL, LIMITED FROM ACTION WITH CONTINUING JURISDICTION

10.     Landlord has not terminated R&R or Biba's rights to possession of the Premises,

nor has Landlord terminated the Lease Agreements

11.     Landlord has and continues to perform all obligations and covenants that Landlord

is obligated to perform under the Lease Agreements.

12.     On or about July 23, 2010, Landlord, Biba and Mashouf agreed to terms of a final

settlement agreement and entered into a Mutual Settlement Agreement and Release (the

"Agreement"). A true and correct copy of the fully executed Agreement is attached hereto as

Exhibit 1.

13.     Landlord, Biba and Mashouf also executed a Stipulation for Entry of Monetary

Judgment, which Landlord agreed to file only in the event that Tenant fails to comply with the

terms of the Agreement. The Stipulation for Entry of Judgment was explicitly made enforceable

pursuant to California Code of Civil Procedure § 664.6 (the "Stipulation").

**THEREFORE, THE PARTIES HEREBY STIPULATE AS FOLLOWS:**

1.     Mashouf and Biba shall be dismissed from the Action with prejudice, but with this

Court retaining jurisdiction pursuant to California Code of Civil Procedure Section 664.6, to

enforce the Agreement.

2.     The Agreement is enforceable under California Code of Civil Procedure Section

664.6.

3.     In the event Tenant is delinquent on any payment as set forth in the Agreement,

Landlord shall give Tenant five (5) business days notice by fax of Landlord's intent to obtain

Entry of Judgment. Landlord then may declare the entire unpaid balance immediately due and

payable and Judgment shall be entered for the full amount of $26,175,051.00 in favor of

Landlord, and against Tenant, less any sums received by Landlord from Tenant pursuant to the

terms of the Agreement, plus Landlord's attorney fees incurred with respect to the Litigation from

and after July 1, 2010 and as a result of Tenant's breach of the Settlement Agreement.

4.     Upon Tenant's default, Landlord shall give Tenant five (5) business days notice by

fax of Landlord's intent to obtain Entry of Judgment. Landlord or its counsel then may file a

Declaration Regarding Default in Payments, without further notice to Tenant, and apply *ex parte*,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/21829338.3                                      3

STIPULATION AND [PROPOSED] ORDER FOR DISMISSAL OF MANNY MASHOUF AND BIBA INTERNATIONAL, LIMITED FROM
ACTION WITH CONTINUING JURISDICTION

again without further notice, for Entry of Judgment hereunder, in an amount that credits Tenant for any payments made pursuant to Agreement. Tenants knowingly and specifically waive their right to a hearing upon entry of said Judgment as set forth in the case of *Rooney v. Vermont Investment Corp.*, 10 Cal. 3d 351 (1976).

     5.    The parties hereby stipulate and request that, after Mashouf and Biba are dismissed from the Action, the Los Angeles Superior Court will retain jurisdiction over the Parties to enforce the Agreement until there has been performance in full of the Agreement, including tolling of any applicable statute, rule or court order affecting timely prosecution of this Action, including the "five-year dismissal statute" set forth in Code of Civil Procedure Section 583.130.

**IT IS SO STIPULATED.**

DATED: July **26**, 2010          MORGAN LEWIS & BOCKIUS LLP

By: _____
       Charles J. Malaret
       Attorneys for New Pacific Rodeo, LLC

DATED: July **23**, 2010          WOLF RIFKIN SHAPIRO, SCHULMAN RABKIN LLP

By: _____
       Mark Rosenbaum,
       Attorneys for Manny Mashouf and Biba International, Limited

## [PROPOSED] ORDER

This Court, having reviewed the above Stipulation, hereby ORDERS as follows:

     1.    Mashouf and Biba shall be dismissed from the Action with prejudice.

     2.    Pursuant to California Code of Civil Procedure Section 664.6, upon dismissal of Mashouf and Biba from the Action, the Court shall retain jurisdiction over the parties

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1  to enforce the Agreement until there has been performance of the Agreement, including tolling of

2  any applicable statute, rule or court order affecting timely prosecution of this Action (including

3  the "five-year dismissal statute" set forth in Code of Civil Procured Section 583.130).

4  **IT IS SO ORDERED**.

5  Dated: _____, 2010

6  Honorable Mary Ann Murphy,
   Judge of the Superior Court

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

STIPULATION AND [PROPOSED] ORDER FOR DISMISSAL OF MANNY MASHOUF AND BIBA INTERNATIONAL, LIMITED FROM
ACTION WITH CONTINUING JURISDICTION

# SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release ("Agreement") is entered into as of July 23, 2010, by and between New Pacific Rodeo, LLC ("Landlord"), on the one hand, and Manny Mashouf ("Mashouf") and Biba International, Limited ("Biba") on the other hand. Mashouf and Biba jointly and severally are referred to herein as "Tenant". Landlord and Tenant are jointly referred to as "Parties," and each is separately referred to herein as a "Party."

## *RECITALS:*

A. There is presently a dispute between the Parties with respect to rental amounts due and owing to Landlord by Tenant in accordance with a commercial lease agreement executed by and between Landlord and Biba and a personal Guaranty executed by Mashouf for real property located at 319 N. Rodeo Drive, Beverly Hills, California 90210 (the "Premises").

