Atlas Strategic Advisors, LLC
Investment Banker and Financial Advisor for
Rock & Republic Enterprises, Inc. and
 Triple R, Inc.
Debtors and Debtors-in-Possession
140 East 45th Street, Flr 23
New York, NY 10017
Tel:  212-471-4100
Palden Namgyal, Senior Managing Director, Co-Founder
Roberta Mazzariol, Managing Director, Co-Founder
Julian Steinberg, Managing Director
Nicholas Enthoven, Associate

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| In re: | Chapter 11 |
| ROCK & REPUBLIC ENTERPRISES, INC., <u>et al.</u>, | Case No. 10-11728 (AJG) (Jointly Administered) |
| Debtors. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**COVER SHEET PURSUANT TO UNITED STATES TRUSTEE GUIDELINES FOR REVIEWING APPLICATIONS FOR INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES FILED PURSUANT TO 11 U.S.C. §§ 328, 330 AND 331**

**NAME OF APPLICANT:**    Atlas Strategic Advisors, LLC

**TIME PERIOD:**    April 1, 2010 through July 31, 2010

**ROLE IN THE CASE:**    Investment Banker and Financial Advisor for the Debtors

**DATE OF RETENTION:**    May 24, 2010, effective as of April 1, 2010

**FIRST INTERIM APPLICATION [1]:**    Fees Requested: $64,000.00 [2]
Expenses Requested: $3,113.57

**PRIOR APPLICATIONS:**   None

---

[1] This Application requests interim approval of 80% of Monthly Fees and 100% of expenses.  This Application assumes continuation of a 20% Monthly Fee holdback.
[2] The $64,000 includes $10,000 of a $20,000 retainer that Atlas received from R&R pre-petition, which $10,000 is being held by Atlas pursuant to the Atlas Retention Order.

259292 v2

Atlas Strategic Advisors, LLC
Investment Banker and Financial Advisor for
Rock & Republic Enterprises, Inc. and
 Triple R, Inc.
Debtors and Debtors-in-Possession
140 East 45th Street, Flr 23
New York, NY 10017
Tel: 212-471-4100
Palden Namgyal, Senior Managing Director, Co-Founder
Roberta Mazzariol, Managing Director, Co-Founder
Julian Steinberg, Managing Director
Nicholas Enthoven, Associate

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

In re:                                              Chapter 11

ROCK & REPUBLIC ENTERPRISES, INC.,                  Case No. 10-11728 (AJG)
et al.,                                             (Jointly Administered)
                                Debtors.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**FIRST INTERIM FEE APPLICATION OF ATLAS STRATEGIC
ADVISORS, LLC, INVESTMENT BANKER AND FINANCIAL ADVISOR
FOR THE DEBTORS, FOR ALLOWANCE OF COMPENSATION AND
REIMBURSEMENT OF EXPENSES PURSUANT TO SECTIONS 330
AND 331 OF THE BANKRUPTCY CODE**

TO:   **THE HONORABLE ARTHUR J. GONZALEZ
      CHIEF UNITED STATES BANKRUPTCY JUDGE**

Atlas Strategic Advisors, LLC ("Atlas" or "Applicant"), Investment Banker and

Financial Advisor for Rock & Republic Enterprises, Inc. ("R&R") and Triple R, Inc.

("Triple R"), debtors and debtors-in-possession (collectively, the "Debtors"), as and for

its first interim application (the "Application") for allowance of compensation and

reimbursement of actual and necessary expenses in connection with services rendered

on behalf of the Debtors during the period from April 1, 2010 through July 31, 2010 (the

"First Interim Period") pursuant to this court's order dated April 29, 2010 establishing

procedures for monthly compensation and reimbursement of expenses of professionals ("Monthly Fee Order"), respectfully represents as follows:

## I. INTRODUCTION

### A. General

1.      This Application is made pursuant to Sections 330, 331 and 503(b) of the Bankruptcy Code, Rule 2016 of the Bankruptcy Rules, the Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 adopted by the Executive Office of the United States Trustee issued on January 30, 1996 (the "UST Guidelines"), the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases (the "Amended Guidelines, and, together with the UST Guidelines, the "Fee Guidelines"), and the Monthly Fee Order, for an allowance of actual compensation for professional services rendered by Applicant to the Debtors during the First Interim Period and for reimbursement of actual disbursements and expenses incurred by Applicant during the First Interim Period in connection with the rendering of such professional services.

2.      Applicant was retained as Investment Banker and Financial Advisor for the Debtors nunc pro tunc to April 1, 2010 by order dated May 24, 2010 (the "Atlas Retention Order"), a copy of which is annexed hereto as **Exhibit "A"**.    The Atlas Retention Order authorized R&R to employ and retain Atlas *nunc pro tunc* to the Petition Date on the terms and conditions set forth in the amended engagement agreement dated April 28, 2010 (the "Amended Engagement Agreement"), as modified by the Atlas Retention Order, pursuant to sections 327(a) and 328(a) of the Bankruptcy

Code and Bankruptcy Rule 2014. (A copy of the Amended Engagement Agreement is annexed to the Atlas Retention Order.)

3. Pursuant to the Atlas Retention Order, Atlas' monthly retainer fee is $20,000, and is creditable to any subsequent and Success Fee.

4. This is Applicant's first fee request in these Chapter 11 cases. All professional services for which compensation is being sought have been performed for the benefit of the Debtors and their estates in connection with these Chapter 11 cases. Applicant is seeking an award of reasonable compensation in the amount of $64,000[1], representing 80 percent of the fees incurred during the First Interim Period and reimbursement of reasonable and necessary expenses in the sum of $3,113.57 for Applicant's services during the First Interim Period.

5. Pursuant to the Monthly Fee Order entered in these Chapter 11 cases, Applicant has received to date the total sum of $32,000 representing 80% of the fees incurred for April 2010 and May 2010 and is awaiting payment of 80% of the monthly retainer fee for June and July 2010.

6. This Application is made in order to comply with the provisions of the Monthly Fee Order.

---

[1] The $64,000 includes $10,000 of a $20,000 retainer that Atlas received from R&R pre-petition, which $10,000 is being held by Atlas pursuant to the Atlas Retention Order. The Atlas Retention Order provided that:

> **ORDERED**, that the unapplied portion of the initial $20,000 retainer shall constitute a general security retainer for post-petition services and expenses, and shall be held by Atlas subject to further order of the Court. Upon an Order of this Court approving an interim or final fee application, Atlas shall apply the retainer against its then-unpaid fees and expenses in respect of Atlas' fee applications filed and approved in accordance with the applicable provisions of the Bankruptcy Code.

**B.** **The Applicant**

7.     Applicant is a Limited Liability Corporation of over twenty (20) employees, consisting of two Senior Managing Directors, five Managing Directors, four Associates, six Analysts and support personnel specializing in Investment Banking Services.

