TODTMAN, NACHAMIE, SPIZZ & JOHNS, P.C.
Attorneys for **Rock & Republic Enterprises, Inc.**
and **Triple R, Inc.**
Debtors and Debtors-in-Possession
425 Park Avenue
New York, NY 10022
(212) 754-9400
Alex Spizz, Esq.
Arthur Goldstein, Esq.
Jill Makower, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - --x

| | |
|---|---|
| In re: | Chapter 11 |
| ROCK & REPUBLIC ENTERPRISES, INC., <u>et al.,</u> | Case No. 10-11728 (AJG) (Jointly Administered) |
| Debtors. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - --x

**DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 9019(a) AND 11 U.S.C. § 105(a) FOR APPROVAL OF STIPULATION BY AND BETWEEN ROCK & REPUBLIC ENTERPRISES, INC. AND RICHARD I. KORAL, INC. D/B/A JESSICA'S, SETTLING ALL CLAIMS RELATING TO DISTRIBUTION AGREEMENT**

**TO: THE HONORABLE ARTHUR J. GONZALEZ
CHIEF UNITED STATES BANKRUPTCY JUDGE:**

Rock & Republic Enterprises, Inc. ("R&R") and Triple R, Inc. ("TR"), debtors and debtors in possession herein (collectively, the "Debtors"), submit this motion (the "Motion") for approval, pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), of a Stipulation dated September 17, 2010 (the "Stipulation") by and between R&R and Richard I. Koral, Inc. d/b/a Jessica's ("Koral"), annexed hereto as **Exhibit "A"**, and respectfully represent:

## JURISDICTION

1.      This Court has subject matter jurisdiction to consider and determine this Motion pursuant to 28 U.S.C. §1334. This is a core proceeding pursuant to 28 U.S.C. §157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

## FACTUAL BACKGROUND

### A.      General

2.      On April 1, 2010 (the "Filing Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.

3.      The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

4.      The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On April 13, 2010, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee"). The Committee retained Arent Fox LLP as its counsel.

6.      Additional information regarding the Debtors' business, capital structure, and the circumstances leading to these chapter 11 cases is contained in the Declaration of Geoffrey Lurie, the Debtors' Chief Restructuring Officer, Pursuant to Local Bankruptcy Rule 1007-2 in Support of First Day Motions (Docket No. 3).

7.      The Debtors obtained a Bar Date of July 30, 2010 by which most creditors were required to file their proofs of claim against the Debtors.

8.      By order dated July 21, 2010, the Court extended through September 28,

2010 and through November 27, 2010, the Debtors' exclusive periods to file a plan and to solicit acceptances thereof, respectively.

9.     On September 14, 2010, the Debtors filed a motion to further extend their exclusive periods by an additional 45 days. A hearing on that motion has been scheduled for September 28, 2010 at 9:30 A.M.

10.     The Debtors have been working hard toward formulating a plan of reorganization that the Debtors expect will pay unsecured creditors 100% of their allowed claims. The Debtors have worked, and will continue to work, constructively with the Committee as well as other parties in interest. The vital components underlying a chapter 11 plan are being developed as rapidly as possible. On September 16, 2010, the Debtors entered into a definitive letter of intent with a potential purchaser of assets of the Debtors.

## B.     R&R's Original Distribution Agreement With Koral

11.     Pursuant to the prepetition Distribution Agreement dated as of September 1, 2008 (the "Original Agreement") with Koral, Koral became R&R's exclusive distributor in the United States of R&R's off-price merchandise (the "Articles").

12.     Koral is an affiliate of the Debtors' pre-petition lender, RKF LLC ("RKF"). Both Koral and RKF are owned by Richard I. Koral.

## C.     The Debtors' Motion To Reject The Original Agreement

13.     On or about April 9, 2010, the Debtors filed a motion (the "Rejection Motion"), seeking to reject the Original Agreement pursuant to Bankruptcy Code section 365(a). The Debtors contended in the Rejection Motion that after the Petition Date,

Koral breached the Original Agreement by refusing to pay invoices, by refusing to accept certain Articles, and by failing to make the minimum required inventory purchases. In addition, the Debtors asserted that R&R was in possession of approximately $6 million (at wholesale) of Articles that, upon rejection of the Original Agreement, R&R could sell through other sources more economically and expeditiously than it could under the Original Agreement with Koral.

14. Before there was a hearing on the Rejection Motion, R&R and Koral agreed to amend the Original Agreement, subject to the Court's approval.

## D. The Debtors' Motion To Amend The Original Agreement And To Assume The Amended Agreement

15. R&R and Koral amended the Original Agreement and executed the Amended and Restated Distribution Agreement dated April, 2010 (the "Amended Agreement"). The Amended Agreement was subject to Bankruptcy Court approval.

16. On or about May 11, 2010, the Debtors filed a motion (the "Assumption Motion") seeking authorization for R&R to enter into the Amended Agreement and to assume the Amended Agreement. In the Assumption Motion, the Debtors advised the Court that having R&R enter into and assume the Amended Agreement was far preferable to rejecting the Original Agreement, and that the relief requested therein represented a sound business judgment and was in the best interest of the Debtors' estates. The Debtors argued that the Amended Agreement would provide substantial

benefits to the Debtors without significant risks or costs.[1]

17.   The Court granted the Assumption Motion by order entered on May 26, 2010.

E.   **Recent Disputes Between The Debtors And Koral**

18.   In August 2010, R&R sent a letter dated August 25, 2010 (the "Termination Letter") to Koral stating that R&R was terminating the Amended Agreement with 60 days notice pursuant to section 7(b)(ii) of the Distributor's Standard Terms and Conditions (the "Standard Terms") of the Amended Agreement.

