UNITED STATES BANKRUPTCY COURT          **NOT FOR PUBLICATION**
SOUTHERN DISTRICT OF NEW YORK

_____
                                          :
In re                                     :          Chapter 11
                                          :
    Rock & Republic Enterprises, *et. al.*,  :          Case No. 10-11728 (AJG)
                                          :
                       Debtors.  :
_____:


### OPINION REGARDING DEBTORS' OBJECTION
### TO ADMINISTRATIVE CLAIM OF QUETICO

**A P P E A R A N C E S:**

ARENT FOX LLP
*Attorneys for the Liquidating Trust*
1675 Broadway
New York, NY 10019

      By:    Robert M. Hirsch, Esq.
              Jordana L. Renert, Esq.

PACHULSKI STANG ZIEHL & JONES LLP
*Attorneys for Quetico, LLC*
780 Third Avenue, 36th Floor
New York, NY 10017

      By:    Bradford E. Sandler, Esq.
              Beth E. Levine, Esq.
              Ilan D. Scharf, Esq.

SNR DENTON US LLP
*Attorneys for Michael Ball*
1221 Avenue of the Americas
New York, NY 10020

      By:    Carole Neville, Esq.


       Before the Court are (a) the objection (the "Objection") of the Rock & Republic

Liquidating Trust (the "Liquidating Trust") seeking to expunge the proof of claim for

administrative expenses filed against Rock & Republic Enterprises, Inc. ("Rock &

Republic") by Quetico, LLC ("Quetico") (ECF No. 886), (b) the Response to the

Objection filed by Quetico (the "Quetico Response") (ECF No. 920), (c) Michael Ball's

Joinder to the Objection (the "Ball Joinder") (ECF No. 923), (d) the Statement in Further

Support of the Objection and Reply to Quetico's Response filed by the Liquidating Trust

(the "Liquidating Trust's Reply") (ECF No. 964), (e) the Statement in Further Opposition

to the Objection and the Declaration of Alan Mazursky in Opposition to the Objection

filed by Quetico (the "Quetico Statement in Further Opposition") (ECF No. 992), (f) the

Motion to Strike the Quetico Statement in Further Opposition filed by the Liquidating

Trust (the "Liquidating Trust's Motion to Strike") (ECF No. 995), (g) the Motion for

Leave to File a Response to the Quetico Statement in Further Opposition filed by Michael

Ball (the "Ball Motion for Leave to File a Response") (ECF No. 996), (h) the Response to

the Liquidating Trust's Motion to Strike filed by Quetico (ECF No. 1000), and (i) the

Response to the Ball Motion for Leave to File a Response (ECF No. 1005). For the

reasons listed below, the Court disallows the Claim.

### Jurisdiction and Venue

The Court has jurisdiction to consider the Objection pursuant to 28 U.S.C. §§ 157

and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper

pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background and Procedural History

On or about March 1, 2009, Rock & Republic entered into a distribution

agreement with Simms (the "Simms Distribution Agreement") wherein Simms was given

the exclusive right to distribute Rock & Republic's line of denim, ready-to-wear apparel,

2

and accessories in Canada. Sometime at the end of 2009, Simms notified Rock &

Republic that certain Rock & Republic denim goods and other merchandise were being

sold at Costco in Canada in violation of the Simms Distribution Agreement. On August

6, 2010, Simms commenced a proceeding against Costco Wholesale Canada Ltd.

("Costco") in Canada seeking, in part, an injunction blocking Costco from selling goods

in violation of the Simms Distribution Agreement as well as related damages (the

"Canadian Proceeding"). *See Simms Sigal & Co. v. Costco Wholesale Canada Ltd.*, Case

No. 500-17-060159-103.

On April 1, 2010 (the "Petition Date"), Rock & Republic and Triple R. Inc. (the

"Debtors") commenced a case under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code").

On or about April 30, 2010, Rock & Republic entered into the first of a series of

distribution agreements with Quetico and Kontakt US International ("Kontakt") to sell

specified denim products. Certain of those goods were distributed to, among other

retailers, Costco in Canada. *See* Quetico Response ¶ 10.

On September 13, 2010, the Court entered an order authorizing the Debtors to

reject the Simms Distribution Agreement. (ECF No. 287.) Following the rejection of the

Simms Distribution Agreement, Simms filed a claim against the Debtors seeking lost

profits and indemnification. On November 19, 2010, the Debtors filed an objection to the

Simms Proof of Claim. (ECF No. 543.)

