| | | |
|---|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>-------------------------------------------------------------x<br>In re:<br><br>**ROCK & REPUBLIC ENTERPRISES<br>INC.**, *et al.*,<br><br>                       Debtors.<br><br>-------------------------------------------------------------x | ::<br>::<br>::<br>::<br>::<br>::<br>::<br>::<br>:: | NOT FOR PUBLICATION<br><br>**Chapter 11**<br><br>**Case No. 10 – 11728 (AJG)**<br><br>**(Jointly Administered)** |

**ORDER AND OPINION DENYING ROCK & REPUBLIC LIQUIDATING TRUST'S
MOTION FOR APPROVAL OF STIPULATION RESOLVING
PROOF OF CLAIM OF SIMMS SIGAL & CO. LTD. (CLAIM NO. 198)
PURSUANT TO BANKRUPTCY RULE 9019(a) AND 11 U.S.C. § 105(a)**

Before the Court is Rock & Republic Liquidating Trust's Motion For Approval of Stipulation Resolving Proof of Claim of Simms Sigal & Co. Ltd. (Claim No. 198) Pursuant To Bankruptcy Rule 9019(a) and 11 U.S.C. § 105(a), dated July 26, 2011 (the "Motion"). In opposition are Michael Ball's Preliminary Objection to the Motion, dated July 28, 2011, Mr. Ball's Supplemental Objection to the Proposed Settlement, dated September 16, 2011, and Mr. Ball's Second Supplement to the Objection, dated October 28, 2011, (collectively, the "Objections"). In further support of the Motion are Simms Sigal & Co. Ltd.'s and Rock & Republic Liquidating Trust's respective briefs of October 28, 2011 in response to Mr. Ball's Objections. A hearing on the Motion was held on November 2, 2011. Counsel for Simms Sigal submitted a letter brief dated November 9, 2011.[1] Counsel for Mr. Ball submitted a letter brief in response on November 10, 2011.

*Jurisdiction*

---

[1] Counsel for Mr. Ball objected to the form of Simms Sigal's submission as inappropriate. The Court overrules that objection.

The Court has jurisdiction to consider the Motion and the relief requested pursuant to 28 U.S.C. § 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

*Background*

Rock & Republic Enterprises Inc. ("Rock & Republic" or "Debtors") filed a petition for bankruptcy under chapter 11 of the Bankruptcy Code on April 1, 2010 (the "Petition Date"). On August 2, 2010, Mr. Ball, as then CEO of the Debtors, notified Simms Sigal of the Debtors' intention to terminate for cause, on September 3, 2010, the International Distribution Agreement with Simms Sigal (the "Distribution Agreement"). On August 12, 2010, Rock & Republic filed a motion to reject the Distribution Agreement pursuant to 11 U.S.C. § 365(a). The Court authorized rejection of the Distribution Agreement on September 13, 2010 (the "Rejection Date"). On or about October 26, 2010, based upon Rock & Republic's rejection of the Distribution Agreement, Simms Sigal filed a proof of claim against Rock & Republic, asserting an unsecured claim in the amount of $6,083,600.00, together with a $47,303.47 indemnity claim (collectively, the "Claim"). On November 19, 2010, Mr. Ball filed an objection to the Claim.

In connection with the Claim, Rock & Republic and Simms Sigal conducted discovery. On July 19, 2011, as a result of information gained during the discovery process, the Liquidating Trust Administrator (the "Administrator") decided to settle the Claim for $2,950,000.00.

*Basis for Relief*

The Liquidating Trust seeks approval of the settlement of the Claim pursuant to Bankruptcy Rule 9019(a) and 11 U.S.C. § 105(a). Rule 9019(a) provides: "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Section 105(a) of the Bankruptcy Code states that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

2

*Discussion*

Section 5.6(a) of the Liquidating Trust Agreement (the "LTA") provides that the Administrator "shall procure approval by a unanimous vote of the members of the Advisory Board prior to . . . settling any Disputed Claim for an amount of $100,000 or more . . . <u>provided, however</u>, in the event the Advisory Board fails to approve any of the above actions by a unanimous vote, the matter may be submitted to the Bankruptcy Court for approval of such action." On June 30, 2011, Mr. Vicken Festekjian, one of the Advisory Board's three members, objected to the proposed settlement.[2] As such, the Motion is before the Court.[3][4]

<u>Standard for Review of a Claim Settlement</u>

The legal standard for determining the propriety of a bankruptcy settlement is whether the settlement is in the "best interests of the estate."[5] A settlement is in the best interests of the estate if that settlement is "fair and equitable."[6] *TMT* delineates the factors used in the Second Circuit for approval of a settlement as fair and equitable.[7] The factors are:

---

[2] Declaration of Vicken J. Festekjian ¶ 3.