B. Landlord filed suit against Mashouf, Biba, Rock & Republic Enterprises, Inc. ("R&R") and Michael Ball ("Ball"), on or about March 13, 2009 entitled *New Pacific Rodeo, LLC v. Manny Mashouf,* Case No. BC 409639, Superior Court of the State of California, County of Los Angeles ("California Action") asserting claims for Rent, Breach of Contract, Fraud and Deceit, Defamation, Intentional Interference with an Existing Contract and Declaratory Relief.

C. On or about April 1, 2010, R&R filed for Bankruptcy in the United States Bankruptcy Court for the Southern District of New York, entitled *In Re: Rock & Republic Enterprises, Inc., et al.,* Case No. 10-11728 (AJG) ("Bankruptcy Action"). The California Action and Bankruptcy Action are collectively referred to herein as the "Litigation".

D. On or about September 6, 2007, Landlord and Biba entered into a written commercial Lease agreement ("Master Lease") for the Premises. The commercial lease at issue was executed for an initial term of ten (10) years and a value over $20,000,000. Mashouf executed a personal Guaranty ("Master Lease Guaranty") for the Premises guarantying, among other obligations, the full and prompt payment of all rent and additional rent and any and all other sums.

E. Subsequent to the execution of the Master Lease and the Master Lease Guaranty, but before the Possession Date as defined in the Master Lease, Tenant informed Landlord of its desire to have the Premises sublet pursuant to the terms provided for in the Master Lease.

F. On or about December 7, 2007, Biba and R&R entered into a written commercial Sublease agreement ("Sublease Agreement") for the Premises, under which R&R sublet the Premises from Biba for a term commencing on the date of the execution of the Sublease through the Termination Date as defined in the Master Lease.

G. On or about December 7, 2007, Ball executed a personal Guaranty ("Sublease Guaranty") for the Premises. Ball, the CEO of R&R, personally guaranteed the commercial Sublease and personally guaranteed R&R's obligations for up to one (1) year after an uncured default by R&R, including but not limited to the full and prompt payment of all rent.

H. Landlord, Biba and R&R entered into a written Consent to Sublease agreement ("Consent to Sublease") whereby Landlord consented to the terms of the Sublease.

I. The Master Lease, Sublease Agreement and Consent to Sublease collectively are referred to herein as the "Lease Agreements". The Master Lease Guaranty and Sublease Guaranty are collectively referred to herein as "Guarantees".

J.     Pursuant to the Lease Agreements, Landlord was obligated to perform "Landlord's Work", deliver the property to R&R and Biba; and certify, by its architect or subcontractor, to R&R and Biba in writing the completion of Landlord's Work.

K.     Landlord performed its obligations in accordance with the Lease Agreements and delivered the Premises to R&R and Biba on October 20, 2008.

L.     The Premises were accepted in accordance with the terms of the Lease Agreements.

M.     Landlord has not terminated R&R or Biba's rights to possession of the Premises, nor has Landlord terminated the Lease Agreements.

N.     Landlord has and continues to perform all obligations and covenants that Landlord is obligated to perform under the Lease Agreements.

O.     $4,715,811.31 represents the Rent and Additional Rent (as defined in the Master Lease) owing for the period between February 20, 2009 to October 31, 2010, plus interest on that amount as provided for in the Master Lease, plus attorney's fees incurred prior to June 30, 2010.

P.     The Parties have conducted a thorough investigation of the facts.

Q.     Landlord and Tenant now desire to compromise, settle and resolve all aspects of the Litigation, and to release, discharge and terminate all claims, controversies, causes of action, rights, warranties, liabilities and obligations between them without admitting liability.

R.     Landlord and Tenant agree that the settlement embodied in this Agreement is made in good faith.

NOW, THEREFORE, for good and valuable consideration, including the mutual covenants set forth below, the receipt and sufficiency of which the Parties hereby acknowledge, the Parties agree as follows:

## *AGREEMENT*

## 1.     **CONSIDERATION AND SETTLEMENT**

1.1.     In consideration of the foregoing recitals, the promises contained herein, and other good and valuable consideration, the Parties hereto agree as follows:

A.     Tenant represents and warrants the validity of the Master Lease and agrees to pay the following sums to Landlord:

(i) all past-due Rent and Additional Rent, interest and other amounts pursuant to the Master Lease through October 31, 2010 and legal fees incurred through June 30, 2010 in the amount of $4,715,811.31 (the "Past Due Amount"), and

(ii) all Rent and Additional Rent, interest and other amounts pursuant to the Master Lease as and when due from November 1, 2010 forward as calculated by the Master Lease and all legal fees incurred as a result of the Litigation from and after July 1, 2010;

B. The Past Due Amount will accrue interest at the Default Rate (as defined in the Master Lease) and will be all due and payable by Tenant to Landlord on May 31, 2011;

C. On November 1, 2010 and forward, Tenant will pay to Landlord all Rent and Additional Rent, interest and other amounts pursuant to the Master Lease as and when due as calculated by the Master Lease and all legal fees incurred as a result of the Litigation from and after July 1, 2010 (and failure to do so will result in acceleration of all payments);