8.     Applicant's offices are located at 140 East 45th Street, New York, New York 10017.

9.     Atlas is a boutique mergers and acquisitions firm focused in the consumer space that was founded in 2004 and has advised on over $30 Billion in transactions since 2004.   Atlas' professionals have extensive experience working with financially troubled companies in complex financial restructurings both in out-of-court situations and in Chapter 11 cases.

## II.     PROCEDURAL BACKGROUND

10.     On April 1, 2010, (the "Petition Date") each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court.

11.     The Debtors' Chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

12.     Since the Petition Date, the Debtor have continued to operate their businesses and manage their affairs and property as debtors in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

13.     On April 13, 2010, the United States Trustee for the Southern District of New York appointed an Official Committee of Unsecured Creditors (the "Committee"). The Committee has retained Arent Fox LLP as its counsel.

14.    The Debtors are a wholesale and retail apparel company specializing in an avant-garde and distinctive line of clothing.  Originally started in 2002 by its Chief Executive Officer, Michael Ball, primarily as an American jeans company, the Debtors have expanded their lines to include high fashion clothing for men, women and children as well as shoes, cosmetics and accessories.  The Debtors' merchandise can be found at most high end retail stores such as Nordstrom, Neiman Marcus, Bergdorf Goodman, Bloomingdales, Lord & Taylor, Harvey Nichols and Saks Fifth Avenue, as well as in small upscale boutiques.

### III.    APPLICANT'S SERVICES AS INVESTMENT BANKING ADVISORS FOR THE DEBTOR AND DEBTOR IN POSSESSION DURING THE FIRST INTERIM PERIOD

15.    During the First Interim Period, Atlas provided significant work for R&R.  To date, Atlas has been in contact with approximately 70 unique parties potentially interested in acquiring all or a stake of R&R or refinancing R&R.  Atlas has sent and negotiated NDA agreements with these parties and Atlas created a Confidential Information Memorandum outlining the opportunity for these interested parties.

16.    With the parties that have wished to pursue/continue to pursue the opportunity further, Atlas has coordinated, organized, compiled and answered due diligence items.  Additionally, Atlas has had extensive meetings and negotiations with various potential buyers/creditors.  Atlas has also analyzed offers and term sheets to help determine what would be best for the company moving forward in addition to analyzing various transaction structures that would be most advantageous for all parties involved.

## IV.  COMPENSATION SOUGHT

17.     By this Application, Applicant seeks an allowance of interim compensation in the amount of $64,000[2], representing 80 percent of the fees incurred during the First Interim Period and reimbursement of reasonable and necessary expenses in the sum of $3,113.57 for Applicant's services during the First Interim Period, pursuant to §§330 and 331 of the Bankruptcy Code.

18.     Applicant respectfully submits that the professional services rendered by it to the Debtors were necessary and of significant value to the Debtors and their estates as is more fully set forth above.

19.     Applicant has maintained contemporaneous records of the time expended for the professional services performed in connection with these Chapter 11 proceedings.  (A copy of Atlas' time records is annexed hereto as **Exhibit "B".**)

20.     Applicant submits that the division of time herein among the managing director and associates has been consistent with Applicant's overall goal of providing first quality investment banking advice at a reasonable cost.  During the First Interim Period, Applicant's members have devoted an aggregate of 539 hours to this case.  No hourly rate applies for the services rendered herein.

21.     In addition, during the First Interim Period, Applicant incurred expenses which are summarized on **Exhibit "C"** hereto.   All of the disbursements were necessarily incurred and reasonable in amount.   If the court should so require, the documentation substantiating these expenses will be made available.   It should also be

---

[2] The $64,000 includes $10,000 of a $20,000 retainer that Atlas received from R&R pre-petition, which $10,000 is being held by Atlas pursuant to the Atlas Retention Order.

noted that all disbursements, including, but not limited to, photocopying and facsimiles conform with the limitations as provided in the Fee Guidelines.

22. A certification as required by the Fee Guidelines is attached hereto as **Exhibit "D"**.

23. This Application, together with all exhibits hereto, will be filed with the Court and served upon the Office of the U.S. Trustee, the Debtors and counsel to the Committee.

**WHEREFORE,** Applicant respectfully requests that it be awarded (a) a first interim fee in the amount of $64,000 (which includes $10,000 of unused retainer being held by Atlas), together with reimbursement of expenses and disbursements in the amount of $3,117.57, and (b) such other and further relief as this court may deem just and proper.

Dated: New York, New York
     August _31_, 2010

               ATLAS STRATEGIC ADVISORS, LLC
               Investment Banking Advisors for
               Rock & Republic
               Enterprises, Inc. and Triple R, Inc.
               Debtors and Debtors-in-Possession

          By: _____
               Julian Steinberg
               140 East 45th Street
               New York, NY 10017
               (212) 471 4100

**EXHIBIT "A"**

TODTMAN, NACHAMIE, SPIZZ & JOHNS, P.C.
Proposed Counsel to **Rock & Republic Enterprises, Inc.**
and **Triple R, Inc.**
Debtors and Debtors-in-Possession
425 Park Avenue
New York, NY 10022
(212) 754-9400
Alex Spizz, Esq.
Arthur Goldstein, Esq.
Jill Makower, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - --x
In re:                                    :        Chapter 11

ROCK & REPUBLIC ENTERPRISES, INC.,        :        Case No. 10-11728 (AJG)
et al.,                                            (Jointly Administered)
                              Debtors.    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

### ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF ATLAS STRATEGIC ADVISORS, LLC AS INVESTMENT BANKER AND FINANCIAL ADVISOR TO THE DEBTORS

Upon the application (the "Application") of Rock & Republic Enterprises, Inc. ("R&R") and Triple R, Inc. ("TR"), debtors and debtors in possession in these proceedings (collectively, the "Debtors"), pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rule 2014(a) and S.D.N.Y. Local Bankruptcy Rule 2014-1, seeking authorization for R&R to employ and retain Atlas Strategic Advisors, LLC ("Atlas") as its Investment Banker and Financial Advisor pursuant to the terms set forth in the engagement agreement dated March 26, 2010 (the "Engagement Agreement") between R&R and Atlas annexed to the Application as Exhibit "B", as modified herein; and

upon the Amended Affidavit of Julian Steinberg, Managing Director of Atlas, sworn to on April 26, 2010, filed in support of the Application (the "Amended Steinberg Aff."); and the Court being satisfied, based on the representations made in the Application and the Amended Steinberg Aff., that Atlas is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and, as required by section 327(a) and referenced by section 328(c) of the Bankruptcy Code, neither holds nor represents any interest adverse to the Debtors or their estates; and upon consideration of the Affidavit of Geoffrey D. Lurie Pursuant To Local Bankruptcy Rule 1007-2 In Support of First-Day Motions and Applications; and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York dated July 10, 1984 (Ward, Acting CJ); and consideration of the Application and the requested relief being a core proceeding the Bankruptcy Court can determine pursuant to 28 U.S.C. §157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§1408 and 1409; and due and proper notice of the Application having been provided to (a) the Office of the United States Trustee for the Southern District of New York, (b) Arent Fox, LLP, proposed counsel to the Official Committee of Unsecured Creditors; (c) The CIT Group/Commercial Services, Inc.; (d) RKF, LLC and (e) all parties that have filed requests for service of papers; and it appearing that no other or further notice need be provided; and the relief requested in the Application, as modified herein, being in the best interests of the Debtors and their estates and creditors; and the Court having reviewed the Application; and the Court having determined that the legal and factual

bases set forth in the Application establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is