19.   Disputes arose between Koral and R&R regarding the respective rights and obligations of the parties under the Amended Agreement in light of the Termination Letter, and Koral advised R&R of Koral's position that R&R materially breached the Amended Agreement.

20.   R&R disputes Koral's position and contends that Koral breached the Amended Agreement by, among other things, failing to pay invoices when due.

21.   The Debtors' counsel and Koral's counsel have had discussions concerning the issues in dispute and, as part of those discussions, R&R and Koral have each determined that, subject to the Bankruptcy Court's approval, it is in the best

---

[1]  The Debtors indicated at that time that the benefits of the Amended Agreement included the following: (a) the Amended Agreement minimizes the downside of early termination by limiting R&R's exposure to damages for early termination to $200,000.00 per month for each month (or such pro rata period if applicable) for each month remaining after termination (but in no event later than December 31, 2010); (b) by extending the term from August 31, 2010 to December 31, 2010, and providing for a mutual release of certain claims, the Amended Agreement provides Debtors with continued distribution services from Koral at favorable prices, resolves certain disputes with Koral and reduces uncertainty for the Debtors; (c) the Debtors will have the benefits of the substantial revenues and cash flow from the sale of the Catch-Up Units and the Special Order Units to Koral; (d) the Amended Agreement reduces the period in which Koral must pay certain purchase orders from 60 to 30 days, increasing cash flow to R&R; and (e) the Amended Agreement expands the channels of distribution, enabling Koral to distribute to a wider array of retailers, which will benefit the Debtors and their estates.

interests of the parties to enter the Stipulation to resolve their disputes regarding the ongoing obligations of the parties under the Amended Agreement.

22.     The Committee and the Debtors' factor, CIT, have confirmed in writing that they have no objection to the Stipulation.

## THE SETTLEMENT

23.     The salient terms of the Stipulation are as follows:

- The Amended Agreement shall be terminated upon entry of an order approving the Stipulation (the "Termination Date").

- Koral will be deemed to have released any claims, including but not limited to any claims for damages, against R&R, its distributors, agents, employees, officers, directors, attorneys, advisors, successors and assigns arising under or relating to the Amended Distribution Agreement; provided however, Koral will retain all of its rights arising under the Stipulation.

- R&R will be deemed to have released any claims, including but not limited to any claims for damages, against Koral, its agents, employees, officers, directors, attorneys, advisors, successors and assigns arising under or relating to the Amended Distribution Agreement; provided however, R&R will retain all of its claims arising under the Stipulation.

- As to the matters released under sections 2 and 3 of the Stipulation, the parties shall waive all rights under the provisions of Section 1542 of the Civil Code of the State of California[2] and any similar rights in any state or territory or under any similar statute or regulation of the United States or any of its agencies.

- Koral will pay R&R, on or before September 20, 2010, the sum of $2,548,955 representing the remaining amounts due under the Amended Agreement subject to an agreed offset of $193,000, and

---

[2] Section 1542 of this California Civil Code reads as follows:

"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

other ordinary course reconciliations, with the net final payment to be $2,355,955.[3]

- Notwithstanding any of the provisions of the Amended Agreement, effective as of the date of the Stipulation, Koral will not be obligated to accept any further Articles from R&R beyond the Articles already in Koral's possession. All existing orders, shipments and the like are deemed irrevocably cancelled.

- Notwithstanding any of the provisions of the Amended Agreement, Koral will have the absolute right to distribute Articles to any customer through any channel of distribution, regardless of whether any such customers are identified in the Amended Agreement.

- Notwithstanding any of the provisions of the Amended Agreement, effective as of the date of the Stipulation through November 15, 2010, R&R will be prohibited from distributing its products (directly or indirectly) through the channels of distribution listed on Exhibit 1 to the Stipulation. After November 15, 2010, this provision shall have no further force or effect, and R&R shall not be prohibited from distributing its products (directly or indirectly) in any channel of distribution.

- Notwithstanding any of the provisions of the Amended Agreement, effective as of the date of the Stipulation, R&R will have the absolute right to distribute its products (directly or indirectly) through any channels of distribution except the channels of distribution listed on Exhibit 1 to the Stipulation.

- Except as otherwise provided, each party and its respective affiliates explicitly reserve the rights to assert, file, or amend any claims they may have against the other, and each party specifically reserves all rights and defenses regarding matters other than claims released and the rights reserved in respect of the Amended Agreement or the Original Agreement as specified in Sections 2 and 3 of the Stipulation.

24. The Debtors believe that the settlement is in the best interest of the Debtors' estates.

---

[3] Koral paid the $2,355,955 by wire transfer on September 20, 2010.

## REQUEST FOR RELIEF

## THE SETTLEMENT SHOULD BE APPROVED

25.     By this Motion, the Debtors seek entry of an order substantially in the form annexed hereto as **Exhibit "B"**, approving the Stipulation pursuant to Bankruptcy Code Section 105(a) and Bankruptcy Rule 9019(a).