On or about October 12, 2010, the Debtors, Quetico and Kontakt entered into a

distribution agreement (the "Quetico Exclusive Distribution Agreement") wherein

Quetico and Kontakt were deemed the exclusive distributors of Rock & Republic goods

3

in the United States and Canada beginning November 16, 2010. Under the Quetico

Exclusive Distribution Agreement, Quetico and Kontakt distributed Rock & Republic

goods to, among other retailers, Costco in Canada.

On January 28, 2011, the Debtors, the Official Committee of Unsecured

Creditors, and VF Corporation filed a plan (the "Plan") predicated on the sale of all of the

Debtors' intellectual property rights and property rights of certain of the Debtors'

affiliates to VF Corporation. (ECF No. 672.) The Plan provides for the establishment of

the Liquidating Trust and for the appointment of the Liquidating Trustee to liquidate the

Debtors' remaining assets and to resolve the remaining claims against the estate. On

March 23, 2011, the Court entered an order confirming the Plan. (ECF No. 778.) The

Plan went effective on March 30, 2011.

On March 25, 2011, the Court entered an order establishing May 16, 2011 as the

deadline by which requests for payment of administrative expense claims were required

to be filed (the "Administrative Claims Bar Date"). (ECF No. 783.) On May 16, 2011,

Quetico filed an administrative expense claim (the "Claim"), docketed as Claim No. 286,

against Rock & Republic in the amount of $6,083,600. The Claim states that Quetico, in

conjunction with the services it provided to the Debtors, "potentially has certain

contractual indemnity obligations to Costco Canada, pursuant to which Quetico will be

obligated to indemnify Costco Canada for any and all damages and fees/costs it incurs in

connection with Debtors' transactions." Attachment to the Claim. The Claim also

asserts that if Simms directly sues Quetico, Quetico would incur further damages and

would seek indemnity from the Debtors. *Id.* The Claim was filed as an administrative

claim because the Debtors' activities that gave rise to Simms' alleged claims took place

after the Petition Date. *Id.*

On June 13, 2011, the Liquidating Trust filed the Objection. The Objection

requests disallowance of the Claim under § 502(e)(1)(B)[1] as a contingent claim for

reimbursement.

On July 15, 2011, Quetico filed the Quetico Response in opposition to the

Objection, arguing that § 502 does not apply to administrative claims, and even if it did,

relief could not be granted because Quetico is not liable with the Debtors on a claim of a

creditor as required under that section.

On July 19, 2011, Michael Ball filed the Ball Joinder. He argues the Claim does

not arise out of a transaction between the Debtors and a claimant, and thus cannot be

found to benefit the Debtors as required to constitute an administrative expense. Further,

he reviews the relevant potential causes of action that Quetico might have against the

Debtors and contends that none of them are availing. On August 19, 2011, the

Liquidating Trust filed the Liquidating Trust's Reply arguing, *inter alia*, that Quetico

cannot meet the requirements of § 503 since no post-petition claim that is contingent may

be allowed.

On August 24, 2011, the Court held a hearing on the Objection. At the conclusion

of the hearing, the Court granted Quetico permission to file a response to the Liquidating

Trust's Reply for the sole purpose of addressing whether the Claim meets the "actual"

requirement of § 503(b)(1)(A). Quetico filed the Quetico Statement in Further

Opposition on August 31, 2011 in support of its argument that the Bankruptcy Code does

not prohibit contingent administrative claims.

---

[1] All references to sections, unless otherwise indicated, refer to title 11 of the United States Code.

On September 2, 2011, the Liquidating Trust filed the Liquidating Trust's Motion

to Strike on the basis that the Quetico Statement in Further Opposition did not address the

issue identified by the Court.[2]   On September 7, 2011, Quetico filed the Response to the

Liquidating Trust's Motion to Strike.