[3] At the Hearing, counsel for Mr. Ball argued that the Court must subject the Administrator's determination that the settlement is in the best interests of the Liquidating Trust to a heightened rather than to a business judgment standard. The Court finds no evidence in the LTA that a higher standard of review is required. Rather, the Administrator, as trustee and manager of the Liquidating Trust, is bound to act in accordance with the Distribution Agreement which provides that the proposed settlement which did not garner the unanimous support of the Advisory Board is properly before the Court on motion by the Administrator pursuant to section 5.6 of the LTA. Where a settlement is brought before the Court, the 9019 standard governs rather than a business judgment or a business judgment "plus" standard, as counsel for Mr. Ball argues.

[4] Mr. Ball also argues that section 5.6 of the LTA which prevents the Administrator from taking "any action" with respect to a trust asset having a value of $100,000 or more must be read to preclude the Administrator from entering into settlement negotiations regarding the Claim. The Court finds this interpretation unconvincing and rejects it as producing the absurd result of rendering superfluous the express and more specific provision in section 5.6(a)(iii) of the LTA and requiring the unanimous approval of the Advisory Board or Court approval for any and every action that the Administrator seeks to undertake with regard to what is elsewhere described as the Administrator's exclusive right and duty. *See* section 5.2 of the LTA (stating that the Administrator has the exclusive right and duty to oversee the claims resolution process).

[5] *In re Adelphia Commc'n Corp.*, 368 B.R. 140, 225 (Bankr. S.D.N.Y. 2007) (*quoting In re Purofied Down Prods. Corp.*, 150 B.R. 519, 523 (Bankr. S.D.N.Y. 1993)).

[6] *Protective Comm. of Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) ("*TMT*").

[7] *See In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007).

> (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment; (3) the paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement; (4) whether other parties in interest support the settlement; (5) the competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy court judge reviewing, the settlement; (6) the nature and breadth of releases to be obtained by officers and directors; and (7) the extent to which the settlement is the product of arm's length bargaining.[8]

In assessing the propriety of the proposed settlement, the Court considered the Claim in light of arguments raised by counsel for Mr. Ball at the Hearing. As discussed in greater detail below, the Court finds that counsel raises a *bona fide* legal issue regarding the merits of the Claim which the Liquidating Trust did not consider in negotiating the settlement. Whether the Claim is one for direct or consequential damages under California law is an important consideration in determining whether the balance of the possibility of success in litigation and the benefits of settlement weigh in favor of settlement. The Court may defer to the Administrator's judgment regarding the net benefit to be achieved by settlement.[9] Here, however, the Court concludes that the Administrator did not consider all of the relevant legal issues when negotiating the proposed settlement. Under *TMT* and *Iridium*, the Administrator must have taken into consideration the relevant legal issues which impact the likelihood of success in litigation prior to settling a claim in order for the settlement to be found fair and

---

[8] *Id*. (*citing In re WorldCom, Inc.*, 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006)).

[9] As the Liquidating Trust's October 28, 2011 brief states: The Court need only "canvass the issues" to determine if the "settlement falls below the lowest point in the range of reasonableness." *In re Teltronics Serv., Inc.,* 762 F.2d 185, 189 (2d Cir. 1985); *In re WorldCom, Inc.*, 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006). The bankruptcy court is not required to conduct an independent investigation in determining whether a settlement is reasonable; it is entitled to give weight to the informed opinion of the Administrator and his counsel that the settlement is fair and equitable. *In re Prudential Lines, Inc.,* 170 B.R. 222, 247 (Bankr. S.D.N.Y. 1994).

equitable and in the best interests of the estate as required under *Adelphia*. For this reason, the Court denies approval of the proposed settlement.

*Validity of the Claim*

There is dispute over whether Simms Sigal has a damage claim that it may assert and, therefore, that the Administrator may settle. The threshold issue of whether Simms Sigal has such claim is determined by whether or not there was breach rather than termination of the Distribution Agreement. Mr. Ball argues that the Distribution Agreement was subject to a valid termination by Rock & Republic on September 3, 2010. Simms Sigal maintains that the Distribution Agreement remained in force until the Rejection Date because the basis upon which Rock & Republic purportedly terminated the Distribution Agreement—Simms Sigal's cancellation of certain purchase orders—was an action to which Rock & Republic consented. The Administrator conducted discovery in connection with the Claim and concluded that Simms Sigal may have a meritorious argument with regard to the validity of Rock & Republic's purported termination.