D. Tenant hereby assigns and transfers to Landlord any and all claims, counterclaims, defenses and/or rights under the Sublease Agreement against R&R and/or the Sublease Guaranty against Ball in the Litigation, including all judgments, proceeds offsets, amounts collected in the California Action and/or Bankruptcy Action and/or remedies afforded under the Lease Agreements and Guarantees (the "Claims");

E. Landlord shall be responsible for prosecuting all claims under the Lease Agreements and Guarantees against R&R and against Ball. Neither Landlord nor Mashouf will settle any claims against R&R with respect to the Sublease Agreement and/or against Ball with respect to the Sublease Guaranty without the other Party's consent;

F. 81.8% of all amounts received from R&R pursuant to the Sublease Agreement and Ball personally pursuant to the Sublease Guaranty will be applied [i] to Landlord's legal fees incurred in connection with the Litigation from July 1, 2010 forward, [ii] then to the Past Due Amount , [iii] then to reimburse Tenant for previously made Master Lease payments from November 1, 2010 forward (per 1.1C), and [iv] then as a credit to the future Master Lease payments (per 1.1C). 18.2% of such amounts will be retained by Landlord without credit to Tenant's obligations;

G. Landlord will cooperate with Tenant in its marketing of the Premises and in finding a new tenant, and all commissions and costs will be paid by Tenant. All payments made by any new tenant will be credited to Tenant's ongoing obligations per 1.1 of this Agreement and in the order prescribed in 1.1F above;

H. Concurrently herewith, Mashouf will execute the Declaration attached hereto as Exhibit A. Mashouf will make himself available to provide testimony during trial and/or in deposition in connection with the California Action and the Bankruptcy Action. Mashouf will execute additional declarations upon reasonable request from Landlord. Further, Mashouf will make available for inspection his personal documents and/or Biba's documents relating to the Premises and/or the Litigation upon Landlord's request.

1.2    No Pre-Payment Penalty: The parties agree that Tenant may prepay the all or any portion of the sums provided for herein at any time without penalty.

1.3    Costs and Fees. Tenant will bear its own costs and fees in connection with the Litigation.

1.4.  Stipulated Judgment:  Concurrently with their execution of this Agreement, the Parties shall execute a Stipulation for Entry of Judgment pursuant to California Code of Civil Procedure Section 664.6 in the form attached hereto as Exhibit B (the "Stipulation").  Landlord shall retain the originally signed copy of the Stipulation until either: (a) Tenant defaults in his obligation to make payments pursuant to the provisions of paragraph 1.1 of this Agreement, in which event Landlord shall give Tenant five (5) business days notice by fax of Landlord's intent to obtain Entry of Judgment (hereinafter referred to as "Notice Period"); Landlord thereafter may file the Stipulation with the Court; Landlord may then obtain the entry of the judgment provided for in the Stipulation and enforce said judgment in accordance with the provisions of applicable law; or (b) Tenant has fully and indefeasibly performed his obligations under the terms of this Agreement, in which event Landlord shall return the original Stipulation to Tenant.  Notwithstanding the foregoing provision, Tenant shall have the right to cure Tenant's default within the Notice Period one time in a Calendar Year ("Calendar Year" is defined herein as November 1st through October 31st).  Tenant shall have no further right to cure during subsequent Notice Periods within the same Calendar Year.

1.5  Dismissal of Action.  Within five (5) business days upon Tenant's execution of the Settlement Agreement and General Release, Stipulation for Entry of Monetary Judgment and Stipulated Facts, Landlord shall file a Stipulation and Order for Dismissal of Manny Mashouf and Biba International, Limited from the California Action with Continuing Jurisdiction wherein Mashouf and Biba will be dismissed from the California Action with prejudice, but with the Court will retain jurisdiction pursuant to California Code of Civil Procedure Section 664.6, to enforce the Agreement.

## 2.  MUTUAL GENERAL RELEASE PROVISIONS.

2.1  Landlord's Release of Mashouf and Biba.  Except for the joint and several obligations of Mashouf and Biba under this Settlement Agreement, and for other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, Landlord does hereby forever release and discharge Mashouf, Biba, and their affiliates, subsidiaries, parents, interest-holders, members, officers, directors, employees and agents (collectively, the "Released Parties") from any and all liabilities, acts, actions, causes of action, suits, proceedings, debts, dues and sums of money, accounts, accountings, bills, covenants, contracts, controversies, agreements, promises, representations, damages, judgments, defenses, offsets, counterclaims, claims and demands, or any combination of the same, of any kind or nature whatsoever, whether known or unknown, contingent or certain, whether at law or in equity, which Landlord ever had, has, or may have based, in whole or in part, in connection with the Litigation through and including the date of this Settlement Agreement (the "Released Matters").

2.2  Tenant' Release of Landlord.  In exchange for performance and satisfaction of the obligations assumed by the Parties hereto as set forth above, and for other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, Tenant hereby forever releases and discharges David P. Margulies, Arnold Rosenstein, Landlord, and all of their affiliates, subsidiaries, parents, interest-holders, members, officers, directors, employees and agents for all claims, rights, causes of actions, suits, matters and issues related to the Litigation, whether known or unknown, concealed or hidden, suspected or unsuspected, that have been or could have been asserted by Tenant against Landlord.