**ORDERED** that the Application is granted as set forth herein; and it is further

**ORDERED** that R&R is hereby authorized to employ and retain Atlas as its Investment Banker and Financial Advisor in the Debtors' Chapter 11 Cases *nunc pro tunc* to the Petition Date[1] on the terms and conditions set forth in the amended engagement agreement dated April 28, 2010 (the "Amended Engagement Agreement") attached to this Order, as modified by this Order, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014; and it is further

**ORDERED**, that the Amended Engagement Agreement is hereby modified as follows:

> (a)    section 2 of the Amended Engagement Agreement shall not entitle Atlas to be reimbursed for counsel fees except with respect to indemnification, if any, and any other expenses to the extent that they do not comply with the U.S. Trustee's guidelines;
>
> (b)    section 2 of the Amended Engagement Agreement is hereby modified to provide that there shall be no minimum success fee based on a Capital Raise and no minimum success fee based on a Divestiture;
>
> (c)    notwithstanding section 4 of the Amended Engagement Agreement, no affiliates of Atlas will be entitled to indemnification under the Amended Engagement Agreement;
>
> (d)    section 5 of the Amended Engagement Agreement shall not be effective or enforceable; and
>
> (e)    notwithstanding section 7 of the Amended Engagement Agreement, Atlas shall not be permitted to unilaterally terminate the Amended Engagement Agreement prior to the effective date of a plan of

---

[1] Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to it in the Application.

reorganization in these Chapter 11 cases, and no termination of the Amended Engagement Agreement by Atlas shall be permitted at any time without prior order of the Bankruptcy Court;

and it is further

ORDERED, that Atlas shall provide the following services to R&R as set forth in

the Amended Engagement Agreement:

(i) Assist in conducting a strategic review of potential partner

(ii) Perform financial analyses of R&R

(iii) Identify Partner(s) both strategic and financial potentially interested in investing in R&R or re-financing existing indebtedness

(iv) Prepare materials describing the business, operations, financial conditions and prospects of R&R for use in presentations to prospective lenders or investors

(v) Source, contact and initiate dialogue with prospective Partner(s) using Atlas extensive industry contacts

(vi) Assist in the coordination of any due diligence process initiated by prospective Partner(s) interested in lending to or investing in R&R

(vii) Lead or participate in negotiations with any potential lender or investor in R&R

(viii) Assist in the determination of the range of values for R&R on a going concern basis

(ix) Provide testimony, as necessary, with respect to matters on which Atlas has been engaged to advise R&R in any proceeding before the Bankruptcy Court;

and it is further

ORDERED that Atlas shall be compensated for its services and reimbursed for

any related expenses in accordance with applicable provisions of the Bankruptcy Code

(including sections 328, 330 and 331 thereof), the Bankruptcy Rules, the Local

Bankruptcy Rules and any other applicable orders or procedures of this Court, including

any order of this Court establishing procedures for interim monthly compensation and

reimbursement of expenses for professionals. Subject to the foregoing, Atlas shall file applications for interim and final allowance of compensation and reimbursement of expenses and all expenses shall comply with the applicable United States Trustee guidelines; and it is further

ORDERED, that (i) Atlas' Success Fee(s) as defined in the Amended Engagement Agreement and as modified by this Order (collectively, the "Success Fees") in these Chapter 11 cases (consisting of (a) the lesser of 5% or $500,000 of the Transaction Value up to $20,000,000 or (b) 2.5% of the Transaction Value if above $20,000,000 (other than to the extent that the Debtors obtain a revolving credit facility that qualifies as a Capital Raise, the Success Fee is 2.5% of the amount of the Facility) upon the Closing of a Capital Raise Transaction,), and (ii) Atlas' monthly retainer fee of $20,000 (the "Monthly Fee") in these Chapter 11 cases, which is creditable to any subsequent Success Fee, are hereby approved pursuant to section 328(a) of the Bankruptcy Code. Except as set forth in the next decretal paragraph, compensation sought by Atlas shall not hereafter be subject to challenge or review except under the standards of review under Bankruptcy Code §328(a); and it is further

ORDERED that (i) only the United States Trustee retains the right to object to Atlas' interim and final fee applications (including any Success Fee, Monthly Fee and expense reimbursement) in respect of fees and expenses on all grounds, including, but not limited to, the reasonableness standards provided for in Bankruptcy Code §330; and (ii) the Official Committee of Unsecured Creditors (the "Committee") retains the right to object to Atlas' expense reimbursement on all grounds, including, but not limited to, the reasonableness standard provided for in Bankruptcy Code §330; and it is further

**ORDERED**, that any and all fees and expenses will be paid to Atlas only upon specific approval from the Court or in accordance with any other procedures for the compensation of professionals established by the Court in these cases; provided, however, that notwithstanding anything to the contrary in the Bankruptcy Code, Bankruptcy Rules, Local Bankruptcy Rules or any order of this Court, or any guidelines regarding submission and approval of fee applications, Atlas shall only be required to maintain contemporaneous summary time records for services rendered in half hourly increments and shall not be required to file a schedule of rates and shall not be required to maintain time on a "project category" basis; and it is further

**ORDERED** that any fees or expenses paid to Atlas but disapproved by this Court will be promptly returned by Atlas to R&R's estate; and it is further

**ORDERED**, that the unapplied portion of the initial $20,000 retainer shall constitute a general security retainer for post-petition services and expenses, and shall be held by Atlas subject to further order of the Court. Upon an Order of this Court approving an interim or final fee application, Atlas shall apply the retainer against its then-unpaid fees and expenses in respect of Atlas' fee applications filed and approved in accordance with the applicable provisions of the Bankruptcy Code; and it is further

**ORDERED** that to the extent that there may be any inconsistency between the terms of the Amended Engagement Agreement and this Order, the terms of this Order shall govern; and it is further

**ORDERED**, that this Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order; and it is further

**ORDERED** that all requests by Atlas for the payment of indemnification as set forth in the Amended Engagement Agreement shall be made by means of an application to the Court and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Amended Engagement Agreement and is reasonable under the circumstances of the litigation or settlement in respect of which indemnity is sought, provided, however, that in no event shall Atlas be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty, gross negligence or willful misconduct; and it is further

**ORDERED** that in no event shall Atlas be Indemnified if the Debtors or a representative of the estates, asserts a claim for, and a court determines by final order that such claim arose out of Atlas' own bad-faith, self-dealing, breach of fiduciary duty, gross negligence, or willful misconduct; and it is further

**ORDERED** that in the event that Atlas seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Amended Engagement Agreement, the invoices and supporting time records from such attorneys shall be included in Atlas' own applications, both interim and final, and such invoices and time records shall be subject to the United States Trustee's Guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court pursuant to sections 330 and 331 of the Bankruptcy Code without regard to whether such attorney[s] [has/have] been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy Section 330(a)(3)(C) of the Bankruptcy Code; and it is further

**ORDERED** that to the extent that there may be any inconsistency between the terms of the Amended Engagement Agreement, the Application and this Order, the terms of this Order shall govern.