26.     Bankruptcy Rule 9019(a) grants the bankruptcy court authority to approve settlement of legitimate disputes in bankruptcy cases. In re WorldCom, Inc., 347 B.R. 123, 136-137 (Bankr. S.D.N.Y. 2006) (AJG); In re Drexel Burnham Lambert Group, 140 B.R. 347, 349 (S.D.N.Y. 1992).

27.     Bankruptcy Rule 9019(a) provides, in pertinent part, that "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

28.     Bankruptcy Code Section 105(a) authorizes bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

29.     The decision to approve a settlement lies within the discretion of the bankruptcy court. Fischer v. Pereira (In re 47-49 Charles Street, Inc.), 209 B.R. 618 (S.D.N.Y. 1997); In re Prudential Lines, Inc., 170 B.R. 222, 246 (S.D.N.Y. 1994), citing In re Texaco, Inc., 84 B.R. 893 (Bankr. S.D.N.Y.), appeal dismissed, 92 B.R. 38 (S.D.N.Y. 1988); WorldCom, 347 B.R. at 136-137.

30.     Courts have developed standards to evaluate if a settlement is fair and equitable, and, to that end, courts in this Circuit have set forth factors for approval of settlements based on the original framework announced in Protective Comm. for Indep.

Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 88 S. Ct. 1157, 20 L. Ed. 2d 1 (1968). See Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC), 478 F.3d 452, 462 (2d Cir. N.Y. 2007)(citing TMT Trailer Ferry). See also 10 Collier on Bankruptcy P 9019.02 (15th ed. rev.) Those interrelated factors are: (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment; (3) "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement"; (4) whether other parties in interest support the settlement; (5) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement; (6) "the nature and breadth of releases to be obtained by officers and directors"; and (7) "the extent to which the settlement is the product of arm's length bargaining." Motorola, 478 F.3d at 462, citing WorldCom, 347 B.R. at 137 (Bankr. S.D.N.Y. 2006).

31.    In considering whether to approve a settlement, a bankruptcy court is required to review the reasonableness of the proposed settlement. Worldcom, 347 B.R. at 137; In re Drexel Burnham Lambert, 138 B.R. 723, 758 (Bankr. S.D.N.Y. 1992). The Court must make an informed judgment whether the settlement is fair and equitable and in the best interests of the estate; Worldcom, 347 B.R. at 137; Drexel Burnham Lambert, 134 B.R. at 496 (Bankr. S.D.N.Y. 1991).

32.    It is not necessary for the bankruptcy court to conduct a "mini trial" on the issue. Worldcom, 347 B.R. at 137; Drexel Burnham Lambert, 140 B.R. at 349. The

Court need only "canvass the issues" to determine if the "settlement falls below the lowest point in the range of reasonableness." In re Teltronics Serv., Inc., 762 F.2d 185, 189 (2d Cir. 1985); Worldcom, 347 B.R. at 137.

33. The bankruptcy court is not required to conduct an independent investigation in determining whether a settlement is reasonable; it is entitled to give weight to the informed opinion of the debtor and counsel that the settlement is fair and equitable. Prudential Lines, 170 B.R. at 247.

> It is not the court's responsibility to conduct a "mini-trial" on the merits in order to assess the reasonableness of the settlement. Rather, the court need only "canvas the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" In re W.T. Grant Co., 699 F.2d 599, 608 (2d Cir.) (quoting Newman v. Stein, 464 F.2d 689 (2d Cir.), cert. denied, 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed. 2d 488 (1972)), cert. denied, 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed. 2d 97 (1983).

Id.

34. It is respectfully submitted that when this Court "canvasses" the issues surrounding the proposed settlement, it should conclude, as the Debtors have, that the settlement does not "fall below the lowest point in the range of reasonableness". See Teltronics, 762 F.2d at 189.

## APPLICATION OF THE 9019 FACTORS TO THE STIPULATION

35. As demonstrated below, the relevant factors militate strongly in favor of approval of the Stipulation.

(1) The Balance Between The Litigation's Possibility
Of Success And The Settlement's Future Benefits

36. While the Debtors believe they would be successful in litigating various

disputes with Koral, the Debtors acknowledge that there are always risks in litigation. For example, there is litigation risk concerning the issue of whether R&R materially breached the Amended Agreement, as Koral has recently alleged.

37.    The Debtors believe that the interest of the creditors and the Debtors are best served by the settlement in that the settlement resolves all disputes with Koral fairly and eliminates the litigation risk associated with Koral's claims.

38.    The settlement has very substantial immediate and future benefits. The settlement enables R&R to immediate payment of a very significant receivable - - upon execution of the Stipulation, Koral paid over $2.3 Million to R&R.  The settlement will also accelerate R&R's cash flow by permitting R&R to move into the off-price sales channels more quickly.  R&R will be permitted to distribute its off-price goods without waiting the 60-day period required under the Amended Agreement.[4]  R&R will have the ability to make its own contracts with the off-price retailers that Koral is presently distributing to.  After termination of the Amended Agreement, R&R will capture the entire margin for off- price goods in the United States because it will no longer need to go through a distributor.