On September 6, 2011, Michael Ball filed the Ball Motion for Leave to File a

Response to correct the record with respect to certain facts.  On September 8, 2011,

Quetico filed a Response to the Ball Motion for Leave to File a Response stating that it

does not object to the filing of the proposed response, but disputing certain of the facts set

forth in the proposed response.[3]

**Discussion**

**Section 502 Does Not Apply**

The Liquidating Trust's Objection is predicated on § 502(e)(1)(B), which

provides, in relevant part, that a court shall disallow any claim for reimbursement or

contribution of an entity that is co-liable with the debtor to the extent that "such claim for

reimbursement or contribution is contingent as of the time of allowance or disallowance

of such claim for reimbursement or contribution."  11 U.S.C. § 502(e)(1)(B).  However, §

502(e)(1)(B) applies to claims filed under § 501, *see* 11 U.S.C. § 502(a), which section

only applies to claims arising "at the time of or before the order for relief concerning the

---

[2] The Court GRANTS, in part, and DENIES, in part, the Liquidating Trust's Motion to Strike.  Section "A" of Quetico's Statement in Further Opposition concerns whether Quetico provided a benefit to the estate, and, more specifically, whether damages resulting from a post-petition wrongful act may be classified as an administrative expense.  This issue was briefed in the original papers and discussed at the hearing. Accordingly, section "A" of Quetico's Statement in Further Opposition shall be striken.  The remainder of Quetico's Statement in Further Opposition addresses whether a postpetition contingent claim may be an administrative expense under the definition of "actual" in accordance with the Court's direction, and therefore is allowed.
[3] The Court GRANTS the Ball Motion for Leave to File a Response and has considered the response attached to the Ball Motion for Leave to File a Response as well as Quetico's Response to that attachment in evaluating the issue before the Court.

debtor." 11 U.S.C. § 101(10). Section 503, in contrast, applies to requests for payments of administrative expenses. 11 U.S.C. § 503(a). "Section 502, in conjunction with section 501, provides a procedure for the allowance of claims that is entirely separate from the procedure for allowance of administrative expenses under section 503." *In re Ames Dept. Stores, Inc.*, 582 F.3d 422, 428 (2d Cir. 2009). Since the Claim was filed as a post-petition claim for an administrative expense, it falls within the realm of § 503 and should be analyzed under that section. *See, e.g., Zurich Am. Ins. Co. v. Lexington Coal Co. (In re HRNC Dissolution Co.),* 371 B.R. 210, 233-34 (E.D.Ky. 2007) (finding post-petition claims "are the exclusive domain of § 503.").[4]

Accordingly, the Court will analyze the Claim and arguments only as they relate to the applicable provision of the Bankruptcy Code and the standards set forth thereunder.

**Administrative Expense Priority Not Warranted**

Quetico seeks $6,083,600 as an administrative expense for contribution or reimbursement for a potential obligation to Simms or Costco. Quetico bears the burden of proving entitlement to priority payment as an administrative expense. *In re Bethlehem Steel Corp.*, 479 F.3d 167, 172 (2d Cir. 2007) (citing *Woburn Assocs. v. Kahn (In re Hemingway Transp., Inc.),* 954 F.2d 1, 5 (1st Cir. 1992)); *In re Drexel Burnham Lambert Grp, Inc.*, 134 B.R. 482, 489 (Bankr. S.D.N.Y. 1991). "Because the presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among his creditors, statutory priorities are narrowly construed." *Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 100 (2d Cir. 1986) (citations omitted).

---

[4] Even if § 502 did apply to administrative expense claims, it is not clear whether the Debtors could meet the requirements of § 502(e)(1).

A claim may be allowed as an administrative expense for the "actual, necessary

costs and expenses of preserving the estate . . . ."  11 U.S.C. § 503(b)(1)(A).  An expense

is administrative only if it arises out of a transaction between the debtor and the creditor,

and only if the expense was supplied to or incurred for the benefit of the debtor.  *In re*

*Bethlehem Steel Corp.,* 479 F.3d at 172.  *See also In re White Motor Corp.*, 831 F.2d 106,

110 (6th Cir. 1987) ("[A] claimant must prove that the debt (1) arose from a transaction

with the debtor-in-possession . . . and (2) directly and substantially benefited the estate.")

(citing *In re Mammoth Mart, Inc.,* 536 F.2d 950, 954 (1st Cir. 1976)).  However, the

"benefit requirement has no independent basis in the [Bankruptcy] Code . . . it is merely a

way of testing whether a particular expense was truly necessary to the estate . . . ."

*Matter of H.L.S. Energy Co., Inc.,* 151 F.3d 434, 437 (5th Cir. 1998).

A. *Allowed Administrative Claims Must Be Necessary*

Expenses incurred incident to the operation of business may be considered

necessary to the estate and thus entitled to administrative priority.  *Reading v. Brown,* 391

U.S. 471, 483 (1968).  *See also In re N.P. Mining Co., Inc.,* 966 F.2d 1449, 1457 (11th

Cir. 1992); *In re Oldco M. Corp.*, 438 B.R. 775, 786 (Bankr. S.D.N.Y. 2010).  Here,

Quetico has provided shipping and other services to the Debtors since the Petition Date.