Premised upon Mr. Ball's position that the Distribution Agreement was subject to termination, Mr. Ball asserts that section 7.3.3 of the Distribution Agreement governs. Section 7.3.3 provides for a release and waiver of all claims based upon economic harm caused to Simms Sigal by termination or expiration of the Distribution Agreement. As is indicated by the plain language of the provision as well as by the preamble to section 7.3, entitled "Rights and Obligations on Termination," section 7.3 governs "in the event of termination" of the

Distribution Agreement and not in the event of breach. If Mr. Ball is correct that there was termination, then Simms Sigal would not have a claim for damages.[10]

Conversely, as the Liquidating Trust correctly asserts, in the event of breach, damages are governed by section 7.5, entitled "Other Remedies." Section 7.5 of the Distribution Agreement provides: "Nothing herein shall be deemed to prevent a party from bringing an action for damages either prior to *or in lieu of* termination if a default in performance by the other party occurs and is not cured timely . . . ." (emphasis added).

Under section 365(g) of the Bankruptcy Code, rejection of a contract is treated as a pre-petition breach and not a termination of such contract.[11] Therefore, if the Distribution Agreement survived the purported termination for cause by Rock & Republic, then, Simms Sigal would have a claim for damages under state law for breach of contract as of the Rejection Date. A contract may, however, limit the availability of such remedies.

In the instant case, a limitation of remedies is provided for in section 10.21.2 of the Distribution Agreement. Section 10.21.2 reads: "In no event shall the Company's liability of any kind to the Distributor include any exemplary, punitive, special, indirect, incidental or consequential losses or damages, even if the Company shall have been advised of the possibility of such potential loss or damage." Additionally, section 10.7.2 of the Distribution Agreement provides that California law shall govern disputes arising from the agreement.

*Damages for Breach of Contract under California Law*

California Civil Code section 3300 defines damages for breach of contract as "the amount which will compensate the party aggrieved for all the detriment proximately caused

---

[10] In the context of the calculation of damages, Mr. Ball argues that even if termination for cause did not occur, the Claim should be limited by Rock & Republic's ability to terminate the contract "at will." This argument is addressed, *infra,* under the heading "Amount of the Damage Claim."
[11] 11 U.S.C. § 365(g).

6

thereby, or which, in the ordinary course of things, would be likely to result therefrom."[12] Damages for breach of contract "seek to approximate the agreed-upon performance."[13]

California courts have interpreted section 3300 to provide for contractual damages of two types: "general damages (sometimes called direct damages) and special damages (sometimes called consequential damages)."[14] "General damages are often characterized as those that flow directly and necessarily from a breach of contract, or that are a natural result of a breach."[15] General damages have also been characterized as those that arise directly and inevitably from any similar breach of any similar agreement.[16] Section 2715(2) of the California Commercial Code defines consequential damages as "(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise;…." Comment 6 to section 2715(2) of the Uniform Commercial Code provides that "in the case of sale of wares to one in the business of reselling them [(a "reseller purchaser")], resale is one of the requirements of which the seller has reason to know within the meaning of subsection 2(a).[17] Therefore, when a seller breaches its contract to sell to a reseller purchaser, a seller will always be responsible for consequential damages based upon the loss of profits of a reseller purchaser.[18] In order to allow parties to contract around this eventuality, section 2719(3) of the California Commercial Code provides that "consequential damages may be limited or excluded unless the limitation or

---

[12] Cal. Civ. Code § 3300. *See also Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.*, 102 P.3d 257, 262 (Cal. 2004); *Burnett & Doty Dev. Co. v. C.S. Phillips*, 148 Cal. Rptr. 569, 571 (Cal. Ct. App. 1978) ("[d]amages awarded should…place the injured party in the same position [in which] it would have been had the contract properly been performed…"). The rule of damages set forth in California Civil Code section 3300 is consistent with the Uniform Commercial Code which became operative in California on January 1, 1965. *See* comment 1 of Cal. Com. Code § 2715.
[13] *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 869 P.2d 454, 460 (Cal. 1994).
[14] *Lewis Jorge*, 102 P.3d at 261. (citations omitted); *see also Applied Equip. Corp.*, 869 P.2d at 460.
[15] *Lewis Jorge*, 102 P.3d at 261.
[16] *See Lewis Jorge*, 102 P.3d at 261.
[17] U.C.C. § 2715 cmt. 6.
[18] As discussed further below, a reseller purchaser may also have direct damages for the loss of profits.