2.3  Waiver of Civil Code Section 1542.  It is the intention of the Parties hereto that the foregoing releases shall be effective as a bar to all actions, causes of action, obligations,

costs, expenses, attorneys' fees, damages, losses, claims, liabilities and demands of whatsoever character, nature and kind, known or unknown, suspected or unsuspected, hereinabove specified to be so barred. In furtherance of this intention, the Parties expressly waive any and all rights and benefits conferred upon them by the provisions of Section 1542 of the California Civil Code, or by any similar statute applicable in any jurisdiction in which this Settlement Agreement may be implemented, to the extent that any such statutes may be applicable. Section 1542 provides as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

The Parties hereby acknowledge that the Parties separately bargained for the foregoing waiver of the provisions of Section 1542 of the California Civil Code. The Parties expressly consent that the releases provided for in this Agreement shall be given full force and effect in accordance with each and all of their provisions relating to unknown and unsuspected claims, demands and causes of action, if any, to the same effect as those terms and provisions relating to any other claims, demands and causes of action hereinabove specified.

     2.4   <u>Assignment of Rights</u>: The rights, protections and interests of the Landlord, or any portion thereof, under this Agreement may be sold, assigned or otherwise transferred to any other person or entity, including but not limited to a subsequent purchaser of the Premises.

3.   **MISCELLANEOUS.**

     3.1   <u>Compromise</u>. This Settlement Agreement is the compromise and settlement of disputed claims.

     3.2   <u>Governing Law</u>. This Settlement Agreement shall be governed by, construed and enforced in accordance with, the internal laws of the State of California.

     3.3   <u>Benefit and Burden</u>. This Settlement Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective representatives, successors and assigns.

     3.4   <u>Amendment</u>. This Settlement Agreement may be amended only by a written agreement executed by the Parties in interest at the time of amendment.

     3.5   <u>Captions and Interpretation</u>. Section titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend or describe the scope of this Settlement Agreement or any provision hereof. This Settlement Agreement is mutually drafted, and no provision in this Settlement Agreement is to be interpreted for or against either Party because that Party or its legal representative drafted such provision.

     3.6   <u>Number and Gender</u>. Whenever required by the context hereof, the singular shall be deemed to include the plural and the plural shall be deemed to include the

singular, and the masculine, feminine and neuter genders shall each be deemed to include the other.

  3.7 <u>Entire Agreement</u>. This Settlement Agreement constitutes the entire agreement between the Parties pertaining to the subject matter hereof and fully supersedes any and all prior understandings, representations, warranties and agreements between the Parties pertaining to the subject matter hereof. The consideration recited herein is the sole, complete and entire consideration for the releases, and there is no agreement, oral or written, express or implied, whereby the undersigned are to receive at any time or in any event or upon the happening of any contingency or upon the development or the discovery of any fact, circumstance or condition, any further consideration of any kind whatsoever from any Party hereto.

  3.8 <u>Independent Advice of Counsel</u>. Each of the Parties represents and declares that in executing this Settlement Agreement it has relied solely upon its own judgment, belief and knowledge, and the advice and recommendations of its own independently selected counsel, concerning the nature, extent and duration of his or her rights and claims, and that it has not been influenced to any extent whatsoever in executing the same by any representations or statements covering any matters made by the other Parties hereto or by any person representing the other Parties.

  3.9 <u>Voluntary Agreement</u>. Each of the Parties hereto further represents and declares that it has carefully read this Settlement Agreement and knows its contents and that each Party signs the same freely and voluntarily.

  3.10 <u>No Prior Assignments</u>. Each of the Parties represents that they have not heretofore assigned to any other person or entity any of the rights or claims, or any portion thereof, which any of them has or may have against any of the Released Parties, and that they are aware of no fact, circumstance or reason that would limit in any manner the releases that they provide by this Settlement Agreement.

  3.11 <u>Counterparts</u>. This Settlement Agreement may be executed in counterparts, each of which shall be deemed an original and which together shall constitute one and the same instrument.

  3.12 <u>Attorney's Fees</u>. In the event there is any dispute concerning the terms of this Agreement or the performance of any party hereto pursuant to the terms of this Agreement, and any party hereto retains counsel for the purpose of enforcing any of the provisions of this Agreement or asserting the terms of this Agreement in defense of any suit filed against said party, the prevailing party in such a dispute shall be entitled to recover, in addition to any other remedy to which such party may be entitled, all of its costs and attorney's fees incurred in connection with the dispute irrespective of whether or not a lawsuit is actually commenced or prosecuted to conclusion.

  3.13 <u>Notices</u>. Any and all notices between the parties provided for or permitted under this agreement, or by law, shall be in writing and shall be deemed duly served:

    (a) When personally delivered to a party, on the date of such delivery; or

(b)     When sent via facsimile to a party at the facsimile number set forth below, or to such other or further facsimile number provided in a notice sent under the terms of this paragraph, on the date of the transmission of that facsimile; or

(c)     When sent via e-mail to a party at the e-mail address set forth below, or to such other or further –e-mail address provided in a notice sent under the terms of this paragraph, on the date of the transmission of that e-mail; or

(d)     When deposited in the United States mail, certified, postage prepaid, addressed to such party at the address set forth below, or to such other or further address provided in a notice sent under the terms of this paragraph, three days following the deposit of such notice in the mails.