Dated: New York, New York
      May 21, 2010

**s/Arthur J. Gonzalez**
HON. ARTHUR J. GONZALEZ
CHIEF UNITED STATES BANKRUPTCY JUDGE

April 28th, 2010

Michael Ball
Rock & Republic Enterprises, Inc.
3525 Eastham Drive
Culver City, CA 90232

Dear Michael:

We are pleased to confirm the arrangements under which Rock & Republic Enterprises, Inc. ("Rock & Republic" or the "Company") has chosen to engage Atlas Strategic Advisors, LLC ("Atlas") in connection with a potential Transaction (as defined below).

## Section 1.  Scope of Engagement.

Capital Raise. As used herein, the term "Capital Raise" means one or a series of transactions in which the company raises, issues or sells (from parties other than current shareholders of the Company (the "Shareholders"), or affiliates of the Shareholders) any:

1. secured or unsecured funded debt (including, without limitation, any asset-backed debt, convertible debt, or debtor-in-possession financing in connection with a Bankruptcy Case).  For the avoidance of doubt, a Capital Raise shall not include the CIT DIP factoring facility or extensions thereof, including a replacement exit facility, debtor-in-possession financing provided by CIT and/or RKF or any replacement exit facility or any other factoring facility obtained in connection with the Bankruptcy Case; the first $15MM of new financing or extension of the prepetition Term Loan from RKF including any replacement exit facility; and a swap of current debt to equity; and

2. equity interests (including, without limitation, preferred stock or common stock) or equity-linked securities.

3. sale of assets of or equity securities of a controlling interest or the entire Company to a third party (excluding the Shareholders, or affiliates of the Shareholders).  As used herein, the term "Sale" means

1

a. any merger, consolidation or other business combination pursuant to which the business of the Company is combined with that of person, group of persons, partnership, corporation or other entity (including, without limitation, a secured creditor acquiring such assets through a credit bid) (an "Acquiror"); or

b. the acquisition by an Acquiror, directly or indirectly, of assets, properties or businesses of the Company, taken as a whole, by way of a direct or indirect purchase, exchange, joint venture or other means, including under section 363 of the Bankruptcy Code (including, without limitation, a secured creditor acquiring such assets though a credit bid or RKF or CIT converting its debt into equity and excluding, for the avoidance of doubt, the Company's sale of assets in the ordinary course of its business)  For the avoidance of doubt, a Sale shall not include the conversion of unsecured debt into equity.

c. A Sale shall not include a liquidation of the Debtors' assets in a Chapter 7, a foreclosure on any assets by a secured creditor, turning over of any receivables to CIT pursuant to the CIT DIP factoring facility or extensions or replacements therof.

For purposes of this agreement, "Transaction" means a Capital Raise whether in one or a series of transactions.

Task

(i)   Assist in conducting a strategic review of potential partner

(ii)  Perform financial analyses of the Company

(iii) Identify Partner(s) both strategic and financial potentially interested in investing in the Company or re-financing existing indebtedness

(iv)  Prepare materials describing the business, operations, financial conditions and prospects of the Company for use in presentations to prospective lenders or investors

(v)   Source, contact and initiate dialogue with prospective Partner(s) using Atlas extensive industry contacts

(vi)   Assist in the coordination of any due diligence process initiated by prospective Partner(s) interested in lending to or investing in the Company

(vii)  Lead or participate in negotiations with any potential lender or investor in the Company

(viii) Assist in the determination of the range of values for the Company on a going concern basis;

(ix)   Provide testimony, as necessary, with respect to matters on which we have been engaged to advise you in any proceeding before the Bankruptcy Court.

**Section 2. Fees and Expenses.**

(i)   A monthly retainer fee of $20,000 (twenty thousand dollars) creditable to any subsequent Success Fee (as defined herein).

(ii)  A success fee ("Success Fees"), to be paid at the closing of a Capital Raise Transaction, to be determined as follows:

| Tranche of Transaction Value | Success Fee Percentage of Transaction Value |
|---|---|
| Up to $20,000,000 | The lesser of 5% or $500,0000 |
| Above $20,000,000 | 2.50% |

a. For the avoidance of doubt, a Capital Raise of:

i.   $15,000,000 (fifteen million dollars) would entitle Atlas to a Success Fee of $500,000 (five hundred thousand dollars).

ii.  $25,000,000 (twenty five million dollars) would entitle Atlas to a Success Fee of $625,000 (six hundred twenty fife thousand dollars).

b. Notwithstanding the foregoing, to the extent the Debtors obtain a revolving credit facility that qualifies as a Capital Raise, the Success Fee will be 2.5% of the amount of the Facility.

    c. "Transaction Value" shall mean equity value, calculated as aggregate cash proceeds plus, without duplication, the value of any securities, notes, or other assets paid to the sellers received by the sellers, grossed up by the percentage ownership of the sellers, plus the amount of any debt (including all bank debt) assumed, redeemed or remaining outstanding in connection with any Transaction minus any cash left at the Company at the closing.

In addition to any fee that may be payable to Atlas hereunder and regardless of whether any Transaction is proposed or consummated, the Company will reimburse Atlas, on a monthly basis, for all reasonable and documented out-of-pocket expenses, including but not limited to travel, lodging, copying, document production and research expenses incurred in performing our services hereunder.

    (IV)  We agree to a 15% hold back of any Success Fee due and payable hereunder until confirmation of a plan of reorganization, dismissal of the debtors' Chapter 11 case or such time as the debtors and the committee mutually agree that our services are no longer required.