(2)    The Likelihood of Complex And Protracted Litigation,
       With Its Attendant Expense, Inconvenience, And Delay,
       Including The Difficulty In Collecting On The Judgment

39.    Prior to executing the Stipulation, the likelihood of litigation with Koral was very high.

40.    It is  indisputable  that  there  would  be  an  undue  delay  in  the

---

[4]  The Amended Agreement stipulates that Koral's exclusive distribution right continues for sixty (60) days from the date of termination unless R&R elects to repurchase remaining inventory from Koral at the selling price. (See Amended Agreement, § 11.)

administration of the Debtors' Chapter 11 cases and in the making of distributions under a plan if the Stipulation is not approved by the Bankruptcy Court, and if the Debtors and their creditors were instead forced to litigate with Koral.

(3)     The Paramount Interests of The Creditors

41.     The paramount interest of creditors is served by the Stipulation. It is desirable and beneficial to creditors that all the issues be fully and finally settled in the manner and upon the terms and conditions set forth in the Stipulation. The Creditors Committee and CIT have recognized this by not objecting to the Stipulation.

(4)     Whether Other Parties In Interest Support The Settlement

42.     This factor weighs in favor of the Stipulation. The Creditors Committee and CIT have both confirmed that they have no objection to the Stipulation. In addition, Koral is a major party in these Chapter 11 cases and his affiliate, RKF, is the Debtors' single largest creditor.

(5)     The "Competency and Experience of Counsel" Supporting, And "[T]he Experience And Knowledge of The Bankruptcy Court Judge" Reviewing The Settlement

43.     This factor militates in favor of approval of the settlement. In fact, the counsel who negotiated the settlement have been actively involved with the relevant issues between the parties since prior to the Filing Date of the Debtors' cases.

(6)     The Nature And Breadth of Releases To Be Obtained by Officers and Directors

44.     A release of R&R's officers and directors and a release of Koral's officers and directors is being provided in the Stipulation. The Debtors believe that the releases are a sound exercise of their business judgment.

(7)     The Extent To Which The Settlement Is The Product of
        Arm's Length Bargaining

45.     The Stipulation is the product of arm's length bargaining between the Debtors, Koral and the Committee.

46.     Based on the foregoing, it is clear that the relevant factors weigh heavily in favor of approval of the Stipulation. The Debtors believe that the terms of the Stipulation are fair and reasonable and in the best interests of the Debtors' estates. Accordingly, the Debtors respectfully request that this Court approve the Stipulation pursuant to Bankruptcy Rule 9019(a).

## NOTICE

47.     The Debtors are moving, contemporaneously with the filing of this Motion, to have this Motion heard on shortened notice.

48.     No trustee or examiner has been appointed in these chapter 11 cases. The Debtors propose to serve notice of this Motion, as the Court directs, on: (i) the Office of the U.S. Trustee, Attn: Richard C. Morrissey, Esq.; (ii) Attorneys for the Committee, Arent Fox LLP, Attn: James Sullivan, Esq.; (iii) Koral's counsel, Skadden, Arps, Slate, Meagher & Flom LLP, Attn: Suzanne D.T. Lovett, Esq.; (iv) CIT's counsel, Hahn & Hessen LLP, Attn: Rosanne Thomas Matzat, Esq.; and (v) all parties which have filed a notice of appearance in the Debtors' Chapter 11 cases. The Debtors submit that no other or further notice need be provided.

## NO PRIOR MOTION

49.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

## CONCLUSION

50. The Debtors respectfully request that the Court enter an order, substantially in the form annexed hereto as **Exhibit "B"**, (i) approving the Stipulation and (ii) granting such other and further relief as to this Court appears just and proper.

Dated: New York, New York
September 22, 2010

TODTMAN, NACHAMIE, SPIZZ
& JOHNS, P.C.
Attorneys for the Debtors and
Debtors in Possession

By: _____
Alex Spizz, Esq.
Arthur Goldstein, Esq.
Jill Makower, Esq.
425 Park Avenue
New York, New York 10022
(212) 754-9400

**EXHIBIT "A"**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Suzanne D.T. Lovett  (SBN 2492015)

300 South Grand Avenue
Suite 3400
Los Angeles, California 90071
(213) 687-5000
Van C. Durrer II (Admitted in NY)

Counsel for Richard I. Koral, Inc. d/b/a/ Jessica's

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| In re | ) Chapter 11 |
| | ) |
| | ) Case No. 10-11728 (AJG) |
| ROCK & REPUBLIC ENTERPRISES, INC., <u>et al.</u>,[1] | ) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

This Stipulation (the "<u>Stipulation</u>") is made as of September 17, 2010 by and between (i)

Rock & Republic Enterprises, Inc. ("<u>R&R</u>"), one of the above captioned debtors and debtors in

possession (the "<u>Debtor</u>") and (ii) Richard I. Koral, Inc. d/b/a/ Jessica's ("<u>Koral</u>"), as set forth

below:

**WHEREAS,** by Distribution Agreement dated as of September 1, 2008 (the "<u>Original</u>

<u>Agreement</u>"), R&R granted Koral exclusive off-price distribution rights in the United States with

respect to the distribution of "CutUps," "Close Outs," and "Irregular Denim Products" (jointly

---

[1]    The other debtor in these bankruptcy cases is Triple R, Inc. (Case No. 10-11729 (AJG)).