If Quetico were to bring a valid claim against the estate for a post-petition tort, it would

give rise to an "actual and necessary cost of operating the debtor's business."  *Reading v.*

*Brown,* 391 U.S. at 476.  *See also In re Old Carco LLC,* 2010 WL 4455648, at *4 (Bankr.

S.D.N.Y. Nov. 2, 2010) ("Under the *Reading* exception, a claim may qualify as an

administrative expense, even where the consideration for the claim does not provide a

benefit to the estate, if the expense is 'ordinarily incident to operation of a business.'")

8

(citations omitted); *Suntrust Bank v. Robertson (In re Baseline Sports, Inc.),* 393 B.R.

105, 130 (Bankr. E.D.Va. 2008) ("[P]ost-petition torts committed by the debtor-in-

possession while acting in furtherance of operation of the business satisfy the second . . .

prong of the administrative expense test."). However, Quetico has not, and likely cannot,

as further discussed *infra*, bring a valid claim for indemnification.

### B. Allowed Administrative Claims Must Be Actual

Although a *claim* may be contingent, only "actual" administrative expenses, not

contingent expenses, are entitled to priority under § 503.  11 U.S.C. § 503(b)(1)(A);

*Juniper Dev. Grp v. Kahn (In re Hemingway Transp., Inc.),* 993 F.2d 915, 930 (1st Cir.

1993) (finding claims for future response costs to be unavailing insofar as the right to

contribution for such costs remained contingent at the time the court considered the

claim).  *See also In re Oldco M. Corp.*, 438 B.R. at 786 (Bankr. S.D.N.Y. 2010)

(disallowing request for administrative expense related to future environmental

remediation costs that debtor may or may not have to pay in the future as too speculative

to support the allowance of an administrative expense).

In the Quetico Statement in Further Opposition, counsel for Quetico cites three

cases in support of its proposition that an administrative claim may be contingent.  All

three cases provide that a claim for an administrative expense may be contingent at some

point.  However, "[a]n *allowed* administrative expense priority under section[]

503(b)(1)(A) . . . does not depend on the definition of the term 'claim.'"  *Id.* at 780

(emphasis added).  Moreover, the cases cited actually support the notion that an

administrative claim may be not be allowed if it remains contingent at the time of

allowance or disallowance.

9

Quetico cites *In re Caldor, Inc. N.Y.,* 240 B.R. 180, 191 (Bankr. S.D.N.Y. 1999)

for the proposition that "neither the Bankruptcy Code nor case law construing it prohibits

contingent administrative claims . . . to the contrary, whenever an entity provides goods

or services to a trustee or debtor-in-possession, it has a contingent administrative claim."

This statement is made in the context of the definition of a claim, which neither party

disputes may be contingent.  11 U.S.C. § 101(5).  That court's finding that a *claim* may

be contingent does not impact the requirement that at the time the court considers the

administrative expense claim, the contingency at issue had to have occurred.  Rather, the

court qualifies its earlier statement that a claim may be contingent by stating that "a post-

petition claim that is still contingent will not be allowed under § 503(b) of the

Bankruptcy Code and paid as an administrative expense."  *In re Caldor, Inc. N.Y.,* 240

B.R. at 191.  Thus, *In re Caldor, Inc. N.Y.* actually contradicts Quetico's argument.

In the second case cited by Quetico, *Chaing v. Barclays Bank, PLC (In re

Caledonia Springs, Inc.*), 185 B.R. 712, 717 n. 19 (D. VI. 1995), the court similarly

found that the creditor held a contingent claim for the purposes of determining whether

the creditor was a party-in-interest entitled to participate in the bankruptcy matter, but did

not decide whether such claim was allowed.  In that case, a group of unsecured creditors

and equity security holders brought an adversary proceeding to prevent a claimant from

participating in the bankruptcy case.  The claimant was a defendant in a lender-liability

action that was stayed when the plaintiff, Caledonia Springs, filed for protection under

the Bankruptcy Code.  Shareholders and officers of the debtor filed an action attempting

to enjoin the claimant from participating in the bankruptcy proceedings as a contingent

creditor.  They argued the claimant was not a creditor of the debtor and did not have

10

standing to participate in the bankruptcy case.  The claimant, in response, argued the

shareholders and officers did not have standing to state a claim on behalf of the debtor.