7

exclusion is unconscionable…."[19] Section 3358 of the California Civil Code further limits the amount of damages for breach of a contract to that which a person "could have gained by the full performance [of both parties to the contract]."[20]

*Validity of the Limitation of Remedies Provision*

Section 10.21.2 of the Distribution Agreement provides a limitation on remedies. The issue of whether the limitation on consequential damages found in the Distribution Agreement is unconscionable was not directly raised before the Court. At the hearing, counsel for Simms Sigal argued that without a remedy for lost profits, Simms Sigal has no remedy for breach of the contract. This is one factor that courts have used in determining that a limitation of remedies is unconscionable.[21] Because the parties, however, have not directly raised the issue of whether the "Limitation of Remedies" provision in the Distribution Agreement is unconscionable, the Court will not make a finding with regard to the issue except to note it is clear that the Administrator did not consider the issue in the context of settlement of the Claim. If the limitation is unconscionable, then lost profit damages such as those asserted by Simms Sigal are available under the Distribution Agreement as a matter of California commercial law.[22] Even if the limitation is enforceable, Simms Sigal may have a claim for loss of profits as direct damages.

*Damages for Lost Profits under California Law*

---

[19] Cal. Com. Code § 2719(3).
[20] Cal. Civ. Code § 3358.
[21] *See* comment 1 to U.C.C. § 2719. *See also Klein v. Asgrow Seed Co.*, 54 Cal.Rptr. 609, 620 fn. 8 (Cal. Ct. App. 1966) (discussing applicability of the requirement that, notwithstanding a limitation of remedies provision, "minimum adequate remedies [must] be available" for breach of a contract under the U.C.C.); *U.S. Roofing, Inc. v. Credit Alliance Corp.*, 279 Cal.Rptr. 533, 542-43 (Cal. Ct. App. 1991) ("[T]he doctrine of unconscionability is recognized in California as a common law doctrine…further, language identical to Uniform Commercial Code section 2–302 was enacted as Civil Code section 1670.5…").
[22] Additionally, with a finding that the limitation is unconscionable, the propriety of the Simms Sigal claim becomes more certain and would weigh in favor of the Administrator's proposed settlement under section 9019 of the Bankruptcy Code.

Assuming that the limitation of remedies in section 10.2.2 of the Distribution Agreement is valid, whether Simms Sigal may assert a rejection damage claim for lost profits depends upon whether lost profit damages of the type that Simms Sigal asserts are properly characterized as direct damages which are not limited by section 10.2.2 and, hence, are available under the Distribution Agreement, or whether such lost profits are consequential damages and, hence, unavailable.

Under California state law, lost profits of a reseller purchaser may be direct or consequential, depending upon the specifics of the contract entered into by the parties.[23] The Supreme Court of California in *Lewis Jorge* discusses at length the governing law regarding lost profits as a measure of both general and specific damages and, to an extent, in what instances either are appropriate.[24] The court in *Lewis Jorge* notes that "[l]ost profits, if recoverable, are more commonly special rather than general damages,"[25] however, the court specifically lists certain types of contracts where "[l]ost profits from collateral transactions as a measure of general damages for breach of contract typically arise." These are "when the contract involves crops, goods intended for resale, or an agreement creating an exclusive sales agency."[26]

An often cited pre-Code opinion which does not differentiate between direct and consequential damages nonetheless provides some guidance on the types of lost profit damages that may be recovered as general damages—

> "[w]here the profit to be made was the inducement to the contract, such profit is the measure of damages. So a recovery

---

[23] *See Lewis Jorge*, 102 P.3d at 263 ("Unearned profits can sometimes be used as the measure of general damages for breach of contract.")

[24] *Lewis Jorge*, 102 P.3d 260-67. The court in *Lewis Jorge* examined the issue of direct versus consequential damages for lost profits in the context of deciding whether general damages for breach of a construction contract included potential profits lost on future contracts that a contractor did not win as a result of a breach of contract.

[25] *Lewis Jorge*, 102 P.3d at 265.

[26] *Lewis Jorge*, 102 P.3d at 263. (citations omitted). Based upon the record, Simms Sigal may have grounds to argue both that the goods were intended for resale and that the Distribution Agreement created a form of an exclusive sales agency.