Notices pursuant to this paragraph shall be sent to the parties as follows:

To Landlord:

Anthony Ciasulli
Morgan, Lewis & Bockius LLP
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071
Phone: (213) 612-2500
Fax     (213) 612-2501
Email: aciasulli@morganlewis.com

With a required copy to:
David P. Margulies
New Pacific Rodeo, LLC
160 N. Canon Drive
Beverly Hill, CA 90210
Email: dm@newpacificrealty.com

To Tenant:

Mark Rosenbaum
WOLF RIFKIN SHAPIRO, SCHULMAN RABKIN LLP
11400 W Olympic Blvd, Floor 9
Los Angeles, CA 90064-1557
Phone: 310) 478-4100
Fax:     (310) 479-1422
Email: mrosenbaum@wrslawyers.com

or to such other place as may from time to time be specified in a notice to each of the parties hereto given pursuant to this paragraph as the address for service of notice on such party.

AGREED AND ACCEPTED
NEW PACIFIC RODEO, LLC

By: _____
    David P. Margulies, President

Dated: July ___, 2010

AGREED AND ACCEPTED
MANNY MASHOUF

By: _____
    Manny Mashouf

Dated: July 23, 2010

AGREED AND ACCEPTED
BIBA INTERNATIONAL, LIMITED

By: _____
    Manny Mashouf

Dated: July 23, 2010

## APPROVED AS TO FORM AND CONTENT:

DATED: July 26, 2010

MORGAN LEWIS & BOCKIUS LLP

By: _____
    Charles J. Malaret
    Attorneys for New Pacific Rodeo, LLC

DATED: July 23, 2010

WOLF RIFKIN SHAPIRO, SCHULMAN RABKIN LLP

By: _____
    Mark Rosenbaum,
    Attorneys for Manny Mashouf and Biba
    International, Limited

or to such other place as may from time to time be specified in a notice to each of the parties hereto given pursuant to this paragraph as the address for service of notice on such party.

AGREED AND ACCEPTED
NEW PACIFIC RODEO, LLC

By:_____
        David P. Margulies, President

Dated: July 23, 2010

AGREED AND ACCEPTED
MANNY MASHOUF

By:_____
        Manny Mashouf

Dated: July____, 2010

AGREED AND ACCEPTED
BIBA INTERNATIONAL, LIMITED

By:_____
        Manny Mashouf

Dated: July____, 2010

## APPROVED AS TO FORM AND CONTENT:

DATED: July_____, 2010                     MORGAN LEWIS & BOCKIUS LLP


By:  _____
        Charles J. Malaret
        Attorneys for New Pacific Rodeo, LLC


DATED: July_____, 2010                     WOLF RIFKIN SHAPIRO, SCHULMAN
                                            RABKIN LLP


By:  _____
        Mark Rosenbaum,
        Attorneys for Manny Mashouf and Biba
        International, Limited

# EXHIBIT A

# DECLARATION OF MANNY MASHOUF

I, Manny Mashouf, declare:

1.     I am an individual currently residing in the County of Los Angeles, State of California, and I am over 18 years of age. I was the Chairman of the Board for Biba International, Limited ("Biba"). I have personal knowledge of each fact contained in this declaration, and I could and would testify competently thereto under oath, if called upon to do so.

2.     I have over thirty years experience in the fashion and retail industry.

3.     In 1976, I created a company that designs and manufacturers a collection of lifestyle clothing that currently has stores throughout the world. I am the Chairman of the Board ("Chair") and Chief Executive Office ("CEO") for this company.

4.     Based on my thirty years experience in the fashion and retail industry, I have significant experience in leasing as well as negotiating the leases for retail stores.

5.     On or about September 6, 2007, New Pacific Rodeo, LLC ("Landlord") and Biba entered into a written commercial Lease agreement ("Master Lease") for the Premises. A true and correct copy of the Master Lease is attached hereto as Exhibit A.

6.     The Master Lease was executed for an initial term of ten (10) years and a value over $20,000,000.

7.     On or about September 6, 2007, I executed a personal Guaranty ("Master Lease Guaranty") for the Premises guaranteeing, among other obligations, the full and prompt payment of all rent and additional rent and any and all other sums. A true and correct copy of the Master Lease Guaranty is attached hereto as Exhibit B.

8.     In executing the Master Lease Guaranty, I understood that I was guaranteeing the financial obligations of Biba under the Master Lease.

9.     I understood that Biba would receive the Premises as a shell pursuant to the Master Lease to permit Biba to create a store that conforms to its brand image.

10.     Subsequent to the execution of the Master Lease and the Master Lease Guaranty, but before the Possession Date as defined in the Master Lease, I informed Landlord of Biba's desire to have the Premises sublet pursuant to the terms provided for in the Master Lease.

11.     I hired a retail broker in Beverly Hills, Jay Luchs, to assist in locating a tenant to sublease the Premises. David Margulies informed me that Landlord also would help pursue a potential subtenant.