### Section 3. Confidentiality.

Atlas agrees to keep all information received from the Company confidential except information that (i) is or becomes generally available to the public (other than as a result of a disclosure by Atlas in violation of this letter), (ii), was available to Atlas on a non-confidential basis prior to its disclosure by the Company , (iii) becomes available to Atlas on a non-confidential basis from a person other than the Company who is not known by Atlas to be otherwise bound by a confidentiality agreement with the Company , or is not known by Atlas to be otherwise prohibited from transmitting the information to Atlas, (iv) the Company agrees may be disclosed or (v) Atlas is requested pursuant to, or required by, law, regulation, legal process or regulatory authority to disclose. Notwithstanding the preceding, Atlas may disclose any such confidential information to any of its advisors, provided that any such person or entity to whom such information is disclosed shall, as appropriate, have been informed by the provisions of this section and have agreed to be bound by its terms. The obligations of Atlas under the immediately preceding sentence shall terminate one year from the earlier of (a) the first anniversary of this letter and (b) the termination of Atlas' engagement hereunder. In the event that Atlas is requested pursuant to, or required by, applicable law or regulation or by legal process to disclose any information, Atlas will provide the Company with

prompt notice of such request(s) to enable the Company to seek an appropriate protective order.

### Section 4. Indemnification.

The Company agrees to indemnify Atlas and its affiliates and their respective members, directors, officer, employees, agents and controlling persons (Atlas and each such person being an "Indemnified Party") from and against any and all losses, claims, damages, expenses and liabilities (or actions in respect thereof, including, without limitation, shareholder and derivative actions and arbitration proceedings), to which such Indemnified Party may become subject under any applicable federal or state law, or otherwise, and related to or otherwise arising out of any Transaction contemplated by this letter agreement or engagement of Atlas pursuant to, and the performance by Atlas of the services contemplated by, this letter agreement and will reimburse any Indemnified Party for all expenses (including reasonable counsel fees and expenses) incurred in connection with the investigation of, preparation for or defense of any pending or threatened claim or any action or proceeding arising therefrom, whether or not such Indemnified Party is a party and whether or not such claim, action or proceeding is initiated or brought by or on behalf of the Company. The Company will not be liable under the foregoing indemnification provision for any amounts paid in any settlement effected without its prior written consent, or to the extent that any loss, claim, damage, liability or expense is found in a final judgment by a court to have resulted from the bad faith or gross negligence of Atlas or the other Indemnified Party seeking indemnification. The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or its security holders or creditors related to or arising out of the engagement of Atlas pursuant to, or the performance by Atlas of the services contemplated by, this letter agreement except to the extent that any loss, claim, damage or liability is found in a final judgment by a court have resulted from the bad faith or gross negligence of Atlas or the other Indemnified Party seeking indemnification.

Promptly after receipt by Atlas of notice of any claim or the commencement of any action or proceeding with respect to which an Indemnified Party may be entitled to indemnity hereunder, Atlas will notify the Company in writing of such claim or the commencement of such action or proceeding. The Company will assume the defense of such action or proceeding, will employ counsel satisfactory to Atlas, and will pay the fees and expenses of such counsel. In any action or proceeding the defense of which the Company assumes, each Indemnified Party will have the right to participate in such litigation and to

retain its own counsel at such Indemnified Party's own expense, provided however that an Indemnified Party will be entitled to employ counsel separate from counsel for the Company and from any other party in such action and the Company will pay the fees and expenses of such counsel if the Indemnified Party reasonably determines that a conflict of interest exists which makes representation by counsel chosen by the Company not advisable.

The Company agrees that if it enters into a settlement or compromise or consents to the entry of a judgment in any pending or threatened claim, action or proceeding in respect of which indemnification could be sought under the indemnification provision of the letter, the Company will not assert, declare, claim, stipulate or imply that Atlas or any other Indemnified Party was responsible for or liable with respect to such claim, action or proceeding, notwithstanding the fact that the Company has agreed to indemnify Atlas and each other Indemnified Party therefore or with respect thereto.

If the foregoing indemnification is unavailable or insufficient to hold an Indemnified Party harmless in respect of any losses, claims, damages or liabilities referred to therein then, in lieu of indemnifying such Indemnified Party hereunder, the Company shall contribute to the amount paid or payable by such Indemnified Person as a result of such losses, claims, damages or liabilities (and expenses relating thereto) in such proportion as is appropriate to reflect the relative benefits to the Company, on the one hand, and Atlas, on the other hand, of the Transaction (whether or not the Transaction is consummated) and also the relative fault of each of the Company and Atlas, as well as any other relevant equitable considerations.

Atlas' rights under this Section 4 will survive any termination of this Agreement.

Section 5. Certain Acknowledgements.

The Company acknowledges that Atlas is an independent contractor, that the obligations and responsibilities of Atlas to the Company are limited to those specifically set forth herein, and that Atlas by entering into this agreement and satisfying its obligations hereunder, does not assume any fiduciary duties with respect to the Company, its Board of Directors, its management, its employees, its partners or its shareholders. All decisions made with respect to a Transaction, or any financings or restructurings related thereto shall be those of the Board of Directors or management of the Company, as the case may be. Any advice or opinions provided by Atlas may not be disclosed or referred to publicly without the prior written consent of Atlas.

### Section 6. Information.

The Company recognizes and confirms that in advising the Company in completing its engagement hereunder, Atlas will be using and relying on data, material and other information furnished to Atlas by the Company. It is understood that in performing under this engagement Atlas may rely upon any information so supplied without independent verification and that Atlas shall not have any responsibility for such independent verification. As a condition to Atlas' obligation to provide services hereunder, the Company represents, warrants and covenants to Atlas that none of the information furnished to Atlas by the Company shall include any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading.

### Section 7. Termination of Engagement.

Either the Company or Atlas may terminate this agreement at any time, with or without cause, by giving written notice to the other party; provided, however, that Atlas will be entitled to:

  (i)   be reimbursed for any reimbursable expenses incurred in connection with its engagement hereunder as set forth above; and

  (ii)  receive the Success Fee or relevant portion of, in the event that, at any time prior to the expiration of twelve months after such termination, any such Transaction(s) is consummated; or the Company or any of their respective shareholders enters into an agreement during the term of this agreement or during such twelve month period which contemplates such a Transaction, and such Transaction is consummated thereafter.

### Section 8. Miscellaneous.

This agreement is governed by the laws of New York, without regard to conflicts of law principles, and will be binding upon and inure to the benefit of the Company and Atlas and their respective successors and assigns. The Company and Atlas agree to waive trial by jury in any action, proceeding or counterclaim brought by or on behalf of either party with respect to any matter whatsoever relating to or arising out of any actual or proposed Transaction or the engagement of or performance by Atlas hereunder. As used in this letter, the term "person" shall be broadly interpreted to include, without limitation, any corporation, company, partnership and individual. This

agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement. The Company and Atlas agree that this letter agreement constitutes the entire agreement between them with respect to the subject matter hereof and supersedes all prior understandings and agreements, and that it may be amended only when signed by both parties.

We are delighted to accept this engagement and look forward to working with you on this matter. Please confirm that the foregoing is in accordance with your understanding of our agreement by signing and returning to us a copy of this letter.