1

defined as "Articles") in exchange for certain minimum purchase orders per month for a term of approximately two (2) years;

WHEREAS, on April 1, 2010 (the "Petition Date"), the Debtor and its affiliate debtor and debtor in possession filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court");

WHEREAS, R&R and Koral amended the Original Agreement and executed the Amended and Restated Distribution Agreement, dated April, 2010 (the "Amended Agreement"), which the Debtor was authorized to assume on May 26, 2010 by Order Pursuant to 11 U.S.C. §§ 363(b)(1) and 365(a) Authorizing Rock & Republic Enterprises, Inc. to Enter Into and Assume Amended and Restated Distribution Agreement [Docket No. 123] (the "Order");

WHEREAS, in August, 2010, Koral sent a letter dated August 25, 2010 (the "Termination Letter") to R&R stating that Koral was terminating the Amended Agreement with 60 days notice pursuant to section 7(b)(ii) of the Distributor's Standard Terms and Conditions (the "Standard Terms") of the Amended Agreement;

WHEREAS, a dispute arose between Koral and R&R regarding the respective rights and obligations of the parties under the Amended Agreement in light of the Termination Letter; and

WHEREAS, the Debtor's counsel and Koral's counsel have had discussions concerning the issues in dispute and that as part of those discussions, R&R and Koral have each determined that, subject to the Bankruptcy Court's approval, it is in the best interests of the parties to enter this Stipulation to resolve their disputes regarding the ongoing obligations of the parties under the Amended Agreement.

**NOW, THEREFORE** in consideration of the forgoing, which are incorporated into this Stipulation, and the covenants and conditions contained herein, the parties hereby agree as follows, subject to and effective as of the date of entry of an order by the Bankruptcy Court approving this Stipulation:

1.     This Stipulation shall not be enforceable against or binding upon any party hereto until it is approved and so ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court declines to approve this Stipulation, all claims and rights of the parties hereto are reserved and nothing contained herein shall be deemed a waiver or admission by any party.

2.     Effective as of the entry of an order approving this Stipulation, the Amended Agreement shall be terminated (the "Termination Date") and Koral will be deemed to have released any claims, including but not limited to any claims for damages, against R&R, its distributors, agents, employees, officers, directors, attorneys, advisors, successors and assigns arising under or  relating to the Amended Distribution Agreement; provided however, Koral will retain all of its rights arising under this Stipulation.

3.     Effective as of the entry of an order approving this Stipulation and terminating the Amended Agreement, R&R will be deemed to have released any claims, including but not limited to any claims for damages, against Koral, its agents, employees, officers, directors, attorneys, advisors, successors and assigns arising under or relating to the Amended Distribution Agreement; provided however, R&R will retain all of its claims arising under this Stipulation.

4.     As to the matters released pursuant to paragraphs 2 and 3 above, the parties hereby expressly waive all rights under the provisions of Section 1542 of the Civil Code of the State of California and any similar rights in any state or territory or under any similar statute or

regulation of the United States or any of its agencies. Section 1542 of this California Civil Code reads as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

Each party waives and relinquishes any rights and benefits that any of them may have under California Civil Code Section 1542 pertaining to the subject of their releases set forth in paragraphs 2 and 3 above, and acknowledges that it is aware that it may hereafter discover facts in addition to or different from those which it now knows or believes to be true with respect to the matters released pursuant to paragraphs 2 and 3 above, but its intention hereby is to fully, finally and forever waive and release the claims released pursuant to paragraphs 2 and 3 above. Each party represents, warrants, and agrees that this waiver is a material term of this Stipulation, without which neither party would have entered into this Stipulation.

5. Upon the execution of this Stipulation by R&R, and receipt by Koral of written confirmation that The CIT Group/Commercial Services Group, Inc. and the Official Committee of Unsecured Creditors (the "Committee") have consented to this Stipulation, Koral will pay R&R, on or before September 20, 2010, the sum of $2,548,955 representing the remaining amounts due under the Amended Agreement subject to an agreed offset of $193,000, and other ordinary course reconciliations, with the net final payment to be $2,355,955.

6. Notwithstanding any of the provisions of the Amended Agreement, effective as of the date of this Stipulation, Koral will not be obligated to accept any further Articles from R&R beyond the Articles already in Koral's possession. All existing orders, shipments and the like are deemed irrevocably cancelled.

7.     Notwithstanding any of the provisions of the Amended Agreement, Koral will have the absolute right to distribute Articles to any customer through any channel of distribution, regardless of whether any such customers are identified in the Amended Agreement.

8.     Notwithstanding any of the provisions of the Amended Agreement, effective as of the date of this Stipulation through November 15, 2010, R&R will be prohibited from distributing its products (directly or indirectly) through the channels of distribution listed on Exhibit 1 to this Stipulation.  After November 15, 2010, this provision shall have no further force or effect, and R&R shall not be prohibited from distributing its products (directly or indirectly) in any channel of distribution.

9.     Notwithstanding any of the provisions of the Amended Agreement, effective as of the date of this Stipulation, R&R will have the absolute right to distribute its products (directly or indirectly) through any channels of distribution except the channels of distribution listed on Exhibit 1 to this Stipulation.

10.     Except as otherwise provided herein related to the above, each party and its respective affiliates explicitly reserve the rights to assert, file, or amend any claims they may have against the other, and each party specifically reserves all rights and defenses regarding matters other than claims released and the rights reserved in respect of the Amended Agreement or the Original Agreement as specified in Sections 2 and 3 above.