The District Court upheld the Bankruptcy Court's determination that the equity security

holders and unsecured creditors lacked standing, and that the claimant had standing to be

heard.  The District Court, in a footnote, explained that the claimant had a "contingent

priority administrative claim for its fees and costs incurred post-petition, and contingent

unsecured claims for pre-petition costs and fees."  *Id.*  This footnote supports the notion

that the claimant had a claim and thus had standing to participate.  It does not address

whether that claim may be allowed, and therefore does not support Quetico's position

regarding the allowance issues.

Finally, Quetico quotes language from *United States. v. Brandt (In re Lissner

Corp.),* 119 B.R. 143, 147 (D. Ill. 1990) explaining that since "administrative expenses

may continue to accrue until the estate is closed . . . such expenses cannot be fully

calculated prior to the bar date."  In *In re Lissner Corp.*, the Internal Revenue Service

(the "IRS") asserted a claim for administrative expenses incurred by the debtor prior to

the conversion of a Chapter 11 case to a Chapter 7 liquidation.  However, since the claim

was filed two days after the bar date, the Bankruptcy Court disallowed the claim as

untimely, and the IRS appealed, arguing that the bar date did not apply to "requests for

payment" under § 503.  The District Court held that the Chapter 7 bar date applied to

Chapter 11 administrative expenses incurred prior to conversion, emphasizing that

Chapter 7 trustees require such information to ensure an effective and speedy wind-down.

*Id.* at 146.  The District Court noted that if the case did not involve conversion, the IRS

argument would be more compelling because administrative expenses would continue to

11

accrue until the estate is closed.  This case is inapposite because to the extent a cause of

action has accrued at all against Rock & Republic, it accrued prior to the administrative

bar date.  Further, the District Court's finding that preconversion administrative expenses

become definite and allowable at conversion since at that point they are no longer

contingent, *see id.* at 148, supports the conclusion that an administrative expense claim

may not be allowed until the contingency has occurred.

The Court finds Quetico's argument that a contingent administrative claim may

be allowed to be unavailing.  Here, neither Simms nor Costco has demanded payment

from Quetico.  Even if Simms or Costco brought a cause of action against Quetico, the

Claim would remain contingent until, among other things, such liability were found

against Quetico.  Further, there is no reasonable prospect that the Claim would become

"actual" in the foreseeable future, if at all.  For that reason alone the Claim must be

expunged.

*C. Estimation – Likelihood of a Viable Cause of Action If Contingency Were to
Occur*

Even if a contingent claim under these circumstances would be considered

"actual," any such claim would take a significant period of time to become fixed – far

longer than the time period currently contemplated for purposes of distribution.[5]

Therefore, in order for the Liquidating Trustee to make a distribution under the Plan, the

Court would need to estimate the claim.  The estimated value of a claim is "the amount of

the claim diminished by the probability that it may be sustainable only in part or not at

all."  *In re Windsor Plumbing Supply Co.,* 170 B.R. 503 (Bankr. E.D.N.Y. 1994).  The

contingent nature of the Claim is multi-tiered.  Here, the parties do not know whether

---

[5] Counsel for the Liquidating Trustee indicated at the hearing that he currently contemplates finalizing and
closing the Liquidating Trust by the end of the year.

there will ever be an indemnification claim against Quetico, let alone against the estate.

Since Quetico is unlikely to prevail on a claim for indemnification against the estate

under any theory – even if Quetico were required to pay damages to a third party, the

Court would estimate the Claim at zero.

Based upon the Court's understanding of the facts and law underlying the Canada

Proceeding, it seems there is little likelihood that Costco would succeed on a suit for

indemnification against Quetico.  If Costco were to lose in the Canada Proceeding, it

could arguably bring a lawsuit against Quetico for damages, fees and costs incurred in

connection with that proceeding pursuant to certain contractual indemnity obligations

Quetico has to Costco.  *See* Attachment to Proof of Claim.  However, based on the

Court's understanding of Canadian law, if the court were to rule against Costco on any of

the alleged causes of action, it would need to find that Costco *knew* its actions violated

the Simms Distribution Agreement.  *See* Canada Complaint ¶¶ 23, 33, 70, 91, 98.