9

> may be had for the loss of profits which are the direct and immediate fruits of the contract itself. Such profits are not to be regarded as consequential, remote, or speculative in character, but are regarded as part and parcel of the contract itself, entering into and constituting a portion of its very elements, something stipulated for, and the right to the enjoyment of which is just as clear and plain as to the fulfillment of any other stipulation."[27]

The Court concludes that Simms Sigal's has a legal basis for asserting the Claim under California law, however, the Court also concludes that definitively characterizing the Claim as one for direct damages requires findings of facts that the Court has not undertaken at this preliminary stage in the litigation of the Claim.

*Amount of the Damage Claim*

Assuming that the Claim is not barred by the terms of the Distribution Agreement, counsel for Mr. Ball presents four further arguments for why the settlement amount is too high. First, Mr. Ball contends that Simms Sigal did not have an exclusive distribution agreement with Rock & Republic, therefore, Simms Sigal's lost profits on the contract are zero. Second, Mr. Ball contends that the Distribution Agreement was subject to Rock & Republic's "at will" termination, and thus, Simms Sigal had no reasonable expectation of the continued purchase of merchandise from Rock & Republic and cannot claim lost profits as damages on the contract. Third, Mr. Ball asserts that the Administrator should not have based its settlement on the estimation of damages by Simms Sigal's expert witness who, Mr. Ball asserts, relied upon inaccurate and optimistic projected sales to calculate his estimation. Fourth, in her November 10 letter brief, counsel for Mr. Ball raises the issue of whether the Claim amount should be decreased because Simms Sigal did not seek to mitigate its damages by purchasing goods from Rock & Republic in an effort to "cover."

---

[27] *Parkinson v. Langdon*, 171 P. 710, 712 (Cal. 1918) (*quoting* 8 Ruling Case Law, 505).

The Court will address each one of Mr. Ball's assertions in turn. First, Mr. Ball argues that the Distribution Agreement is exclusive in that only Simms Sigal received the ability to distribute, market and sell to Approved Retailers[28] while Rock & Republic could have, though did not, offer to other distributors the ability to distribute, market and sell to non-Approved Retailers, such as wholesalers. Section 2.1 of the Distribution Agreement which gives rise to Mr. Ball's assertion reads: Distributor is given a "limited, exclusive, nontransferable right to distribute, market and sell…in the Territory during the Term."

Reading the Distribution Agreement as a whole, the Court finds Mr. Ball's interpretation to be tenuous, at best. A more plausible interpretation of the parties' intent would be that Simms Sigal received, in section 2.1, an exclusive contract subject to the limitations provided for immediately thereinafter—the Company's "(1)…right to use, license and sublicense (a) the manufacture of products within the Territory for sale outside the Territory…(2) the right to open stores in the Territory [subject to Distributor's right of first refusal contained in section 10.4]; and (3) the right to sell to customers in the Territory over the Internet…provided…that such sales [do not] materially adversely impact Distributor's business in the Territory."

In section 2.1, therefore, the Company expressly limits its ability to compete with the Distributor in the Territory by subjecting the Company's ability to effectuate Internet sales to sales that do not materially adversely impact Distributor's business in the Territory. Moreover, section 7.3.4 grants the Company the ability to "appoint one or more other distributors of the Products in the Territory" upon "expiration or termination of the [Distribution] Agreement." The two sections, read in conjunction, support an interpretation that, notwithstanding the use of the term "limited," the Distribution Agreement gave Distributor the bargained for right to an almost

---

[28] Terms capitalized and not herein defined are ascribed the meaning given to them in the Distribution Agreement.

11

exclusively competition-less market for the Company's products in the Territory while the Distribution Agreement remained in force.

Further, because Rock & Republic has never allowed another distributor besides Simms Sigal to distribute Rock & Republic products in the Territory, it is arguable that Simms Sigal had a reasonable expectation that Rock & Republic would not. It is also correct that Rock & Republic and Mr. Ball have previously characterized the relationship between Simms Sigal and Rock & Republic as exclusive.

Under California law, recovery of profits lost on future contracts are not barred because they are "speculative or remote," but "because their occurrence is uncertain."[29] The Claim which arises from what may fairly be characterized as an exclusive or near exclusive distribution agreement is therefore not barred under California law as the existence of lost profits is not at issue, only their amount. The Court then finds no reason to question the Administrator's determination regarding the value of settling such claim.