12.     Thereafter, on or about December 7, 2007, Biba and Rock & Republic Enterprises, Inc. ("R&R") entered into a written commercial Sublease agreement ("Sublease Agreement") for the Premises, under which R&R sublet the Premises from Biba for a term commencing on the date of the execution of the Sublease through the Termination Date as defined in the Master Lease. A true and correct copy of the Sublease Agreement is attached hereto as Exhibit C.

13.     On or about December 7, 2007, Michael Ball ("Ball") executed a personal Guaranty ("Sublease Guaranty") for the Premises.

14.     Landlord, Biba and R&R entered into a written Consent to Sublease agreement ("Consent to Sublease") whereby Landlord consented to the terms of the Sublease. A true and correct copy of the Consent to Sublease is attached hereto as Exhibit D.

15.     The Sublease Agreement and Consent to Lease permitted Landlord to deal directly with R&R. Accordingly, I was not involved in further discussions regarding the Landlord's Work, R&R's construction plans and drawings for the Premises.

16.     Upon execution of the Sublease Agreement and Consent to Sublease, R&R was the subtenant and therefore controlled the acceptance of the property.

17.     I was given notice that Landlord performed its obligations in accordance with the Master Lease Agreement, Sublease Agreement and Consent to Sublease Agreement (collectively referred to as "Lease Agreements") and delivered the Premises to R&R.

18.     I did not recall having any conversations with R&R after receiving the certification from Landlord that the Premises were delivered, but I later learned from Jay Luchs,

who was hired as R&R's real estate broker to re-sublease the Premises, that R&R accepted possession of the Premises.

19. The Lease Agreements require the tenant to use its best efforts to commence its improvement promptly on the Possession Date, and complete its work such that the Premises shall be open for business as soon as commercially possible.

20. Based on my visits to the Premises and conversations with Ball and Jay Luchs, it is my understanding that R&R did not submit construction plans for the Premises and never began construction on the Premises.

21. After the Premises were delivered on October 20, 2008, R&R contacted me and requested I subsidize R&R's lease and assist R&R in making rental payments.

22. I was informed that R&R had a potential subtenant. R&R asked me to reduce rental payments under the terms of the Sublease Agreement. I explained that I assigned my rights to the Landlord and could not modify the terms of the Sublease Agreement.

23. I was later informed R&R rejected the potential sublease due to the financial terms of the proposal because R&R did not want to agree to sublease where R&R still had to pay monies toward the rental payments set forth in the Sublease Agreement.

24. Pursuant to the Master Lease, Biba remained liable for its rental payments in the event of a default and, pursuant to the Master Lease Guaranty, I also remained liable for the payment of Biba's rent in the event of a default.

25. I was informed that R&R did not satisfy their rental obligations when payments were due and owing. I received a Notice of R&R's Default ("Notice") from Landlord. A true and correct copy of Landlord's Notice of Default is attached hereto as Exhibit E. I did not respond to the Notice.

26. I was given notice of Landlord's delivery of the Premises, R&R's acceptance of the Premises and R&R's subsequent default. I never contested any of these events.

27.     I was not involved in the discussions with R&R after I declined their request to subsidize the rental payments. I do not recall speaking with anyone at R&R or Ball until Landlord filed an action to recover rent in Los Angeles Superior Court.

28.     I am not aware of any communications between R&R and Landlord regarding the Possession Date for the Premises after R&R sent its November 2008 letter accepting the Premises.

29.     I met with R&R's general counsel between March and May of 2009 to discuss the rent obligations set forth in the Sublease Agreements. At the time, R&R requested a reduction and/or subsidization of rent in the Sublease, but R&R never raised any defects in the delivery of the Premises.

30.     After the above-entitled action was filed, I requested to meet with R&R's CEO, Ball.

31.     I was scheduled to meet Ball to reach a decision on what R&R and Ball were planning to do with the Premises. At the last minute, however, Ball cancelled the meeting. Upon receiving notification that Ball cancelled our meeting, I sent Ball the following:

> I just heard that you cancelled our meeting that was scheduled today at 5:30 with our attorneys to reach a decision on what you are planning to do with the Rodeo lease.
>
> Needless to say, I am very disappointed that you have not recognized the urgency and assigned a priority to address these issues including your not paying rent to the landlord of which as a result I have been sued by the landlord. Just as a reminder, the rent that you have agreed to, is approximately $200,000 a month or approximately $7,000 per day.
>
> Please give this matter the urgency it deserves. It would not be in anyone's interest to get into a legal battle with the landlord. Time is of the essence and the clock is ticking. If you don't care and it seems that you don't seem to care enough to resolve whatever conflict that there are, I would have no choice but to pursue other remedies that I am entitled to.

A true and correct copy of my May 4, 2009 email correspondence is attached hereto as Exhibit F.

32.     I ultimately met with Ball and Jay Luchs at the store. At that time, Ball informed me that he "had a way to get out of the lease." When Ball presented his theory that R&R never

accepted the Premises, Jay Luchs showed Ball the acceptance letter from R&R. Ball stated that the letter did not matter as his lawyers created an argument to get out of the lease even though R&R accepted the Premises and tried to sublease it.

33.     Ball solicited my involvement and assistance to deny R&R's acceptance of the Premises. Even though I was skeptical of Ball's theory to avoid liability, I did not initially pursue a settlement with the hope that R&R and Ball would pay on their rental obligations and/or resolve this lawsuit.