Very truly yours,

Atlas Strategic Advisors, LLC

By

Palden Namgyal

Senior Managing Director

Accepted and agreed to as of the date set forth above:

Rock & Republic Enterprises, Inc.

By

Name:

# EXHIBIT "B"

# ROCK & REPUBLIC ENTERPRISES, INC.

# INVESTMENT BANKING SERVICES FROM APRIL 1, 2010 THROUGH JULY 31, 2010

| Date | Description | Time | Team |
|---|---|---|---|
| 1-Apr-10 | Call with client, setup/organization of data room, reach out to potential buyers | 6 | JS, NE |
| 2-Apr-10 | Meeting with potential buyer, work on Teaser and CIM | 16 | JS, NE |
| 5-Apr-10 | Reach out to potential buyers, work on Teaser and CIM | 8 | JS, NE |
| 6-Apr-10 | Meeting with potential buyer, work on Teaser and CIM | 16 | JS, NE |
| 7-Apr-10 | Reach out to potential buyers, work on CIM, update with client | 10 | JS, NE |
| 8-Apr-10 | work on CIM, negotiation of retention papers | 14 | JS, NE |
| 9-Apr-10 | Reach out to potential buyer, work on CIM | 8 | JS, NE |
| 10-Apr-10 | Reach out to potential buyers | 1 | JS, NE |
| 11-Apr-10 | Work on engagement letter | 1 | JS, NE |
| 12-Apr-10 | Reach out to potential buyer, work on CIM | 12 | JS, NE |
| 13-Apr-10 | Reach out to potential buyer, work on CIM | 6 | JS, NE |
| 14-Apr-10 | Meetings in LA, work on CIM | 14 | JS, NE |
| 15-Apr-10 | Meetings in LA, work on CIM | 15 | JS, NE |
| 16-Apr-10 | Reach out to potential buyer, work on CIM | 8 | JS, NE |
| 18-Apr-10 | Update with client, Call with FTI, work on CIM | 5 | JS, NE |
| 19-Apr-10 | Reach out to potential buyers | 6 | JS, NE |
| 20-Apr-10 | Reach out to potential buyer, work on CIM | 8 | JS, NE |
| 21-Apr-10 | Reach out to potential buyer, work on CIM, call with FTI | 16 | JS, NE |
| 22-Apr-10 | Reach out to potential buyer, meeting with potential buyer, work on CIM | 12 | JS, NE |
| 23-Apr-10 | Discussion with potential buyers, Printing, preparation and sending of CIM | 10 | JS, NE |
| 26-Apr-10 | Discussion/reach out with potential buyers, Printing, preparation and sending of CIM | 8 | JS, NE |
| 27-Apr-10 | Discussions/reach out with potential buyers, Printing, preparation and sending of CIM | 10 | JS, NE |
| 28-Apr-10 | Discussions/reach out with potential buyers, preparation of materials sent to creditors committee | 8 | JS, NE |
| 29-Apr-10 | Update with client, call with FTI, Discussions/reach out with potential buyers | 7 | JS, NE |
| 30-Apr-10 | Negotiation of engagement letter, work on cash flow model | 6 | JS, NE |
| 1-May-10 | Call with client regarding next steps | 3 | JS, NE |
| 3-May-10 | Update to CIT regarding selling process, Discussion with FTI regarding professional fees, modeling of cash flow forecast for company, calls/emails with potential buyers | 10 | JS, NE |
| 4-May-10 | Calls/emails with potential buyers, modeling of cash flow forecast for company, call with CIT | 8 | JS, NE |
| 5-May-10 | Response to diligence requests, calls with potential buyers, calls/emails with company, response to FTI, preparation of materials for meeting with creditors committee | 10 | JS, NE |
| 6-May-10 | Meeting with creditors committee, interaction with company, calls/emails with potential buyers | 16 | JS, NE |
| 7-May-10 | Calls/emails with potential buyers, preparation of bidding materials for potential buyers, fielding of bids from potential buyers, analysis of bids, response to diligence questions, response to questions from FTI | 10 | JS, NE |
| 8-May-10 | Review/markup of term-sheets and bid guidelines | 5 | JS, NE |
| 9-May-10 | Review of term sheets with client | 1 | JS, NE |
| 10-May-10 | Calls/emails with potential buyers, negotiations with potential buyer, update call with client, emails with FTI | 10 | JS, NE |
| 11-May-10 | Negotiations with potential buyers, term-sheet revisions, update call with company, analysis of royalty revenue | 8 | JS, NE |
| 12-May-10 | Meetings with potential buyers, analysis of term-sheets | 10 | JS, NE |
| 13-May-10 | Revisions to potential buyers' term sheet, calls/emails with potential buyers | 2 | JS, NE |
| 14-May-10 | Negotiations with potential buyer | 5 | JS, NE |

259292 v2

| | | | |
|---|---|---|---|
| 15-May-10 | Negotiations with potential buyer | 2 | JS, NE |
| 16-May-10 | Negotiations with potential buyer | 3 | JS, NE |
| 17-May-10 | Evaluation of Offers, term sheet revisions, update with client | 12 | JS, NE |
| 18-May-10 | Revisions to term sheet, update with client | 12 | JS, NE |
| 19-May-10 | Evaluation of capital structures and modeling of 2010 forecast, update with client, outreach to mezzanine funds | 14 | JS, NE |
| 20-May-10 | Negotiations with RKF, preparation of filings for transaction expenses, evaluation of capital structure and modelling of 2010 forecast, outreach to mezzanine funds | 10 | JS, NE |
| 21-May-10 | Outreach to mezzanine funds, evaluation of capital structure and modeling of 2010 forecast | 12 | JS, NE |
| 24-May-10 | Negotiation of NDA with Mezzanine funds, negotiation of LOI | 10 | JS, NE |
| 25-May-10 | Evaluation of capital structure and 2010 forecast, negotiation of NDA with Mezzanine funds, update with client | 14 | JS, NE |
| 26-May-10 | Negotiation of NDA with Mezzanine funds, meeting with mezzanine fund, meeting with potential buyer | 10 | JS, NE |
| 27-May-10 | Information request from mezzanine fund, work on budget | 6 | JS, NE |
| 28-May-10 | Completion of NDA with mezzanine funds | 3 | JS, NE |
| 1-Jun-10 | Discussion with Mezzanine funds, discussion with potential buyer | 4 | JS, NE |
| 2-Jun-10 | Discussion with Mezzanine funds, discussion with potential buyer | 3 | JS, NE |
| 5-Jun-10 | Calls with creditor committee advisors | 2 | JS |
| 7-Jun-10 | Work on 2010 projections, data gathering and exchange for creditor committee advisors | 6 | JS, NE |
| 9-Jun-10 | Contact with potential buyers, work on 2010 projections | 6 | JS, NE |
| 10-Jun-10 | Call with creditor committee | 3 | JS, NE |
| 14-Jun-10 | Valuation work, reach out to potential buyers | 8 | JS, NE |
| 16-Jun-10 | Call with creditor committee | 3 | JS, NE |
| 18-Jun-10 | Update call with client, contact with potential buyers | 10 | JS, NE |
| 21-Jun-10 | Call with potential buyers | 4 | JS, NE |
| 22-Jun-10 | Reach out to potential buyers, call with bidder | 6 | JS, NE |
| 23-Jun-10 | Internal update call | 2 | JS, NE |
| 24-Jun-10 | Calls with bidder | 5 | JS, NE |
| 27-Jun-10 | Termsheet negotiations | 4 | JS, NE |
| 29-Jun-10 | Meeting with potential buyer | 4 | JS, NE |
| 30-Jun-10 | Internal update call | 2 | JS, NE |
| 1-Jul-10 | Meeting with potential buyer, internal calls | 5 | JS, NE |
| 2-Jul-10 | Discussion with buyer intermediary, Due diligence discussion with potential buyer | 2 | JS, NE |
| 7-Jul-10 | Due diligence discussion with potential buyer | 3 | JS, NE |
| 8-Jul-10 | Update call with creditor committee advisors | 2 | JS, NE |
| 9-Jul-10 | Due diligence discussion with potential buyer | 1 | JS, NE |
| 12-Jul-10 | Call with potential buyers | 2 | JS, NE |
| 13-Jul-10 | Internal termsheet discussion | 3 | JS, NE |
| 16-Jul-10 | Call with potential buyers | 2 | JS, NE |
| 19-Jul-10 | Termsheet discussion | 2 | JS, NE |
| 21-Jul-10 | Update for creditors committee | 3 | JS, NE |
| 26-Jul-10 | Due diligence discussion with potential buyer | 2 | JS, NE |
| 27-Jul-10 | Call with potential buyers | 2 | JS, NE |
| 29-Jul-10 | Internal update call | 1 | JS, NE |