11.     This Stipulation constitutes the entire agreement and understanding of the parties hereto and supersedes any prior discussion or statement by and between the parties with respect to the subject matter hereof.

12.    This Stipulation shall be binding on and inure to the benefit of the parties hereto and their respective successors, assigns, representatives, heirs, executors, administrators, trustees, and receivers, as the case may be.

13.    This Stipulation may not be amended or modified orally or in any other way or manner except by a writing signed by the party to be bound, and such approval and authorization of the Bankruptcy Court as may be necessary and appropriate under the circumstances.

14.    Each party represents and warrants to the other that its execution, delivery and performance of this Stipulation is within the power and authority of such party and has been duly authorized by such party.

15.    This Stipulation may be signed in any number of counterparts, each of which shall be deemed an original and all of which together shall be deemed to be one and the same instrument.

16.    This Stipulation shall be governed by and construed in accordance with the laws of the state of California without reference to its conflict of laws rules, and the parties hereto consent to the exclusive jurisdiction of the Bankruptcy Court for all matters concerning this Stipulation to the fullest extent that the Bankruptcy Court has jurisdiction under 28 U.S.C. §1334.

**STIPULATED AND AGREED** TO ON THIS 17th DAY OF SEPTEMBER ___ 2010:

Dated:        September 17, 2010
              New York, New York

              _____
              Richard I. Koral, Inc. d/b/a/ Jessica's

Dated:        September ___ 2010
              New York, New York

              _____
              Rock & Republic Enterprises, Inc.

6

12.    This Stipulation shall be binding on and inure to the benefit of the parties hereto and their respective successors, assigns, representatives, heirs, executors, administrators, trustees, and receivers, as the case may be.

13.    This Stipulation may not be amended or modified orally or in any other way or manner except by a writing signed by the party to be bound, and such approval and authorization of the Bankruptcy Court as may be necessary and appropriate under the circumstances.

14.    Each party represents and warrants to the other that its execution, delivery and performance of this Stipulation is within the power and authority of such party and has been duly authorized by such party.

15.    This Stipulation may be signed in any number of counterparts, each of which shall be deemed an original and all of which together shall be deemed to be one and the same instrument.

16.    This Stipulation shall be governed by and construed in accordance with the laws of the state of California without reference to its conflict of laws rules, and the parties hereto consent to the exclusive jurisdiction of the Bankruptcy Court for all matters concerning this Stipulation to the fullest extent that the Bankruptcy Court has jurisdiction under 28 U.S.C. §1334.


**STIPULATED AND AGREED** TO ON THIS ___ DAY OF SEPTEMBER ___ 2010:


Dated:        September ___ 2010
              New York, New York          _____
                                          Richard I. Koral, Inc. d/b/a/ Jessica's


Dated:        September 17 2010
              New York, New York          _____
                                          Rock & Republic Enterprises, Inc.
                                          CHIEF RESTRUCTURING OFFICER

6

# EXHIBIT 1

# CHANNELS OF DISTRIBUTION

**"Cut-Ups," "Close-Outs" and "Irregular Denim Products" may be distributed to:**

Saks Off Fifth

Nordstrom Rack

Loehmann's

Barneys Outlet

Neiman Marcus Last Call

Filene's/Syms

Century 21

Barneys New York

Stein Mart

K&G

Big M/ Annie Sez

Fox's

Gilt

Rue La

Haute Look

Ideeli

Bluefly

**Irregular Denim Products and Close-Outs may be distributed to:**

Marmaxx-Marshalls/TJ Maxx

EXHIBIT "B"

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Suzanne D.T. Lovett (SBN 2492015)

300 South Grand Avenue
Suite 3400
Los Angeles, California 90071
(213) 687-5000
Van C. Durrer II (Admitted in NY)

Counsel for Richard I. Koral, Inc. d/b/a/ Jessica's

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ x

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 |
|  | ) |  |
| ROCK & REPUBLIC ENTERPRISES, INC., et al.,[1] | ) | Case No. 10-11728 (AJG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) |  |

------------------------------------ x

## ORDER APPROVING STIPULATION BY AND BETWEEN ROCK & REPUBLIC ENTERPRISES, INC. AND RICHARD I. KORAL, INC. D/B/A/ JESSICA'S SETTLING ALL CLAIMS RELATING TO DISTRIBUTION AGREEMENT

Upon consideration of the Stipulation by and between Rock & Republic Enterprises, Inc.,

one of the above captioned debtors and debtors in possession (the "Debtor"), and Richard I.

Koral, Inc. d/b/a/ Jessica's ("Koral"), settling all disputes between the parties relating to the

Amended and Restated Distribution Agreement dated April, 2010 and the Distribution

Agreement dated September 1, 2008 (the "Stipulation") attached hereto as Exhibit A; and it

appearing that the relief requested is in the best interests of the Debtor and its creditors, and after

due deliberation and good and sufficient cause appearing therefore; it is hereby:

---

[1]  The other debtor in these bankruptcy cases is Triple R, Inc. (Case No. 10-11729 (AJG)).

1

ORDERED that the Stipulation attached hereto as <u>Exhibit A</u> is approved; and it is further

ORDERED that the Court shall retain jurisdiction over any and all matters arising or

related to the interpretation or implementation of this Order.