Simms' causes of action against Costco include the willful and deliberate infringement of

Simms' exclusive right of distribution, involvement in a conspiracy to breach the Simms

Distribution Agreement, inducement of Rock & Republic to breach its agreement with

Simms, and a violation of Costco's obligation to exercise civil rights in good faith.  *See*

Canada Complaint ¶ 122.  Each cause of action requires, at the very least, knowledge of

the Simms Distribution Agreement.  *See Garry v. Sherritt Gordon Mines Ltd.*, 1987

CarswellSask 388, paras. 23-24 (both direct and indirect interference with contract

requires knowledge of the underlying contract); *Agribrands Purina Canada Inc. v.*

*Kasamekas*, 2010 CarsweelOnt 98, para. 110 (in a civil claim, the tort of conspiracy is

proven where the defendant's purpose is to cause injury or where the defendant knows or

should have known that injury to the plaintiff is likely to result).  As a result, Costco

likely would be estopped from arguing it lacked the requisite knowledge or intent in a

subsequent indemnity suit.  *See, e.g., 702525 Ontario Inc. v. Non-Marine Underwriters,*

*Lloyd's London*, 1995 CarswellOnt 921, para. 45.  It follows that Costco would be unable

to recover its losses from Quetico since under both U.S. and Canadian law, a party cannot

receive indemnification if the result would be that party benefits from its own misdeeds.

*See Fyk v. Ritchie Bros. Auctioneers (Canada) Ltd.*, 2004 BLRFactum 18363 (citations

omitted);*Granite Partners, L.P. v. Bear, Sterns  Co., Inc.,* 17 F. Supp.2d 275, 308

(S.D.N.Y. 1998), citing *Pinter v. Dahl,* 486 U.S. 622, 632 (1988).  It would appear then

that Quetico would not make a payment on the contractual indemnity clause, and as a

result would be unable to seek recovery from the estate.  *See* N.Y.C.P.L.R. § 1402; Cal.

Civ. Proc. Code § 875.

On the other hand, if Costco were found not liable but collected fees and costs

incurred in defending itself against Simms in the Canada Proceeding from Quetico

pursuant to their contract, Quetico would be unlikely to recover those expenses from the

estate.  First, there is no indemnification provision in any of the five distribution

agreements entered into between the Debtors and Quetico/Kontakt.[6]  The Debtors have

no explicit contractual obligation to indemnify Quetico.

Second, Quetico would not seem to be able to sustain a claim for implied

contractual indemnification under either New York or California law.[7]  Implied

contractual indemnification under California law is not likely to be applicable since there

---

[6] Even if there were an indemnification provision in the contracts, it would not alter the contingent nature
of the claim.  *See, e.g., Ins. Co. of North Am. v. Sullivan,* 333 B.R. 55, 62 (D. Md. 2005) ("[A]n
indemnification agreement creates a contingent claim as of the date the agreement is signed.") (quoting *In
re Wilbur*, 237 B.R. 203, 207 (Bankr. M.D. Fla. 1999)) (further citations omitted).
[7] The distribution agreements provide that either New York law or California law will govern.

14

is no alleged breach of contract on behalf of Rock & Republic. *See Smoketree-Lake
Murray, Ltd. v. Mills Concrete Construction Co.,* 234 Cal. App. 3d 1724, 1736 (1991)
(implied contractual indemnity is predicated upon the indemnitor's breach of an implied
contract to perform the work carefully and to discharge foreseeable damages resulting
from that breach), (citing *Bear Creek Planning Com. v. Title Ins. & Trust Co.,* 164 Cal.
App. 1227 (1985)), disapproved on other grounds in *Bay Development, Ltd. v. Superior
Court,* 50 Cal. 3d 1012 (1990). *See also Bear Creek Planning Com,* 164 Cal. App. at
1239 ("An action for implied contractual indemnity . . . is grounded upon the
indemnitor's breach of duty *owing to the indemnitee* to properly perform its contractual
duties.") (citations omitted). Further, under New York law, implied contractual
indemnity requires a special relationship between the parties. *People's Democratic
Republic of Yemen v. Goodpasture, Inc.*, 782 F.2d 346, 351 (2d Cir. 1986). There is no
allegation of a fiduciary or special relationship alleged or existing between Rock &
Republic and Quetico. *See Swersky v. Dreyer & Traub,* 219 A.D.2d 321, 327 (1996)
(finding the arm's length nature of the transaction negated any alleged duty to disclose
based upon a fiduciary relationship theory). Thus, neither state's law would seem to
support a finding of implied contractual indemnification.