With respect to the termination clause in section 6.3 of the Distribution Agreement which contains Rock & Republic's ability to refuse any order, that refusal is subject to "legitimate or valid [business] reasons." Mr. Ball does not point to any legitimate or valid reasons for the Debtor to terminate the Distribution Agreement pursuant to section 6.3.

With respect to Mr. Ball's allegation that the Simms Sigal expert relied upon overly optimistic forecast of future sales, the Administrator states that he and the experts that he retained considered both the estimate of damages provided by the Rock & Republic expert as well as the estimate provided by Simms Sigal's expert. During the mediation and pre-trial phase

---

[29] *See Lewis Jorge*, 102 P.3d at 266.

of litigating the Claim, the Liquidating Trust's expert prepared an additional schedule with the assumption that Simms Sigal's sales would remain flat though 2012. The Administrator contents that after reviewing the additional schedule which recalculated the amount of damages suffered by Simms Sigal, the Administrator found that the damage claim figure asserted by the Simms Sigal expert was more accurate than the amount put forth by the Rock & Republic expert.

Lastly, counsel for Mr. Ball argues that Simms Sigal should have sought to mitigate its losses by continuing to purchase products from Rock & Republic and reselling those products. Counsel for Mr. Ball did not present any case law supporting the notion that failure to "cover" bars Simms Sigal from the right to recover direct or general damages for breach of contract. Nor has counsel for Mr. Ball presented the Court with case law requiring a non-breaching Reseller Purchaser to continue to buy from the breaching seller in order to mitigate loss. The Liquidating Trust has not addressed the issue as the issue was not previously raised.

From the Court's research, it appears that counsel's argument stems, by analogy, from California Commercial Code section 2715 which limits the consequential damages resulting from a seller's breach to loss "which could not reasonably be prevented by cover . . . ."[30] Comment 2 to Uniform Commercial Code section 2715(2) states the reason for the cover requirement as modification of the liberality of the pre-Code rule which held a seller liable for all consequential damages that the seller had "reason to know." The reasoning behind this limit is inapplicable to a buyer who suffers a direct loss on a bargained for contract for unique goods.[31]

---

[30] Cal. Com. Code § 2715(2).
[31] *See Gerwin v. Se. Cal. Ass'n of Seventh Day Adventists*, 92 Cal. Rptr. 111, 117 (Ca. Ct. App. 1971) ("The concept of "cover" thus serves two purposes; it enables the buyer to make reasonable substitute purchases and recover the cost thereof rather than the difference between market value and contract price and, at the same time, protects the seller from consequential damages which could have been mitigated by the purchase of substitute goods.") (citations omitted).

*Conclusion*

From the record, it is clear that the Administrator considered whether the Claim was terminated or breached and therefore whether the release and waiver provisions of the Distribution Agreement act to bar the Claim.  Likewise, the Administrator considered the litigable issues surrounding the amount of the Claim.  The Court is therefore entitled to rely upon the Administrator's exercise of judgment in proposing a settlement that fairly accounts for the litigation outcomes of these issues.  As well, the Court finds no reason to question the Administrator's judgment that the proposed settlement meets the other *Iridium* factors.  The Court finds, however, that the Administrator did not consider whether the limitation of remedies provision of the Distribution Agreement may have precluded, in its entirety, the Claim as one for consequential damages and whether such limitation would be enforceable or unenforceable as against public policy.

These issues under California law directly address the question of what damages, if any, are available to Simms Sigal.  They are central issues regarding the determination of Rock & Republic's liability to Simms Sigal.  As such, the Administrator must consider these fundamental issues during his assessment of whether a settlement of the Claim is in the best interests of the Liquidating Trust.  The Court will not approve a proposed settlement where the Administrator did not consider a significant issue that may have impacted the Administrator's determination of the fairness of the settlement.  A proposed settlement based upon an incomplete review of the relevant legal issues is not in the best interests of the estate and therefore may not be approved

under section 9019 of the Bankruptcy Code.  Therefore, the Motion is DENIED without prejudice.[32]

SO ORDERED.


Dated: New York, New York
December 22, 2011

                                      **s/ Arthur J. Gonzalez**
                                      **HONORABLE ARTHUR J. GONZALEZ**
                                      **CHIEF UNITED STATES BANKRUTPCY JUDGE**

---

[32] The Administrator may choose to submit to the Court for approval this settlement or a new settlement after considering the issues discussed herein and setting forth the basis for approval of such settlement.  Alternatively, the Administrator may choose to proceed to litigation of the Claim.