34.     I subsequently learned that Ball has attempted to avoid other contractual obligations.

35.     After reviewing certain of the documents produced in the litigation, I now do not believe R&R's claims that it did not accept possession of the Premises and the Landlord's Work was not completed have any merit so I settled my claim.

I declare under penalty of perjury, under the laws of the State of California that the foregoing is true and correct. Executed this 23 day of July, 2010, at Los Angeles, California.

Manny Mashouf

1　CHARLES J. MALARET, State Bar No. 144001
　　LAURA H. MCKASKLE, State Bar. No. 228985
2　MORGAN, LEWIS & BOCKIUS LLP
　　300 South Grand Avenue
3　Twenty-Second Floor
　　Los Angeles, CA 90071-3132
4　Tel: 213.612.2500
　　Fax: 213.612.2501
5
　　Attorneys for Plaintiff
6　NEW PACIFIC RODEO, LLC

7

8　　　　　SUPERIOR COURT OF THE STATE OF CALIFORNIA

9　　　　　　　　　　COUNTY OF LOS ANGELES

10

11　NEW PACIFIC RODEO, LLC, a Delaware　　　CASE NO. BC 409639
　　Limited Liability Company,
12　　　　　　　　　　　　　　　　　　　　　STIPULATION FOR ENTRY OF
　　　　　　　Plaintiff,　　　　　　　　　　　MONETARY JUDGMENT AGAINST
13　　　　　　　　　　　　　　　　　　　　　DEFENDANTS MANNY MASHOUF AND
　　　　　vs.　　　　　　　　　　　　　　　　BIBA INTERNATIONAL, LIMITED
14
　　BIBA INTERNATIONAL, LIMITED, a
15　United Kingdom Company, MANNY
　　MASHOUF, an individual, ROCK &
16　REPUBLIC ENTERPRISES, INC., a
　　California Corporation, MICHAEL BALL,
17　an individual, and DOES 1 through 25,
　　inclusive,
18
　　　　　　　Defendants.
19

20　　　　　IT IS HEREBY STIPULATED by and between Plaintiff, New Pacific Rodeo, LLC

21　("Landlord") and Defendants Manny Mashouf ("Mashouf") and Biba International, Limited

22　("Biba") (collectively referred to herein as "Tenant"), through their attorneys of record, as

23　follows:

24　　　　　1.　　The within action has been settled pursuant to Code of Civil Procedure section

25　664.6. The terms of the settlement are fully set forth in a written Settlement Agreement and

26　General Release ("Settlement Agreement") signed by the parties to this Stipulation.

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/21827168.2

STIPULATION FOR ENTRY OF MONETARY JUDGMENT

1      2.    In the event Tenant is delinquent on any payment as set forth in the Settlement

2  Agreement, Landlord shall give Tenant five (5) business days notice by fax of Landlord's intent

3  to obtain Entry of Judgment.  Landlord thereafter may immediately declare the entire unpaid

4  balance immediately due and payable and Judgment shall be entered in the form attached hereto

5  as Exhibit A, in an amount equal to $26,175,051.00 in favor of Landlord, and against Tenant, less

6  any sums received by Landlord from Tenant pursuant to the terms of the Agreement, plus

7  Landlord's attorney fees incurred with respect to the Litigation (the above referenced matter

8  entitled *New Pacific Rodeo, LLC v. Manny Mashouf*, Case No. BC 409639 filed in the Superior

9  Court of the State of California, County of Los Angeles and the matter entitled *In Re: Rock &*

10  *Republic Enterprises, Inc., et al.*, Case No. 10-11728 (AJG) filed in the United States Bankruptcy

11  Court for the Southern District of New York are collectively referred to herein as the

12  "Litigation"), from and after July 1, 2010 and as a result of Tenant's breach of the Settlement

13  Agreement.

14      3.    Said judgment may be entered upon the filing of a declaration under penalty of

15  perjury by counsel for Landlord stating that Tenant has defaulted under the terms of the

16  Settlement Agreement, the amount paid by Tenant pursuant to the Settlement Agreement as of the

17  date of that declaration and the attorneys fees incurred with respect to the Litigation from and

18  after July 1, 2010 and as a result of Tenant's default.

19      4.    Upon Tenant's default, Landlord shall give Tenant five (5) business days notice by

20  fax of Landlord's intent to obtain Entry of Judgment.  Landlord or its counsel then may file a

21  Declaration Regarding Default in Payments, and apply *ex parte* without further notice, for Entry

22  of Judgment hereunder, in an amount that credits Tenant for any payments made pursuant to

23  Agreement.  Tenants knowingly and specifically waive their right to a hearing upon entry of said

24  Judgment as set forth in the case of *Rooney v. Vermont Investment Corp.*, 10 Cal. 3d 351 (1976)

25  and any right that they may have to appeal from said judgment.

26      5.    The judgment provided for herein may be entered by an Officer of the Court.

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/21827168.2          2

STIPULATION FOR ENTRY OF MONETARY JUDGMENT.

6.     This Stipulation for Entry of Monetary Judgment may be executed in two or more counterparts, each of which shall be deemed a duplicate original but all of which together shall constitute one stipulation.