# EXHIBIT "C"

# ROCK & REPUBLIC ENTERPRISES, INC.

## EXPENSES FROM APRIL 1, 2010 THROUGH JULY 31, 2010

| Date | Team | Description | Amount |
|------|------|-------------|--------|
| 06-Apr-10 | JS | Breakfast for mtg w/ Morty Singer, Alex Spizz, Geoffrey Lurie, David Conn and Joe Smolinski | $62.16 |
| 06-Apr-10 | JS,NE | Office meal - Working late | $34.47 |
| 08-Apr-10 | JS,NE | Office meal - Working late | $35.00 |
| 12-Apr-10 | JS | Car service - office to home (working late) | $8.00 |
| 13-Apr-10 | JS | Travel Agency Fee | $30.00 |
| 13-Apr-10 | JS | Car service - office to home (working late) | $10.30 |
| 14-Apr-10 | JS | Continental Airlines - Newark/LA/Newark | $720.30 |
| 16-Apr-10 | JS | Travel Meal @ Hotel Marriott | $14.07 |
| 16-Apr-10 | JS | Hotel Marriott - Apr 14-15, 2010 | $349.42 |
| 27-Apr-10 | JS,NE | Office meal - Working late | $33.78 |
| 30-Apr-10 | JS | Car service from office to mtg with potential buyer | $10.60 |
| 30-Apr-10 | JS | Refreshements for meeting with potential buyer | $37.83 |
| 01-May-10 | JS,NE | Confidential Information Memo Sent to potential buyer | $44.75 |
| 01-May-10 | JS,NE | Confidential Information Memo Sent to potential buyer | $44.75 |
| 01-May-10 | JS,NE | Calls to potential buyers re: Info Memo | $8.45 |
| 03-May-10 | JS,NE | Confidential Information Memo Sent to potential buyer | $36.97 |
| 03-May-10 | JS,NE | Confidential Information Memo Sent to potential buyer | $17.99 |
| 03-May-10 | JS,NE | Confidential Information Memo Sent to potential buyer | $39.96 |
| 03-May-10 | JS,NE | Confidential Information Memo Sent to potential buyer | $37.29 |
| 03-May-10 | JS,NE | Confidential Information Memo Sent to potential buyer | $39.96 |
| 03-May-10 | JS,NE | Confidential Information Memo Sent to potential buyer | $35.44 |
| 03-May-10 | JS,NE | Confidential Information Memo Sent to potential buyer | $33.62 |
| 03-May-10 | JS,NE | Confidential Information Memo Sent to potential buyer | $36.45 |
| 03-May-10 | JS,NE | Confidential Information Memo Sent to potential buyer | $24.11 |
| 03-May-10 | JS,NE | Confidential Information Memo Sent to potential buyer | $41.21 |
| 03-May-10 | JS,NE | Confidential Information Memo Sent to potential buyer | $39.96 |
| 03-May-10 | JS,NE | Confidential Information Memo Sent to potential buyer | $15.01 |
| 03-May-10 | JS,NE | Confidential Information Memo Sent to potential buyer | $44.59 |
| 03-May-10 | JS,NE | Confidential Information Memo Sent to potential buyer | $36.45 |
| 03-May-10 | JS,NE | Confidential Information Memo Sent to potential buyer | $14.19 |
| 03-May-10 | JS,NE | Confidential Information Memo Sent to potential buyer | $14.19 |
| 03-May-10 | JS,NE | Confidential Information Memo Sent to potential buyer | $26.25 |
| 03-May-10 | JS,NE | Confidential Information Memo Sent to potential buyer | $23.57 |
| 03-May-10 | JS,NE | Confidential Information Memo Sent to potential buyer | $44.59 |
| 03-May-10 | JS,NE | Confidential Information Memo Sent to potential buyer | $14.19 |
| 03-May-10 | JS,NE | Calls to potential buyers re: Info Memo | $11.06 |
| 03-May-10 | JS | Taxi in NYC - working late | $6.21 |
| 04-May-10 | JS,NE | Evening meal - working late | $33.90 |
| 04-May-10 | JS | Taxi in NYC - conference call with potential buyer | $8.05 |
| 04-May-10 | JS | Taxi in NYC - working late | $5.60 |
| 05-May-10 | JS | Taxi in NYC - working late | $5.90 |
| 06-May-10 | JS | Taxi in NYC - working late | $8.40 |
| 06-May-10 | JS | Taxi in NYC - working late | $8.05 |
| 11-May-10 | JS | Taxi in NYC - working late | $8.70 |
| 12-May-10 | JS | Breakfast Mtg w/ J Seifer | $83.62 |
| 12-May-10 | JS | Taxi in NYC - working late | $18.02 |

| Date | Who | Description | Amount |
|---|---|---|---|
| 13-May-10 | JS | Taxi in NYC - working late | $7.60 |
| 13-May-10 | JS | Taxi in NYC - working late | $12.65 |
| 14-May-10 | JS | Taxi in NYC - working late | $5.40 |
| 17-May-10 | JS | Breakfast meeting with potential buyer | $99.92 |
| 17-May-10 | JS | Taxi in NYC - meeting to office | $6.00 |
| 17-May-10 | JS,NE | Evening meal - working late | $35.00 |
| 25-May-10 | JS,NE | Evening meal - working late | $28.04 |
| 26-May-10 | JS | Taxi in NYC - working late | $8.00 |
| 28-May-10 | JS | Taxi in NYC - working late | $7.60 |
| 28-May-10 | JS,NE | Follow-up calls to potential buyers re: Confidential Information Memo | $15.70 |
| 02-Jun-10 | JS,NE | Taxi from office to home - working late | $5.75 |
| 02-Jun-10 | JS,NE | Taxi from office to home - working late | $9.00 |
| 02-Jun-10 | JS,NE | Taxi from office to home - working late | $16.80 |
| 03-Jun-10 | JS,NE | Taxi from office to home - working late | $10.10 |
| 05-Jun-10 | JS,NE | Taxi from office to home - working on weekend | $9.80 |
| 06-Jun-10 | JS,NE | Taxi from office to home - working on weekend | $9.40 |
| 08-Jun-10 | JS,NE | Taxi from office to home - working late | $5.40 |
| 08-Jun-10 | JS,NE | Taxi from office to home - working late | $7.70 |
| 08-Jun-10 | JS,NE | Taxi from office to home - working late | $8.16 |
| 08-Jun-10 | JS,NE | Taxi from office to home - working late | $8.97 |
| 09-Jun-10 | JS,NE | Taxi from office to home - working late | $8.10 |
| 09-Jun-10 | JS,NE | Working dinner | $30.04 |
| 11-Jun-10 | JS,NE | Taxi from office to home - working late | $7.70 |
| 14-Jun-10 | JS,NE | Taxi from office to home - working late | $6.90 |
| 14-Jun-10 | JS,NE | Working late - cab home | $7.80 |
| 14-Jun-10 | JS,NE | Working late - cab home | $7.80 |
| 14-Jun-10 | JS,NE | Working late - cab home | $9.60 |
| 14-Jun-10 | JS,NE | Working late - cab home | $10.81 |
| 15-Jun-10 | JS,NE | Working late - cab home | $10.20 |
| 16-Jun-10 | JS,NE | Lunch with potential buyer | $119.62 |
| 18-Jun-10 | JS,NE | Working late - cab home | $8.51 |
| 24-Jun-10 | JS,NE | Working late - cab home | $13.75 |
| 30-Jun-10 | JS,NE | Taxi from office to resturant | $9.50 |
| 30-Jun-10 | JS,NE | Taxi from restaurant to home | $9.89 |
| 30-Jun-10 | JS | Dinner with potential buyer | $109.82 |
| 01-Jul-10 | JS | Car service on 7/01/10 | $11.40 |
| 01-Jul-10 | NE | Working late - office meal | $31.25 |
| 13-Jul-10 | JS | Lunch w/ Nick and Morty Signer on 7/13/10 | $60.84 |
| 15-Jul-10 | JS | Car service on 7/15/10 | $7.60 |
| 15-Jul-10 | JS | Car service on 7/15/10 | $11.40 |
| 27-Jul-10 | JS | Car service on 7/27/10 | $11.27 |
| 27-Jul-10 | JS | Car service on 7/27/10 | $9.80 |
| 28-Jul-10 | JS | Car service on 7/28/10 | $7.40 |
| 28-Jul-10 | JS | Car service on 7/28/10 | $8.00 |
| 28-Jul-10 | JS | Car service on 7/28/10 | $10.20 |

Atlas Strategic Advisors, LLC
Investment Banker and Financial Advisor for
Rock & Republic Enterprises, Inc. and
 Triple R, Inc.
Debtors and Debtors-in-Possession
140 East 45th Street, Flr 23
New York, NY 10017
Tel:  212-471-4100
Palden Namgyal, Senior Managing Director, Co-Founder
Roberta Mazzariol, Managing Director, Co-Founder
Julian Steinberg, Managing Director
Nicholas Enthoven, Associate

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| In re: | Chapter 11 |
| ROCK & REPUBLIC ENTERPRISES, INC., et al., | Case No. 10-11728 (AJG) (Jointly Administered) |
| Debtors. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**CERTIFICATION PURSUANT TO GUIDELINES FOR FEES AND DISBURSEMENTS FOR PROFESSIONALS IN SOUTHERN DISTRICT OF NEW YORK BANKRUPTCY CASES IN SUPPORT OF FIRST INTERIM FEE APPLICATION OF HERRICK, FEINSTEIN LLP**

Julian Steinberg, certifies as follows:

1.     I am a member of Atlas Strategic Advisors, LLC ("Applicant" or "Atlas") and I make this certification in support of the application (the "Application") of Atlas for its First Interim Fee award of compensation for services rendered and reimbursement of expenses in connection with representing Rock & Republic Enterprises, Inc. and Triple R, Inc. (collectively, the "Debtors") pursuant to the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases (the "Amended Guidelines") and the Guidelines For Reviewing Applications For

Compensation and Reimbursements of Expenses Filed Under 11 U.S.C. § 330 promulgated by the Executive Office of the United States Trustee (the "UST Guidelines"). I am a professional designated by Atlas with the responsibility for compliance with the Amended Guidelines and the UST Guidelines.

2.     I have read the Application and to the best of my knowledge, information and belief, formed after reasonable inquiry, the Application complies with the requirements set forth in the Amended Guidelines and the UST Guidelines. To the best of my knowledge, information and belief formed after reasonable inquiry, the fees and disbursements sought fall within the Amended Guidelines and the UST Guidelines, as set forth in the Application and in the exhibits annexed thereto. The fees and disbursements sought by Applicant are billed at rates and in accordance with the practices customarily employed by Applicant and generally accepted by Applicant's clients.

3.     In making disbursements and incurring expenses on behalf of the Debtors, Applicant has sought only to obtain reimbursement and not to make a profit on such disbursements. To the best of my knowledge, in charging for a particular service, Atlas does not include in the amount of reimbursement amortization of the cost of any investment, equipment or capital outlay. With respect to reimbursement for services which have been purchased or contracted from a third party, Atlas requests only the amount billed to it by the third party vendor and paid by or incurred by Applicant to such vendor. A summary of Applicant's disbursements and expenses incurred during the First Interim Period has been attached as **Exhibit "C"** to the Application and the

receipts and miscellaneous back-up documentation will be made available upon request.

4.  The Debtors, the U.S. Trustee and Committee counsel have been provided with statements of fees and disbursements accrued during the First Interim Period.

Dated: New York, New York
        August 30, 2010


_____
Julian Steinberg