Dated: New York, New York
       September __, 2010


                                        _____
                                        Arthur J. Gonzalez
                                        Chief United States Bankruptcy Judge

# EXHIBIT A

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Suzanne D.T. Lovett  (SBN 2492015)

300 South Grand Avenue
Suite 3400
Los Angeles, California 90071
(213) 687-5000
Van C. Durrer II (Admitted in NY)

Counsel for Richard I. Koral, Inc. d/b/a/ Jessica's

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ x
In re                                          )   Chapter 11
                                               )
                                               )   Case No. 10-11728 (AJG)
ROCK & REPUBLIC ENTERPRISES, INC., et al.,[1]  )
                                               )
                       Debtors.                )   (Jointly Administered)
                                               )
                                               )
------------------------------------ x

This Stipulation (the "Stipulation") is made as of September 17, 2010 by and between (i)

Rock & Republic Enterprises, Inc. ("R&R"), one of the above captioned debtors and debtors in

possession (the "Debtor") and (ii) Richard I. Koral, Inc. d/b/a/ Jessica's ("Koral"), as set forth

below:

**WHEREAS**, by Distribution Agreement dated as of September 1, 2008 (the "Original

Agreement"), R&R granted Koral exclusive off-price distribution rights in the United States with

respect to the distribution of "CutUps," "Close Outs," and "Irregular Denim Products" (jointly

---

[1]    The other debtor in these bankruptcy cases is Triple R, Inc. (Case No. 10-11729 (AJG)).

1

defined as "<u>Articles</u>") in exchange for certain minimum purchase orders per month for a term of approximately two (2) years;

WHEREAS, on April 1, 2010 (the "<u>Petition Date</u>"), the Debtor and its affiliate debtor and debtor in possession filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy Court</u>");

WHEREAS, R&R and Koral amended the Original Agreement and executed the Amended and Restated Distribution Agreement, dated April, 2010 (the "<u>Amended Agreement</u>"), which the Debtor was authorized to assume on May 26, 2010 by Order Pursuant to 11 U.S.C. §§ 363(b)(1) and 365(a) Authorizing Rock & Republic Enterprises, Inc. to Enter Into and Assume Amended and Restated Distribution Agreement [Docket No. 123] (the "<u>Order</u>");

WHEREAS, in August, 2010, Koral sent a letter dated August 25, 2010 (the "<u>Termination Letter</u>") to R&R stating that Koral was terminating the Amended Agreement with 60 days notice pursuant to section 7(b)(ii) of the Distributor's Standard Terms and Conditions (the "<u>Standard Terms</u>") of the Amended Agreement;

WHEREAS, a dispute arose between Koral and R&R regarding the respective rights and obligations of the parties under the Amended Agreement in light of the Termination Letter; and

WHEREAS, the Debtor's counsel and Koral's counsel have had discussions concerning the issues in dispute and that as part of those discussions, R&R and Koral have each determined that, subject to the Bankruptcy Court's approval, it is in the best interests of the parties to enter this Stipulation to resolve their disputes regarding the ongoing obligations of the parties under the Amended Agreement.

**NOW, THEREFORE** in consideration of the forgoing, which are incorporated into this Stipulation, and the covenants and conditions contained herein, the parties hereby agree as follows, subject to and effective as of the date of entry of an order by the Bankruptcy Court approving this Stipulation:

1.  This Stipulation shall not be enforceable against or binding upon any party hereto until it is approved and so ordered by the Bankruptcy Court. In the event that the Bankruptcy Court declines to approve this Stipulation, all claims and rights of the parties hereto are reserved and nothing contained herein shall be deemed a waiver or admission by any party.

2.  Effective as of the entry of an order approving this Stipulation, the Amended Agreement shall be terminated (the "Termination Date") and Koral will be deemed to have released any claims, including but not limited to any claims for damages, against R&R, its distributors, agents, employees, officers, directors, attorneys, advisors, successors and assigns arising under or relating to the Amended Distribution Agreement; provided however, Koral will retain all of its rights arising under this Stipulation.

3.  Effective as of the entry of an order approving this Stipulation and terminating the Amended Agreement, R&R will be deemed to have released any claims, including but not limited to any claims for damages, against Koral, its agents, employees, officers, directors, attorneys, advisors, successors and assigns arising under or relating to the Amended Distribution Agreement; provided however, R&R will retain all of its claims arising under this Stipulation.

4.  As to the matters released pursuant to paragraphs 2 and 3 above, the parties hereby expressly waive all rights under the provisions of Section 1542 of the Civil Code of the State of California and any similar rights in any state or territory or under any similar statute or

regulation of the United States or any of its agencies. Section 1542 of this California Civil Code

reads as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

Each party waives and relinquishes any rights and benefits that any of them may have under

California Civil Code Section 1542 pertaining to the subject of their releases set forth in

paragraphs 2 and 3 above, and acknowledges that it is aware that it may hereafter discover facts

in addition to or different from those which it now knows or believes to be true with respect to

the matters released pursuant to paragraphs 2 and 3 above, but its intention hereby is to fully,

finally and forever waive and release the claims released pursuant to paragraphs 2 and 3 above.

Each party represents, warrants, and agrees that this waiver is a material term of this Stipulation,

without which neither party would have entered into this Stipulation.

5.    Upon the execution of this Stipulation by R&R, and receipt by Koral of written

confirmation that The CIT Group/Commercial Services Group, Inc. and the Official Committee

of Unsecured Creditors (the "Committee") have consented to this Stipulation, Koral will pay

R&R, on or before September 20, 2010, the sum of $2,548,955 representing the remaining

amounts due under the Amended Agreement subject to an agreed offset of $193,000, and other

ordinary course reconciliations, with the net final payment to be $2,355,955.

6.    Notwithstanding any of the provisions of the Amended Agreement, effective as of

the date of this Stipulation, Koral will not be obligated to accept any further Articles from R&R

beyond the Articles already in Koral's possession. All existing orders, shipments and the like are

deemed irrevocably cancelled.

7. Notwithstanding any of the provisions of the Amended Agreement, Koral will have the absolute right to distribute Articles to any customer through any channel of distribution, regardless of whether any such customers are identified in the Amended Agreement.

8. Notwithstanding any of the provisions of the Amended Agreement, effective as of the date of this Stipulation through November 15, 2010, R&R will be prohibited from distributing its products (directly or indirectly) through the channels of distribution listed on Exhibit 1 to this Stipulation. After November 15, 2010, this provision shall have no further force or effect, and R&R shall not be prohibited from distributing its products (directly or indirectly) in any channel of distribution.

9. Notwithstanding any of the provisions of the Amended Agreement, effective as of the date of this Stipulation, R&R will have the absolute right to distribute its products (directly or indirectly) through any channels of distribution except the channels of distribution listed on Exhibit 1 to this Stipulation.

10. Except as otherwise provided herein related to the above, each party and its respective affiliates explicitly reserve the rights to assert, file, or amend any claims they may have against the other, and each party specifically reserves all rights and defenses regarding matters other than claims released and the rights reserved in respect of the Amended Agreement or the Original Agreement as specified in Sections 2 and 3 above.

11. This Stipulation constitutes the entire agreement and understanding of the parties hereto and supersedes any prior discussion or statement by and between the parties with respect to the subject matter hereof.

12.     This Stipulation shall be binding on and inure to the benefit of the parties hereto and their respective successors, assigns, representatives, heirs, executors, administrators, trustees, and receivers, as the case may be.

13.     This Stipulation may not be amended or modified orally or in any other way or manner except by a writing signed by the party to be bound, and such approval and authorization of the Bankruptcy Court as may be necessary and appropriate under the circumstances.

14.     Each party represents and warrants to the other that its execution, delivery and performance of this Stipulation is within the power and authority of such party and has been duly authorized by such party.

15.     This Stipulation may be signed in any number of counterparts, each of which shall be deemed an original and all of which together shall be deemed to be one and the same instrument.

16.     This Stipulation shall be governed by and construed in accordance with the laws of the state of California without reference to its conflict of laws rules, and the parties hereto consent to the exclusive jurisdiction of the Bankruptcy Court for all matters concerning this Stipulation to the fullest extent that the Bankruptcy Court has jurisdiction under 28 U.S.C. §1334.

**STIPULATED AND AGREED** TO ON THIS 17th DAY OF SEPTEMBER ___ 2010:

Dated:          September 17, 2010
                New York, New York

                                        _____
                                        Richard I. Koral, Inc. d/b/a/ Jessica's

Dated:          September ___ 2010
                New York, New York

                                        _____
                                        Rock & Republic Enterprises, Inc.

6

12. This Stipulation shall be binding on and inure to the benefit of the parties hereto and their respective successors, assigns, representatives, heirs, executors, administrators, trustees, and receivers, as the case may be.

13. This Stipulation may not be amended or modified orally or in any other way or manner except by a writing signed by the party to be bound, and such approval and authorization of the Bankruptcy Court as may be necessary and appropriate under the circumstances.

14. Each party represents and warrants to the other that its execution, delivery and performance of this Stipulation is within the power and authority of such party and has been duly authorized by such party.

15. This Stipulation may be signed in any number of counterparts, each of which shall be deemed an original and all of which together shall be deemed to be one and the same instrument.

16. This Stipulation shall be governed by and construed in accordance with the laws of the state of California without reference to its conflict of laws rules, and the parties hereto consent to the exclusive jurisdiction of the Bankruptcy Court for all matters concerning this Stipulation to the fullest extent that the Bankruptcy Court has jurisdiction under 28 U.S.C. §1334.

**STIPULATED AND AGREED** TO ON THIS __ DAY OF SEPTEMBER ___ 2010:


Dated:      September __ 2010
            New York, New York        _____
                                      Richard I. Koral, Inc. d/b/a/ Jessica's


Dated:      September *17* 2010
            New York, New York        _____
                                      Rock & Republic Enterprises, Inc.
                                      CHIEF RESTRUCTURING OFFICER

6

# EXHIBIT 1

# CHANNELS OF DISTRIBUTION

**"Cut-Ups," "Close-Outs" and "Irregular Denim Products" may be distributed to:**

Saks Off Fifth

Nordstrom Rack

Loehmann's

Barneys Outlet

Neiman Marcus Last Call

Filene's/Syms

Century 21

Barneys New York

Stein Mart

K&G

Big M/ Annie Sez

Fox's

Gilt

Rue La

Haute Look

Ideeli

Bluefly


**Irregular Denim Products and Close-Outs may be distributed to:**

Marmaxx-Marshalls/TJ Maxx