Nor is it likely that Quetico could sustain a claim for equitable indemnification.
Under California law, equitable indemnification is designed to "appropriation loss among
tortfeasors in proportion to their relative culpability so there will be an equitable sharing
of the loss among multiple tortfeasors." *Smoketree-Lake Murray, Ltd. v. Mills Concrete
Constr. Co.,* 234 Cal. Rptr. 3d 1724, 1736 (citations omitted). The doctrine enables a
secondarily negligent tortfeasor to shift some of the liability to a more culpable party.

15

*Am. Motorcyle Assn. v. Superior Court,* 20 Cal. Rptr. 3d 578, 583 (1978).  New York law

similarly finds what it calls "implied in law" liability for indemnity "where there is a

great disparity in the fault of two torfeasors and one of the tortfeasors has paid for a loss

that was primarily the responsibility of the other." *People's Democratic Republic of*

*Yemen v. Goodpasture, Inc.*, 782 F.2d 346, 351 (2d Cir. 1986) (citing *Zapico v. Bucyrus-*

*Erie Co.,* 579 F.2d 714, 718 (2d Cir. 1978)).

Both states require that there be some basis for tort liability against the proposed

indemnitor before a party can recover equitable indemnification.  *See BFGC Architects*

*Planners, Inc. v. Forcum/Mackey Constr., Inc.*, 119 Cal. App 4th 848, 852-53 (2004)

(citation omitted); *City of New York v. Black & Veatch*, 1997 WL 624985, at *10

(S.D.N.Y. 1997) ("'[I]implied in law' indemnity is a tort-based right, arising when there

is a great disparity in fault among tortfeasors, and one of those parties has paid damages

for which the other was primarily responsible.").  "Without any action sounding in tort,

there is no basis for a finding of potential joint and several liability on the part of

defendants, thereby precluding a claim for equitable indemnity." *See BFGC Architects*

*Planners, Inc.,* 119 Cal. App 4th 848, 853 (2004) (citation omitted).

Quetico's recent allegation that Rock & Republic made assurances it did not have

an exclusivity agreement with Simms or any other company, *see* Quetico's Statement in

Further Opposition ¶ 13, could, if true, constitute a tort.  However, Quetico has not

alleged that it and the Debtors are joint tortfeasors as against Simms or Costco, nor has it

alleged that the Debtors committed a tort with respect to either Costco or Simms.[8]

---

[8] The Debtors appear to lack an obligation to Costco because they lack privity of contract. *See City of New York v. Black & Veatch*, 1997 WL 624985, at *12 (S.D.N.Y. 1997) (noting implied in law indemnification requires a showing that the third-party defendant owes a duty to the plaintiff).  With respect to Simms, Quetico could allege a breach of contract, but noncontractual indemnification would likely be inapplicable

16

10-11728-shl   Doc 1027   Filed 10/07/11   Entered 10/07/11 16:25:38   Main Document
Pg 17 of 17

Further, such cause of action between Quetico and the Debtors would be inapposite to any theory of indemnification since Quetico has not yet paid damages on the underlying claim. *See, e.g., Jocer Enters., Inc. v. Price*, 183 Cal. App. 4th 559, 574 (2010) (claims for either equitable indemnity or implied contractual indemnity accrue at the time of payment on the underlying claim) (citations omitted); *City of New York v. Black & Veatch*, 1997 WL 624985, at *10 (S.D.N.Y. 1997) ("implied in law" indemnity arises after one of the parties has paid damages for which the other was primarily responsible).

Therefore, the Court concludes that even if an estimation hearing were warranted, the Court would estimate the claim at zero.

### Conclusion

For the reasons stated herein, the Court concludes that the Claim is not an "actual" expense and must be disallowed as an administrative claim under § 503. Therefore, the Objection is GRANTED and the Claim will be expunged.

The Liquidating Trust should settle an order consistent with this opinion.

Dated: New York, New York
       October 7, 2011

> **s/Arthur J. Gonzalez**
> ARTHUR J. GONZALEZ
> CHIEF UNITED STATES BANKRUPTCY JUDGE

---

since indemnification does not apply to purely economic losses resulting from a breach of contract. *Board of Educ. of Hudson City Sch. Dist. v. Sargent, Webster, Crenshaw & Folley,* 71 N.Y.2d 21, 26 (1987).