7.     Mashouf and Biba acknowledge that they are freely and voluntarily entering into this Stipulation for Entry of Monetary Judgment, that this stipulation is the result of good faith settlement negotiations, and that it was represented by legal counsel throughout the negotiations that led to the execution of this Stipulation.

**IT IS SO STIPULATED.**

AGREED AND ACCEPTED
NEW PACIFIC RODEO, LLC

By:
    David P. Margulies, President

Dated: July 23, 2010

AGREED AND ACCEPTED


By:
    Manny Mashouf

Dated: July ___, 2010

AGREED AND ACCEPTED
BIBA INTERNATIONAL, LIMITED

By:
    Manny Mashouf

Dated: July ___, 2010

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/21827168.2

3

STIPULATION FOR ENTRY OF MONETARY JUDGMENT.

6.     This Stipulation for Entry of Monetary Judgment may be executed in two or more counterparts, each of which shall be deemed a duplicate original but all of which together shall constitute one stipulation.

7.     Mashouf and Biba acknowledge that they are freely and voluntarily entering into this Stipulation for Entry of Monetary Judgment, that this stipulation is the result of good faith settlement negotiations, and that it was represented by legal counsel throughout the negotiations that led to the execution of this Stipulation.

**IT IS SO STIPULATED.**

AGREED AND ACCEPTED
NEW PACIFIC RODEO, LLC

By:_____
    David P. Margulies, President

Dated: July ___, 2010

AGREED AND ACCEPTED

By:_____
    Manny Mashouf

Dated: July 23, 2010

AGREED AND ACCEPTED
BIBA INTERNATIONAL, LIMITED

By:_____
    Manny Mashouf

Dated: July 23, 2010

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/21827168.2

3

STIPULATION FOR ENTRY OF MONETARY JUDGMENT.

DATED: July 26, 2010          MORGAN LEWIS & BOCKIUS LLP

                              By: _____
                                  Charles J. Malaret
                                  Attorneys for New Pacific Rodeo, LLC

DATED: July 23, 2010          WOLF RIFKIN SHAPIRO, SCHULMAN
                              RABKIN LLP

                              By: _____
                                  Mark Rosenbaum,
                                  Attorneys for Manny Mashouf and
                                  Biba International, Limited

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1   CHARLES J. MALARET, State Bar No. 144001
    LAURA H. MCKASKLE, State Bar. No. 228985
2   MORGAN, LEWIS & BOCKIUS LLP
    300 South Grand Avenue
3   Twenty-Second Floor
    Los Angeles, CA 90071-3132
4   Tel: 213.612.2500
    Fax: 213.612.2501
5
    Attorneys for Plaintiff
6   NEW PACIFIC RODEO, LLC

7

8                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                              COUNTY OF LOS ANGELES

10

11  NEW PACIFIC RODEO, LLC, a Delaware          CASE NO. BC 409639
    Limited Liability Company,
12                                              **ORDER FOR MONETARY JUDGMENT**
                  Plaintiff,                    **AGAINST DEFENDANTS MANNY**
13                                              **MASHOUF AND BIBA INTERNATIONAL,**
            vs.                                 **LIMITED**
14
    BIBA INTERNATIONAL, LIMITED, a
15  United Kingdom Company, MANNY
    MASHOUF, an individual, ROCK &
16  REPUBLIC ENTERPRISES, INC., a
    California Corporation, MICHAEL BALL,
17  an individual, and DOES 1 through 25,
    inclusive,
18
                  Defendants.
19

20          The parties having stipulated thereto, and good cause appearing therefore, it is hereby

21  ordered, adjudged and decreed that:

22          Plaintiff New Pacific Rodeo, LLC ("Landlord") has a judgment herein against Defendants

23  Manny Mashouf ("Mashouf") and Biba International, Limited ("Biba") (collectively referred to

24  herein as "Tenant") in the sum of equal to $26,175,051.00 in favor of Landlord, and against

25  Tenant, less any sums received by Landlord from Tenant pursuant to the terms of the Settlement

26  Agreement and General Release, plus Landlord's attorney fees incurred with respect to the

27  Litigation (the above referenced matter entitled *New Pacific Rodeo, LLC v. Manny Mashouf*, Case

28

MORGAN, LEWIS &
  BOCKIUS LLP
 ATTORNEYS AT LAW
   LOS ANGELES

DB2/21827169.2

JUDGMENT

No. BC 409639 filed in the Superior Court of the State of California, County of Los Angeles and the matter entitled *In Re: Rock & Republic Enterprises, Inc., et al.,* Case No. 10-11728 (AJG) filed in the United States Bankruptcy Court for the Southern District of New York are collectively referred to herein as the "Litigation"), from and after July 1, 2010 and as a result of Tenant's breach of the Settlement Agreement.

_____
JUDGE OF THE SUPERIOR COURT

APPROVED AS TO FORM AND CONTENT:

DATED: July **26**, 2010          MORGAN LEWIS & BOCKIUS LLP

By: _____
Charles J. Malaret
Attorneys for New Pacific Rodeo, LLC

DATED: July **23**, 2010          WOLF RIFKIN SHAPIRO, SCHULMAN RABKIN LLP

By: _____
Mark Rosenbaum,
Attorneys for Manny Mashouf, Biba International, Limited

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES